1   MANATT, PHELPS & PHILLIPS, LLP
    MATTHEW P. KANNY (Bar No. CA 167118)
2   E-mail: MKanny@manatt.com
    DONNA L. WILSON (Bar No. CA 186984)
3   E-mail: DLWilson@manatt.com
    11355 West Olympic Boulevard
4   Los Angeles, CA  90064-1614
    Telephone:    (310) 312-4000
5   Facsimile:    (310) 312-4224

6   *Attorneys for Defendant*
    AETNA INC.
7

8                  **UNITED STATES DISTRICT COURT**

9           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11

12  JOHN DOE,                          Case No.

13              Plaintiff,             **NOTICE OF REMOVAL OF CIVIL
                                       ACTION TO UNITED STATES DISTRICT**
14       vs.                           **COURT; DECLARATION OF MATTHEW
                                       P. KANNY IN SUPPORT THEREOF**
15  AETNA, INC.; AETNA HEALTHCARE,
    INC.; and DOES 1-25, inclusive,    Filed concurrently with:
16                                     (1) Civil Case Cover Sheet;
              Defendants.              (2) Certificate of Service of Notice to Adverse
17                                     Party;
                                       (3) Corporate Disclosure Statement (FRCP 7.1);
18                                     and
                                       (4) Certification of Interested Entities or Persons
19                                     (LR 3-15)

20

21

22

23

24

25

26

27

28

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that Defendant Aetna Inc. (erroneously named here as "Aetna, Inc.")[1] (hereinafter "Aetna" or "Defendant"), by and through its attorneys of record, hereby gives notice that it removes this action from the Superior Court of the State of California for the County of Contra Costa to the United States District Court for the Northern District of California, and states the following grounds for removal:

### III.    GROUNDS FOR REMOVAL

1.      This is a civil action over which this Court has original jurisdiction pursuant to 28 U.S.C. Section 1332 in that complete diversity of citizenship and the required amount in controversy both exist in this civil action, which may therefore be removed to this Court pursuant to 28 U.S.C. Section 1441(a). *See* 28 U.S.C. § 1446 (defendants need provide only "a short and plain statement of the grounds for removal); *Dart Cherokee Basin Operating Co. v. Owens*, 135 S.Ct. 547, 553-54 (2014) ("By design, § 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Reles of Civil Procedure" and submissions of proof are only necessary if the plaintiff or court contests the allegations in the notice of removal).

### IV.    THE STATE COURT ACTION

2.      On or about October 20, 2017, Plaintiff John Doe (hereinafter "Plaintiff") filed a civil action bearing case number C17-02082 in the Superior Court of the State of California for the County of Contra Costa (the "State Court Action") against Aetna, as well as against another putative Defendant, "Aetna Healthcare, Inc." Plaintiff's Complaint ("Complaint") is the initial pleading setting for the claims for relief upon which this action is based. A true and correct copy of that complaint (the "Complaint," or "Compl.") is attached hereto as ***Exhibit A***.

3.      In the Complaint, Plaintiff alleges that Aetna purportedly disclosed the phrase "HIV Medication" in letters sent to approximately 12,000 individuals in July 2017 that were

---

[1] Plaintiff also erroneously named "Aetna Healthcare, Inc." as a defendant. As discussed *infra*, there is no legal entity by the name of "Aetna Healthcare, Inc."

1  required as part of a settlement of two putative class actions. (*See generally* Compl.)[2] Plaintiff,

2  who was a named plaintiff in one of those two putative federal class actions, was represented by

3  the same counsel who is representing him here. (Compl. ¶ 28.) The agreement that his counsel

4  negotiated settling the two the underlying cases was on an individual basis, but also purported to

5  create third party beneficiary rights. (Compl. ¶ 39; Ex. 1, para. 3.h.1.) Plaintiff asserts claims for

6  (1) breach of contract and the implied covenant of good faith and fair dealing; and (2) violation of

7  California's Unfair Competition Law, Cal. Bus. & Prof. Code §§17200 et seq. ("UCL"). (*See*

8  Compl. at ¶¶ 42-57.)

9       4.     Plaintiff seeks damages, equitable relief including restitution and disgorgement,

10  injunctive relief, and attorney's fees and costs. (*See id.* at Prayer for Relief ¶¶ 1-5.)

11  **V.    THIS COURT HAS JURISDICTION OVER THIS ACTION**

12       5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)

13  because the parties are diverse and there is more than $75,000 in controversy.

14       6.     *First*, the parties in this case are diverse. As alleged, Plaintiff is a resident of

15  California. Defendant Aetna Inc. is a corporation duly organized and existing under the laws of

16  the State of Pennsylvania, with its principal place of business in the State of Connecticut.

17  Defendant "Aetna Healthcare, Inc." is not a legal entity, and is therefore not (nor could it be) a

18  California corporation. Declaration of Matthew P. Kanny ("Kanny Decl.") at ¶ 4.

19       7.     *Second*, the amount in controversy in this action, exclusive of interest and costs,

20  exceeds $75,000.

21       8.     The amount in controversy is the "amount at stake in the underlying litigation."

22  *Gonzales v. CarMax Auto Superstores, LLC,* 840 F.3d 644, 648 (9th Cir. 2016). The amount in

---

[2] The Complaint appears to seek to have it two ways, alleging both that the letter was required to be sent part of the settlement agreement (Compl. ¶ 33), and that Aetna sent the letter under the terms of its members' plans in the ordinary course of business. *See* Compl. ¶ 14 (alleging Plaintiff is a member of an Aetna plan), ¶ 27 (alleging that Aetna informed enrollees of the "Program"), ¶ 35 (alleging that Aetna undertook obligation to send letters because they wanted members to call Aetna directly about their pharmacy benefits). Thus, because Plaintiff is alleging that the letter is a benefit notice and Aetna's actions or inactions violated the terms of Aetna members' plans, Plaintiff's breach of contract and UCL claims are preempted under ERISA, and thus removable under federal question jurisdiction, as well as diversity. *See* 29 U.S.C. §§ 1001 *et seq.*; *Aetna Health v. Davila,* 542 U.S. 200, 209 (2004).

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

controversy "includes . . . the cost of complying with an injunction, as well as attorneys' fees awarded under fee shifting statutes." *Gonzales*, 840 F.3d at 648-49. In considering the amount in controversy, it encompasses not only "the value of a plaintiff's potential recovery" but also "the potential cost to the defendant of complying with the injunction. . . ." *In re Ford Motor Co./Citibank (South Dakota) N.A.*, 264 F.3d 952, 958 (9th Cir. 2001) (noting standard applicable in single plaintiff cases). *See also Wang v. Asset Acceptance, LLC*, 680 F. Supp. 2d 1122, 1124-1125 (N.D. Cal. 2010) (considering punitive damages, injunctive relief, and equitable relief).

9.      Here, Plaintiff seeks damages, equitable relief including restitution and disgorgement, injunctive relief, and attorney's fees and costs. (*See* Compl. at Prayer for Relief ¶¶ 1-5.) Plaintiff seeks to cap his compensatory damages at $74,999.99. (*See id.* at ¶ 50 (alleging that he "suffered damages in an amount to be proven at trial, but is less than $75,000").) Thus, Plaintiff's request for damages *alone* brings the amount in controversy, as alleged, nearly up to the $75,000 threshold required to establish this Court's original jurisdiction.

10.      When Plaintiff's claims for injunctive relief and attorney's fees are added to this amount, the amount-in-controversy requirement is easily met. Indeed, in the scenario of a $74,999.99 damages award – a scenario that Plaintiff does not foreclose – the threshold would be met if more than $0.01 in fees is awarded to counsel. As shown below, Plaintiff's purported requests for fees and injunctive relief necessarily exceed $0.01, and in all cases, would surpass $75,000.

11.      Attorneys' fee claims are properly included in determining the amount in controversy. *Goldberg v. CPC Int'l., Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982) (*cert. denied* 495 U.S. 945 (1982)). Here, Plaintiff seeks attorneys' fees under the private attorney general doctrine, Cal. Civ. Proc. Code § 1021.5 ("PAGA"), as well as generally. (Compl. at Prayer for Relief ¶ 4.) Under PAGA, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public

3

entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. Cal. Civ. Proc. Code § 1021.5.

12. PAGA fees are calculated by "approximating the estimated value of the action at the time that the vital litigation decisions were made" and then considering "the costs of the litigation (attorney fees, deposition costs, expert witness fees) which were required to bring the action to fruition." *In re Taco Bell Wage & Hour Actions*, 222 F. Supp. 3d 813, 827 (E.D. Cal. 2016), citing *In re Conservatorship of Whitley*, 50 Cal. 4th 1206, 1211 (2010). A court "then considers the estimated value of the action beside the actual cost and makes a value judgment on whether the bounty of the court awarded fee should be provided to encourage the sort of litigation involved in the case." *In re Taco Bell*, 22 F. Supp. 3d at 827.

13. Indeed, many courts have awarded significant fees under PAGA in cases where *no* monetary damages were awarded to the plaintiff. *See, e.g., Building a Better Redondo, Inc. v. City of Redondo Beach*, 203 Cal.App.4th 852 (2012) (petitioners who were successful in declaratory relief action compelling city to submit a local coastal program amendment to public vote were entitled to $313,000 in attorney fees under the private attorney general statute and modest 0.25 lodestar multiplier was justified by the contingent nature of major portion of counsel's compensation); *San Luis Obispo County v. Abalone Alliance*, 178 Cal.App.3d 848 (1986) (award of $82,500 in attorney fees to environmental groups under private attorney general statute was not excessive in light of complexity and litigation necessary to resolve in their favor action which had sought to recover costs resulting from their protests against proposed nuclear power plant). Thus, a potential award of attorney's fees under PAGA, when combined with Plaintiff's requested damages *even if they are de minimis*, could well exceed the $75,000 amount-in-controversy threshold.

14. Plaintiff also seeks attorneys' fees generally, in addition to his compensatory damages and PAGA fees. (Complaint ¶ 50.) Given, as Plaintiff's Complaint makes clear, that the role of Plaintiff's counsel in the underlying privacy incident will be central to this litigation (*see, e.g.*, Compl. ¶ 3 (alleging "Plaintiff joined the [underlying action]"), ¶ 4 (alleging that the underlying litigation was resolved "[a]fter over two years of hard-fought litigation"), ¶ 6 (alleging

4

"[c]ommunications with Aetna representatives"), ¶ 8 (alleging "[u]nbenownst to Plaintiff and his counsel"), ¶ 9 (alleging Aetna "refused to explain to counsel for Plaintiff"), ¶ 28 (alleging "Plaintiff's counsel here filed an action"), ¶ 29 (alleging "counsel for Plaintiffs communicated"), and ¶ 35 (alleging "subsequent communication from Aetna representatives" and "Aetna did not consult counsel for plaintiffs")), Plaintiff's counsel has every motive to, and undoubtedly will, expend significant hours and costs litigating this matter.

15. In addition, the potential cost incurred by the Defendant to implement the injunctive relief requested may also be considered in determining the amount in controversy. *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."). Here, Plaintiff has requested wide-ranging injunctive relief, asking this Court for "[a]n Order enjoining Aetna from refusing to take appropriate corrective action to remedy its breaches of the Settlement Agreement and other appropriate public injunctive and declaratory relief." (Compl. at Prayer For Relief ¶ 3.) As alleged, Aetna's purported "breaches of the Settlement Agreement" include Aetna's alleged "failure to protect the privacy" of the "approximately 12,000" recipients of the July 2017 mailing, and its alleged failure to comply with "relevant state and federal law" such as the Health Insurance Portability and Accountability Act ("HIPAA"), the HIPAA Privacy Rules, and the California Confidentiality of Medical Information Act ("CMIA"). (*Id.* at ¶¶ 10-12.) While the precise affirmative conduct that Aetna would be obligated to undertake if Plaintiff's injunctive relief request is granted is unclear, it is apparent from these allegations that the costs of such implementation would easily exceed $0.01, and as such would meet the amount-in-controversy threshold.

16. Accordingly, the United States District Court for the Northern District of California has original jurisdiction under 28 U.S.C. Section 1332 in that complete diversity of citizenship and the required amount in controversy both exist in this civil action, which may therefore be removed to this Court pursuant to 28 U.S.C. Section 1441(a).

NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT

## VI.    ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN MET

17.    Removal is timely. Not more than thirty (30) days have passed since service of the Summons and Complaint on Aetna. *See* 28 U.S.C. § 1446(b); *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999). Aetna was served with a copy of the Summons and the Complaint on November 21, 2017, and the parties filed a joint stipulation in the Superior Court of the State of California for the County of Contra Costa confirming that Aetna agreed to accept service on that date. Kanny Decl. at ¶¶ 2-3.

18.    Venue in this Court is proper. The action was filed in the Superior Court of California for the County of Contra Costa. Venue properly lies in the United States District Court for the Northern District of California because it is the district court where the state court action is pending. 28 U.S.C. § 1441(a).

19.    Pursuant to 28 U.S.C. § 1446(a), Aetna has attached hereto as ***Exhibit B*** copies of the papers served on Aetna, including all available "process, pleadings or orders" filed in the State Court Action. 28 U.S.C. § 1446(a). Aetna will supplement this Removal with any remaining pleadings and orders filed with the Superior Court as soon as they are received. Further pursuant to 28 U.S.C. § 1446(d), a copy of the Notice of Removal with its attachments will be served promptly on Plaintiff through his counsel of record in the State Court Action, and a true and correct copy of this Notice will be filed with the clerk of the Contra Costa County Superior Court.

## VII.    INTRADISTRICT ASSIGNMENT

20.    Assignment to the San Francisco or Oakland Divisions of the United States Court for the Northern District of California is proper under 28 U.S.C. Section 1441(a) and Civil Local Rule 3-2(d) because the State Court Action was filed and is pending in the County of Contra Costa.

12.    By this Notice of Removal, Aetna does not waive any defenses or objections it may have to this action; does not intend any admission of fact, law, or liability; and expressly reserves all defenses, motions, and pleas.

**WHEREFORE**, Aetna hereby removes the Contra Costa County Superior Court case entitled *John Doe v. Aetna, Inc., et al.*, Case No. C17-02082, originally filed on or about October

6

1   20, 2017, to the United States District Court for the Northern District of California, pursuant to 28

2   U.S.C. § 1332(a), and other relevant and applicable law, as if this action had been originally filed

3   in this Court, seeks that further proceedings in the State Court Action be stayed in all respects,

4   and that Aetna obtain all additional relief to which it is entitled.

5   Dated: December 18, 2017                    MANATT, PHELPS & PHILLIPS, LLP

6

7                                          By:    /s/ Matthew P. Kanny

8                                                Matthew P. Kanny
                                                *Attorneys for Defendant*
9                                                AETNA INC.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# DECLARATION OF MATTHEW P. KANNY

I, Matthew P. Kanny, hereby declare:

1.  I am a partner at the law firm Manatt, Phelps & Phillips LLP and am one of the attorneys representing Defendant Aetna Inc. ("Aetna") in the above-captioned action.  I am over 18 years of age and have personal knowledge of the matters set forth herein and, if called as a witness, I could and would testify competently thereto.  I make this declaration in support of Aetna's Notice of Removal of Civil Action to United States District Court.

2.  Aetna was served with a copy of the Summons and the Complaint on November 21, 2017, and the parties filed a joint stipulation in the Superior Court of the State of California for the County of Contra Costa confirming that Aetna agreed to accept service on that date.

3.  Pursuant to the stipulation, counsel for Plaintiff provided Aetna with a copy of the Complaint and Summons on November 21, 2017, and counsel for Aetna accepted service on behalf of Aetna that same date.

4.  On December 17, 2017, I caused my office to perform searches of the California Secretary of State's website (https://businesssearch.sos.ca.gov/) and could not locate any legal entities registered with the state by the name of "Aetna Healthcare, Inc."  I further confirmed with Aetna that there is no legal entity by the name of "Aetna Healthcare, Inc."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**Executed this 18th day of December 2017 in Los Angeles, California.**

/s/ Matthew P. Kanny
Matthew P. Kanny

# Exhibit A

FILE BY FAX

COPY

**WHATLEY KALLAS, LLP**
Joe R. Whatley, Jr. (To Be Admitted *Pro Hac Vice*)
jwhatley@whatleykallas.com
Edith M. Kallas (To Be Admitted *Pro Hac Vice*)
ekallas@whatleykallas.com
1180 Avenue of the Americas, 20th Fl.
New York, NY  10036
Tel: (212) 447-7060
Fax: (800) 922-4851

Alan M. Mansfield (Of Counsel, SBN: 125998)
amansfield@whatleykallas.com
16870 W. Bernardo Dr., Suite 400
San Diego, CA, 92127
Tel: (858) 674-6641
Fax: (855) 274-1888

**CONSUMER WATCHDOG**
Harvey Rosenfield (SBN: 123082)
Harvey@consumerwatchdog.org
Jerry Flanagan (SBN: 271272)
jerry@consumerwatchdog.org
Benjamin Powell (SBN: 311624)
ben@consumerwatchdog.org
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
Fax: (310) 392-8874

**Attorneys for Plaintiff**

FILED

2017 OCT 20  A II: 23

STEPHEN H. NASH
CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CA
BY: A. Adams CLERK

PER LOCAL RULE 5 THIS
CASE IS ASSIGNED TO
DEPT

SUMMONS ISSUED

**IN THE SUPERIOR COURT OF CALIFORNIA**

**IN AND FOR THE COUNTY OF CONTRA COSTA**

| JOHN DOE, | Case No. **C17 - 02082** |
|---|---|
| Plaintiff, | **COMPLAINT FOR:** |
| v. | (1) **Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing;** |
| AETNA, INC.; AETNA HEALTHCARE, INC.; and DOES 1-25, inclusive, | (2) **Violation of the "Unlawful" Prong of the Unfair Competition Law, Business and Professions Code § 17200, et seq.** |
| Defendants. | |
| | <u>**Jury Trial Demanded On All Claims So Triable**</u> |

1

Plaintiff John Doe,[1] by and through the undersigned attorneys, brings this action against Defendants AETNA, INC.; AETNA HEALTHCARE, INC.; and DOES 1-10, inclusive (hereafter collectively "Aetna" or "Defendants"). Plaintiff alleges the following on information and belief, except as to those allegations that pertain to Plaintiff, which are alleged on personal knowledge:

## NATURE OF THE ACTION

1.    On or about November 28, 2014, Aetna announced a policy change that barred enrollees diagnosed with HIV/AIDS that they could no longer fill their prescriptions for HIV medications at their local pharmacy, effective January 1, 2015. Instead, they would be required to obtain these medications by mail order. Further purchases at a brick and mortar pharmacy were to be treated as "out of network," at a potentially staggering cost to the enrollee. (The "Program"). Mail-order delivery of these medications often required refrigerated containers to be delivered to a person's home or office, thus potentially disclosing the enrollee's medical condition to third parties. The Program raised major privacy implications due to the social stigma that continues to be associated with the disease, motivating individuals with the disease to be very protective of information concerning their medical condition.

2.    On December 19, 2014, a class action lawsuit was filed against Aetna alleging that Aetna's Program put patients' health and privacy at risk. *See DOE v. Aetna*, U.S. Dist. Ct. S.D. Cal. Case No. 14-cv-02986-LAB (DHB) ("Aetna Privacy Breach #1"). A primary goal of that action was to protect the privacy of HIV/AIDS patients.

3.    On May 8, 2015, Plaintiff joined the Aetna Privacy Breach #1 lawsuit as a JOHN DOE plaintiff in a First Amended Complaint filed with the Court. By that time, Aetna had already implemented the Program as to individual plan enrollees and was considering whether to implement the Program as to group plans. JOHN DOE was a member of an Aetna plan.

4.    After over two years of hard-fought litigation, the Aetna Privacy Breach #1

---

[1] Due to the sensitive nature of this action, Plaintiff has chosen to file under a fictitious name psuedonym. (*See, e.g., Jane Doe 8015 v. Sup. Ct.*, 148 Cal.App.4th 489 (2007) [patient allowed to proceed anonymously when suing a laboratory after acquiring HIV].)

matter was resolved, along with a related action against an Aetna subsidiary Coventry Health Care, Inc. ("Coventry") (*DOE v. Coventry Health Plans,* U.S. Dist. Ct, S.D. Fla. Case No. 05-cv-62685-CMA). Under the terms of a Settlement Agreement entered into between the Plaintiffs in both actions and Aetna on or about February 27, 2017, a true and correct copy of which is attached hereto as Ex. 1 and incorporated by reference.

5.      In the Settlement Agreement, Aetna agreed to, among other terms, (1) send a notice to all affected consumers enrolled in Aetna plans advising them of their right to obtain HIV/AIDS medications from a community pharmacy of their choice, where their privacy would be protected (the "July 2017 Change of Practice Letter"); and (2) send a separate notice offering certain individuals the right to receive compensation for incurred out of pocket losses.

6.      The Settlement Agreement specifically places the responsibility for sending the July 2017 Change of Practice Letter upon Aetna. Communications with Aetna representatives confirm that Aetna itself would send out the July 2017 Change of Practice Letter.

7.      A similar set of notices were to be sent to affected consumers enrolled in Coventry plans.[2]

8.      Unbeknownst to Plaintiff and his counsel, on or about July 28, 2017, the "July 2017 Change of Practice Letter" was sent to approximately 12,000 individual Aetna enrollees nationwide, in an envelope *with an oversized glassine window*. A large version of Aetna's corporate logo and the name and address of the recipient was visible in this oversized window. The envelope window also *displayed a portion of the text of the Letter itself, disclosing the fact that the July 2017 Change of Practice Letter was being sent to those members of Aetna health plans who had been prescribed "HIV Medications."* Plaintiff received the July 2017 Change of Practice Letter.

9.      While Aetna has refused to explain to counsel for Plaintiff why or how this unlawful disclosure occurred, it appears that Aetna's motive in sending such a sensitive mailing in an envelope with an irregular, oversized window was two-fold: (1) To attempt to avoid the

---

[2] While this lawsuit refers solely to the Aetna Change of Practice Letter, Plaintiff's investigation is ongoing as to the comparable Coventry letter.

impression that Aetna was required to send the letter as part of a settlement of a civil lawsuit, and (2) To save printing costs.

10.     By this conduct, Aetna disclosed approximately 12,000 individuals' HIV status to any person coming in contact with the July 2017 Change of Practice Letter: employers, co-workers, neighbors, family members, roommates, apartment managers, and postal workers. The privacy rights of these patients were violated.

11.     Aetna's failure to protect the privacy of recipients of the July 2017 Change of Practice Letter constitutes a devastating breach of the Settlement Agreement entered into by Plaintiff and Aetna.

12.     Moreover, Section 11 of the Settlement Agreement makes it clear that nothing in the agreement limited Aetna's obligations to comply with relevant state and federal law; indeed, it requires that Aetna "shall comply with such state and federal law and regulations." These include the Health Insurance Portability and Accountability Act ("HIPAA"), 42. U.S. Code 1320(d)-6 and the HIPAA Privacy Rules at 45 C.F.R. Sec. 164.500 *et seq.*, enrollees' inalienable right to privacy as protected by California's Constitution, Article 1, § 1, and other relevant federal and state law, including the California Confidentiality of Medical Information Act, Cal Civ. Code § 56 *et seq.* (the "Act"), which requires such sensitive medical information to be kept private.

13.     Pursuant to Section 3(h)(2) of the Settlement Agreement, Plaintiff brings this action to enforce the terms of the Settlement Agreement, including specifically those provisions that Aetna has breached, to obtain such provisional relief as is necessary to remedy the breach and to prevent such breaches of the Settlement Agreement in the future, and to obtain for himself the damages sustained as a result of Aetna's breach. While the parties released certain claims against each other as set forth in Section 8 of the Settlement Agreement, Plaintiff retained the right to bring claims for breach of that Settlement Agreement.

## **THE PARTIES**

14.     Plaintiff is a resident of California. He enrolled in an Aetna health care services plan contract on or about August 1, 2014 and remains an enrollee. Pursuant to that health plan,

COMPLAINT

he receives health care services from providers and is a person to whom the disclosed medical information pertains. He is a signatory to the Settlement Agreement in the Aetna Privacy Breach #1 action and has standing under Section 3(h)(2) of the Settlement Agreement to assert claims for violations of that Agreement. As a result of Aetna's breach of the Settlement Agreement, Plaintiff has already been injured and/or will suffer injury in fact and a loss of money or property by Aetna's unlawful business acts and practices by, *inter alia*, having received the letter, spending hours dealing with these issues and not receiving the compensation that Aetna by law is required to pay him for the consequences of Aetna's breach. Such claims are based on Aetna's direct breach of the Settlement Agreement as to him, and thus have not been released under the terms of Section 8 of the Settlement Agreement.

15.     Defendants Aetna, Inc. and Aetna Healthcare, Inc. are transacting the business of providing health plans made in this State.

16.     The true names, roles and/or capacities of Defendants named as DOES 1 through 25, inclusive, are currently unknown to Plaintiff and, therefore, are named as Defendants under fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiff will identify their true identities and their involvement in the wrongdoing at issue if and when they become known.

17.     Defendants' conduct described herein was undertaken or authorized by Aetna's officers or agents who were responsible for supervision of and operations decisions with respect to the format, printing and dissemination of the July 2017 Change of Practice Letter. The described conduct of said agents and individuals was undertaken on behalf of Aetna. Aetna further had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by Aetna, either directly or through its officers and agents.

## **JURISDICTION AND VENUE**

18.     This Court has jurisdiction over this action under Article VI, § 10 of the California Constitution and section 410.10 of the Code of Civil Procedure. Jurisdiction is also proper under Business & Professions Code § 17200, *et seq.* Jurisdiction is also proper under Section 3(h)(2) of the Settlement Agreement, which provides that any action to enforce a breach

of the Settlement Agreement may be brought in any Court of competent jurisdiction.

19.     Jurisdiction over Aetna is proper because Aetna has purposely availed itself of the privilege of conducting business activities in California, because it expressly agreed in the Settlement Agreement that California law would apply to such claims (Section 13), because Aetna currently maintains systematic and continuous business contacts with this State, and because Aetna has many thousands of affected enrollees who are residents of this State and who do business with Aetna, including Plaintiff.

20.     Plaintiff does not directly assert any claims arising under the laws of the United States of America. The amount in controversy in this action does not exceed $75,000 as to Plaintiff, nor does the object of this action in terms of the relief sought exceed that amount.

21.     Venue is proper in this Court because Aetna engaged in business in this County, maintains a primary place of business and operations in this County through its wholly-owned subsidiary, and Aetna received substantial profits from enrollees who reside in this County.

22.     Furthermore, venue is proper in this Court because the Section 3(h)(2) of the Settlement Agreement provides that: "The terms of this Agreement can be enforced by any Current Member… in any Court of competent jurisdiction in the United States of America." Plaintiff is a "Current Member" as that term is defined in the Settlement Agreement.

## **FACTUAL ALLEGATIONS**

23.     Protection of privacy is of paramount importance under California law, which as noted above governs the interpretation and enforcement of the Settlement Agreement.   For example, Article 1, § 1 of the California Constitution guarantees "all people" the right to privacy:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

24.     California Civil Code § 56.31 of the Act provides in relevant part as follows:

> Notwithstanding any other provision of law, nothing in subdivision (f) of Section 56.30 shall permit the disclosure or use of medical information regarding whether a patient is infected with or exposed to the human immunodeficiency virus

6

COMPLAINT

1
2
3

without the prior authorization from the patient unless the patient is an injured worker claiming to be infected with or exposed to the human immunodeficiency virus through an exposure incident arising out of and in the course of employment.

4

25.    In addition, California Civil Code § 56.31 prohibits

5
6

the disclosure or use of medical information regarding whether a patient is infected with or exposed to the human immunodeficiency virus without the prior authorization from the patient….

7    26.    Many patients with HIV/AIDS choose to keep their medical condition private due

8  to its highly sensitive nature and for fear of social, economic, and personal reprisals, even from

9  their friends, family and others they would invite into their homes. Aetna is required to protect

10  this data from unauthorized disclosure under HIPAA, and other state and federal laws, including

11  the Act.

12    27.    In November 2014, Aetna and its affiliates informed enrollees diagnosed with

13  HIV/AIDS that as of January 1, 2015 they could no longer purchase certain HIV specialty

14  medications at brick and mortar pharmacies. Instead, those enrollees could only purchase the

15  specialty medications used to treat a targeted list of serious health conditions from a mail-order

16  pharmacy of Aetna's choosing, Aetna Specialty Pharmacy ("ASP"). The start date of the Program

17  was later delayed, partially as a result of preliminary, informal efforts of Plaintiff's counsel to

18  stop this practice, as to group plans. However, as to individual enrollees the Program became

19  effective in April 2015. During this time, Plaintiff, on several occasions, expressly sought to opt-

20  out of the mandatory mail order program. Despite such requests, JOHN DOE was informed by

21  Aetna's representatives in writing on January 5, 2015 that his participation in the Program was

22  mandatory.  In that letter, ASP informed Plaintiff that his request "not to use Aetna Specialty

23  pharmacy has been denied."

24    28.    In late December 2014, Plaintiff's counsel here filed an action against Aetna in

25  federal court on behalf of patients needing specialty medications covered by Aetna who had

26  received a notice in November 2014 that they would be required to obtain their HIV medications

27  by mail order from Aetna's subsidiary. The Complaint filed in that action alleged that Aetna's

28  mandatory mail order program specifically targeted individuals that are HIV-positive or have full

7

blown AIDS and put such patients' health and privacy at significant risk. The Complaint also alleged that those who desired to continue to use their retail pharmacies would have to shoulder the full cost of their drugs as an "out of network" payment, at a cost of potentially thousands of dollars each month. The Complaint alleged that the Program denied HIV/AIDS patients full and equal access to utilize the drug delivery mechanism and pharmacies of their choice specifically because of their disability and/or medical condition, since at the same time other non-HIV/AIDS-positive Aetna enrollees under the same plans were permitted to continue to enjoy full and equal access to the pharmacies of their choice. The Complaint further alleged that the ability for pharmacists to be able to closely monitor drug regimens is life-saving in many instances, because there is no cure for HIV and AIDS and the virus continually mutates around the medications prescribed to treat the diseases. The Complaint also alleged the serious implications of the Program for patients' privacy rights.

29.    For at least six months, counsel for Plaintiffs communicated with Aetna and its counsel urging Aetna to terminate the Program or to suspend it and to provide corrective notice to Aetna enrollees who had received the letter from Aetna in November 2014 announcing the Program. Ultimately, Aetna agreed to not implement this Program as to group plans. However, as to individual plans Aetna in fact had already initiated the Program. In response to pressure from Plaintiffs, in approximately June 2015 Aetna suspended the Program as to members in individual plans as well.

30.    The Complaint was amended on May 8, 2015, to include additional plaintiffs, including the Plaintiff in this action.

31.    After over two years of litigation, the *DOE v. Aetna* lawsuit was resolved under the terms of a non-class Settlement Agreement. Plaintiff was a signatory to that Settlement Agreement.

32.    Under the terms of the February 2017 Settlement Agreement, members of certain health plans issued by Aetna, Inc. and its subsidiary, Coventry, are no longer required to obtain their HIV/AIDS medications by mail-order and may obtain those medications at retail pharmacies – the primary goal of the *DOE v. Aetna* litigation – and could recover "out of pocket costs" they

were forced to incur in connection with the Program. (Settlement Agreement, Sections 3(b) and 3(f).

33.    Aetna expressly undertook numerous obligations under the Settlement Agreement. First, and most relevant for purposes of this lawsuit, Aetna agreed that it would notify enrollees of the termination of the Program in the form of a letter. The Settlement Agreement at Section 3(b) provides that Aetna would send the July 2017 Change of Practice Letter:

> Aetna and/or Coventry will provide notice of the policy set forth in III.3.a. to all Current Members who have submitted a claim for coverage of HIV Medications since January 1, 2015. All Current Members shall be sent a letter by United States Postal Service. The form of the communication to be sent to Current Members is attached hereto as Exhibit A1 (for Current Members of Coventry Plans) and Exhibit A2 (for Current Members of Aetna Plans).

34.    Aetna also agreed to send a separate notice offering certain individuals the right to receive compensation for certain out of pocket losses they incurred. (Settlement Agreement, Section 3(f)). Aetna representatives claimed the third party settlement administrator referred to in the Settlement Agreement was only handling the monetary compensation component of the settlement.

35.    In addition to the unambiguous text of the Settlement Agreement, subsequent communications from Aetna representatives confirmed that Aetna itself was solely undertaking the obligation to send out the Change of Practice Letters, because Aetna wanted individuals to call Aetna directly if they had questions about their pharmacy benefits. Aetna has publicly stated that it retained a third party vendor to mail the Change of Practice Letters on Aetna's behalf. Thus, Aetna directly provided enrollees' confidential medical information to that vendor for purposes of disseminating the Change of Practice Letters. Aetna asserted that the vendor handling that mailing used a window envelope that allowed personal health information to be viewable through that window. Aetna did not consult counsel for plaintiffs in that litigation concerning the use of an envelope with a window to mail the Change of Practice Letters. These facts further demonstrate that Aetna's dissemination of the Change of Practice Letters under Section 3(b) of the Settlement Agreement was treated separate and apart from the obligation to provide notice and an opportunity to obtain compensation under Section 3(f) of the Settlement Agreement.

Ultimately, Aetna sent the July 2017 Change of Practice Letter to approximately 12,000 Aetna enrollees.

36.     Privacy was at the forefront of the initial *DOE v. Aetna* litigation. Yet in resolving that litigation, Aetna inexplicably failed to take reasonable steps to ensure that its members' private health information was protected from disclosure. In performing its obligations under the terms of the Settlement Agreement, Aetna elected to utilize an envelope with an irregular, unreasonably large clear glassine window. Not only was the Aetna logo and the name and address of recipient visible, but the envelope window also displayed a portion of the text of the letter itself, disclosing the fact that the July 2017 Change of Practice Letter was being sent to those members of Aetna health plans who had been prescribed HIV/AIDS medications. Thus, Aetna breached its agreement to perform the obligations it was solely responsible for undertaking under the terms of Section 3(b) of the Settlement Agreement.

37.     Moreover, the Settlement Agreement specifically incorporates an obligation for Aetna to comply with state and federal law into that agreement:

> [N]othing contained in this Agreement is intended to, or shall, in any way reduce, eliminate or supersede any Party's existing obligation to comply with applicable provisions of relevant state and federal law and regulations, **and Coventry and Aetna shall comply with such state and federal law and regulations**.
> (Settlement Agreement, Section 11, emphasis added)

> The validity, construction, interpretation**, performance,** and enforcement of this Agreement shall be governed by the internal, substantive laws of the State of California without giving effect to applicable choice of law principles.
> (Settlement Agreement, Section 13, emphasis added)

38.     Defendants violated the California and federal laws set forth in this Complaint, thereby breaching its agreement to perform its obligations under the terms of the Settlement Agreement in accordance with applicable state and federal law.

39.     The Settlement Agreement further provides in Section 3(h)(1) that all affected enrollees are third party beneficiaries of the Agreement.

40.     Prior to the initiation of this action, Plaintiff's counsel repeatedly sent demands to Aetna's counsel requesting information as to (1) the cause of the privacy breach and (2) what, if anything, Aetna was doing to address the breach. Aetna has refused to provide any explanation

or documentation concerning the violation of its enrollees' privacy. Aetna has said only that they will work to ensure nothing similar happens in the future – an empty assurance that is of little comfort to Plaintiff.

41.     Plaintiff may be without adequate remedy at law, rendering equitable, injunctive and/or declaratory relief appropriate in that: (a) relief is necessary to inform the parties of their rights and obligations under the Agreement asserted herein, (b) damages may not adequately compensate him for the injuries suffered, nor may other claims permit such relief; (c) the relief sought herein in terms of correcting such practices may not be fully accomplished by awarding damages; and (d) if the conduct complained of is not corrected, harm will result to members of the general public.

## FIRST CAUSE OF ACTION

### Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

42.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

43.     Plaintiff was a signatory to the Settlement Agreement, under which Aetna agreed to provide the benefits thereunder, agreed its conduct under the Settlement Agreement would be conducted in accordance with the requirements of California law, including in connection with sending the July 2017 Change of Practice Letter described above, and agreed to the performance and enforcement of this Agreement to be governed by California law. As to this latter provision, the principle that all applicable laws are incorporated into every contract and can be enforced in the same manner as the breach of any other term of the agreement is a foundational concept of the law of contracts. *McCracken v. Hayward*, 43 U.S. 608, 612-613 (1844). California law is in accord. In fact, the California Supreme Court cited the *McCracken* decision at least as early as 1857 in *Stafford v. Lick*, 7 Cal. 479, 496 (1857) ("[T]he law existing at the time the contract is made, enters into and forms a part of the contract itself, without any stipulation to that effect...." (Emphasis added.)).

44.     The California Supreme Court has uniformly affirmed and reiterated this basic principle. *See Silveira v. Ohm*, 33 Cal.2d 272, 278 (1949); *Alpha Beta Food Markets, Inc. v.*

11

*Retail Clerks Union*, 45 Cal.2d 764, 771 (1955) (noting the "general rule that 'all applicable laws in existence when an agreement is made . . . necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated'"); *Swenson v. File*, 3 Cal.3d 389, 393 (1970); *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 954-955 (2008).

45.     By engaging in the actions set forth above, Aetna breached the Settlement Agreement – specifically, by releasing confidential protected medical information and disseminating the July 2017 Change of Practice notice in a manner that did not comply with state and federal laws, including those specifically identified above.

46.     The Settlement Agreement by operation of California law also contains an implied covenant of good faith and fair dealing that is incorporated into all contracts that, *inter alia*, requires such contracts shall be performed and executed consistent with the requirements of California law and enforced in a manner that acts to protect and make effective the interests of Plaintiff in the having the promises required by agreement and law performed.

47.     Aetna has also breached this duty of good faith and fair dealing owed to Plaintiff as in undertaking the actions described above it frustrated or denied Plaintiff the benefits of this bargain by implementing the settlement in a manner that violated California law and Constitutionally-protected privacy rights, as set forth above.

48.     An actual controversy over which this Court has jurisdiction now exists between Plaintiff and Aetna concerning their respective rights, duties and obligations under the Settlement Agreement. Plaintiff also desires a declaration of rights under the Settlement Agreement asserted herein, which declaration may be had before there has been any breach of such obligation in respect to which such declaration is sought.

49.     A judicial declaration is necessary and appropriate at this time and under these circumstances so the parties may ascertain their respective rights and duties. Plaintiff requests a judicial determination and declaration of his rights and the corresponding responsibilities of Aetna.

50.     As a proximate result of the conduct of Aetna set forth above, Plaintiff suffered

damages in an amount to be proven at trial, but is less than $75,000. As a further proximate result of the conduct of Aetna, Plaintiff was compelled to retain legal counsel and to institute litigation to assure Aetna acted consistent with the terms of the Settlement Agreement.

## SECOND CAUSE OF ACTION

### Violation of Business & Professions Code § 17200, *et seq.* –

### Unlawful Business Acts and Practices

51.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

52.     Business & Professions Code § 17200, *et seq.* ("UCL") prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200 as including "any unlawful, unfair or fraudulent business act or practice. . . ."

53.     "A breach of contract may…form the predicate for Section 17200 claims, *provided it also constitutes conduct that is 'unlawful, or unfair, or fraudulent.'" Puentes v. Wells Fargo Home Mortgage., Inc.* 160 Cal.App.4th 638 (2008) (emphasis in original).

54.     The acts and practices of Aetna's conduct, as described above, violates Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices, by engaging in conduct that operates as a systematic breach of contract. As set forth above, Aetna breached the Settlement Agreement and violated the UCL by performing the obligations that it solely undertook in a manner that violated both California and federal law.

55.     As a result of Aetna's violations of the UCL, Plaintiff is entitled to seek equitable relief in the form of public injunctive relief, and individual restitution and disgorgement of the profits derived from Aetna's unlawful business acts and practices.

56.     Plaintiff also seeks an order enjoining Aetna from refusing to correct its unlawful business practices, including a commitment to use non-windowed envelopes in its notification mailings to persons prescribed HIV medications.

57.     THEREFORE, Plaintiff prays for relief as set forth below as appropriate for this Cause of Action.

/ / /

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows as applicable for the particular cause of action:

1.     An Order awarding Plaintiff individual damages and pre-judgment and post-judgment interest thereon;

2.     An Order awarding Plaintiff individual restitution and/or disgorgement and such other equitable relief as the Court deems proper;

3.     An Order enjoining Aetna from refusing to take appropriate corrective action to remedy its breaches of the Settlement Agreement and other appropriate public injunctive and declaratory relief;

4.     An Order awarding Plaintiff's attorneys' fees, expert witness fees and other costs pursuant to, *inter alia*, Code Civ. Proc. § 1021.5 and as otherwise permitted by statute or California law; and

5.     An Order awarding such other and further relief as may be just and proper, although the total amount of relief requested is less than $75,000.


**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  October 20, 2017

**CONSUMER WATCHDOG**

By: _____
        Jerry Flanagan (SBN: 271272)
Harvey Rosenfield (SBN: 123082)
Benjamin Powell (SBN: 311624)
ben@consumerwatchdog.org
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
harvey@consumerwatchdog.org
pam@consumerwatchdog.org
jerry@consumerwatchdog.org

WHATLEY KALLAS, LLP
Alan M. Mansfield (SBN 125998)

COMPLAINT

1

(Of Counsel)
16870 W. Bernardo Dr. Suite 400
San Diego, CA 92127
Tel: (858) 674-6641
Fax: (855) 274-1888
amansfield@whatleykallas.com

2

3

4

Joe R. Whatley, Jr. (To Apply *Pro Hac Vice*)
Edith M. Kallas (To Apply *Pro Hac Vice*)
1180 Avenue of the Americas, 20th Fl.
New York, NY 10036
Tel: (212) 447-7060
Fax: (800) 922-4851
jwhatley@whatleykallas.com
ekallas@whatleykallas.com

5

6

7

8

***Attorneys for Plaintiff***

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, including its recitals and exhibits ("Agreement"), is made and entered into as of this __ day of February 2017, by Aetna Inc., Aetna Life Insurance Company, Aetna Specialty Pharmacy, LLC (collectively "Aetna"), Coventry Health Care, Inc., Coventry Health and Life Insurance Company, Coventry Health Plan of Florida, Inc. and Coventry Health Care of Florida, Inc. (collectively, "Coventry"), and the four individuals who have been named as JOHN DOE Plaintiffs in *Doe, et al. v. Aetna, Inc., et al.*, Case No. 3:14-cv-02986-LAB-DHB, and in *Doe, et al. v. Coventry Health Care, Inc., et al.,* U.S. Dist. Ct. S.D. Fl. Case No. 0:15-cv-62685-CMA (collectively, "Plaintiffs").   Aetna, Coventry, and Plaintiffs are collectively referred to herein as the "Parties," or individually as a "Party."

## I.  BACKGROUND

WHEREAS, Plaintiffs collectively filed two lawsuits, one in the United States District Court for the Southern District of California (captioned *Doe, et al. v. Aetna, Inc., et al.*, Case No. 3:14-cv-02986-LAB-DHB), and one in the United States District Court for the Southern District of Florida (captioned *Doe, et al. v. Coventry Health Care, Inc., et al.,* U.S. Dist. Ct. S.D. Fl. Case No. 0:15-cv-62685-CMA) (collectively, "Lawsuits").  In these Lawsuits, Plaintiffs challenge an alleged requirement that members of Aetna and Coventry health plans obtain HIV Medications solely through the mail instead of through a retail pharmacy.  Plaintiffs assert various causes of action under state and federal law;

WHEREAS, Aetna and Coventry deny any wrongdoing or liability whatsoever with respect to the Lawsuits and any and all allegations made therein, and without admitting any wrongdoing or liability whatsoever, nevertheless have agreed to enter into this Agreement to avoid

1

the prospect and the uncertainties of litigation, and to promptly resolve the issues raised in the Lawsuits;

WHEREAS, Plaintiffs have been fully advised by Plaintiffs' counsel Whatley Kallas, LLP, Podhurst Orseck P.A., and Consumer Watchdog attorneys (collectively, "Plaintiffs' Counsel") as to the terms and effects of this Agreement, including the nature of the claims released, the potential for success if the Lawsuits were to be litigated to their conclusions, and the significant relief obtained by the settlement;

WHEREAS, in evaluating the settlement set forth in this Agreement, the Parties and their counsel have concluded that the substantial benefits provided under this Agreement make a settlement pursuant to such terms and conditions reasonable when weighed against the uncertainties and complexities of such litigation and overcoming the legal and factual defenses that have been asserted by Aetna and Coventry, and the expense and length of time necessary to prosecute the Lawsuits through trial, as compared to providing relief promptly and efficiently;

WHEREAS, the Parties desire to settle all of the Released Claims as that term is defined herein by or on behalf of Plaintiffs but not releasing any claims of any other persons except as provided herein;

WHEREAS, the Parties, through their respective counsel, have engaged in extensive arm's length negotiations with the assistance of a mediator in reaching this Agreement, and the formal and informal exchange of relevant information;

WHEREAS, the Parties, and their respective counsel, believe that the terms of the settlement set forth in this Agreement are fair, reasonable and adequate;

NOW, THEREFORE, it is agreed that, in consideration of the promises and mutual covenants set forth in this Agreement, the Parties have agreed to the following terms.

The recitals stated above are true and accurate and are hereby made a part of this Agreement.

## II.    DEFINITIONS

A.    The term "Aetna Plan(s)" means all insured individual, family, group, or commercial health plans that have a prescription drug benefit that is administered by or through Aetna.

B.    The term "Coventry Plan(s)" means all insured commercial health plans that have a prescription drug benefit that is administered by or through Coventry.

C.    The term "Complaints" shall refer to the amended complaints filed in *Doe, et al. v. Aetna, Inc., et al.*, U.S. Dist. Ct. S.D. Cal. Case No. 3:14-cv-02986-LAB-DHB, and in *Doe, et al. v. Coventry Health Care, Inc., et al.,* U.S. Dist. Ct. S.D. Fl. Case No. 0:15-cv-62685-CMA that are the operative Complaints in the Lawsuits as of the Settlement Effective Date.

D.    The term "Current Member" means a natural person who has submitted a claim for coverage of an HIV Medication to an Aetna Plan or Coventry Plan since January 1, 2011, and who as of the Settlement Effective Date is enrolled in or covered by an Aetna Plan or Coventry Plan.

E.    The term "Former Member" means a natural person who submitted a claim for coverage of an HIV Medication to an Aetna Plan or Coventry Plan and who, after January 1, 2011, was, but as of the Settlement Effective Date no longer is, enrolled in or covered by an Aetna Plan or Coventry Plan.

F.    The phrase "HIV Medication" shall refer to any self-administered medication prescribed by a physician to a Current Member or Former Member in connection with the treatment of HIV or AIDS, but shall not include Limited Distribution Drugs or any other self-

3

administered medication for treatment of HIV or AIDS that requires special handling, coordination with the Member's provider, or education of the Member that cannot be provided by a retail pharmacy (*e.g.*, Fuzeon). The phrase "Limited Distribution Drugs" shall refer to prescription drugs that are only available through select pharmacies or wholesalers as determined by the manufacturer.

G. The term "Persons" means persons and entities, including, without limitation, any individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, or any other persons or entities.

H. The term "Released Claims" means any and all known and unknown claims for relief, causes of action, suits, rights of action, or demands, whether sounding in contract, tort, equity, or any violation of law or regulation, including, without limitation, claims for injunctive or other equitable relief, damages, debts, indemnity, contribution, or for costs, expenses and attorney's fees, arising from the claims asserted in the Lawsuits concerning the Aetna Plans and Coventry Plans, subject to the terms of this Agreement. All claims under California Civil Code section 1542 are waived with regard to the Released Claims consistent with Section 8 herein and the terms of this Agreement.

I. The phrase "Released Parties" shall refer individually and collectively, as appropriate, to Aetna and to all of its affiliates and Coventry and to all of its affiliates, and any sponsor of an Aetna Plan or a Coventry Plan and its successors and/or assigns but only if the plan sponsor or any successors and/or assigns operate in compliance with the provisions of Section III.3.a, below.

J. The phrase "Settlement Effective Date" shall mean the date upon which the Agreement has been executed by the Parties.

### III.  TERMS OF AGREEMENT

1.      **Non-Admission of Liability**.  This Agreement is for settlement purposes only, and neither the fact of, nor any specific provision contained in, this Agreement nor any action taken hereunder shall constitute, or be construed as, any admission of the validity of any claim or any fact alleged by Plaintiff or by any other Person of any wrongdoing, fault, violation of law, or liability of any kind on the part of the Released Parties.  This Agreement constitutes a compromise pursuant to Fed. R. of Evidence 408, Fl. Evidence Code 90.408 and Cal. Evidence Code section 1152 and all similar state or federal laws, rights, rules, or legal principles of any other jurisdiction that may be applicable.  It shall not be offered or be admissible in any proceeding, either in whole or in part, as evidence against the Released Parties, except in any action or proceeding to enforce its terms.

2.      **Applicability of Agreement**

   a.      The terms of this Agreement shall apply to all Aetna Plans and all Coventry Plans.

   b.      The terms of this Agreement shall continue to remain in full force and effect regardless of whether any merger between Aetna Inc. and any other entity is completed.

3.      **Settlement Consideration**.  In consideration for entering into the terms of this Agreement, Aetna and Coventry shall, in accordance with the terms of this Agreement, unless otherwise specifically modified below, implement procedures to provide for the following:

   a.      **Mail-Order Programs And Right to Obtain HIV Medication from a Retail Pharmacy**

Coventry and Aetna represent that as of January 1, 2016, they do not mandate that any Person must obtain HIV Medications by mail for any Aetna Plan or Coventry Plan. Aetna and Coventry further affirm that Current Members of Aetna Plans and Coventry Plans may obtain HIV Medications through a retail pharmacy pursuant to the pharmacy benefits available under their Coventry Plan or their Aetna Plan.

### b.    Notice of Options

Aetna and/or Coventry will provide notice of the policy set forth in III.3.a. to all Current Members who have submitted a claim for coverage of HIV Medications since January 1, 2015. All Current Members shall be sent a letter by United States Postal Service. The form of the communication to be sent to Current Members is attached hereto as Exhibit A1 (for Current Members of Coventry Plans) and Exhibit A2 (for Current Members of Aetna Plans).

### c.    No Loss of or Decrease in Benefits

Current Members shall not suffer any additional personal expense, or decrease, alteration, or reduction in pharmacy benefits available under their Aetna Plan or Coventry Plan solely because of exercising their right: (i) to obtain their HIV Medications at a retail pharmacy pursuant to the pharmacy benefits available under their Aetna Plan or Coventry Plan and/or (ii) to submit a claim for reimbursement of Out-of-Pocket Costs under the terms of this Agreement.  This provision shall in no way limit Aetna's and Coventry's absolute right and sole discretion, subject to applicable law, to (1) control the formularies for Aetna Plans or Coventry Plans, or (2) place medications, including HIV Medications, into various classes or tiers of its formularies for Aetna Plans or Coventry Plans, or (3) impact Aetna's or Coventry's ability to establish the cost-shares applicable to such tiers, so long as doing so is not inconsistent with the terms of this Agreement.  This provision shall in no way limit the applicability of the benefit design requirements of the Current

Member's prescription drug benefit if the member chooses to obtain HIV Medications from a retail pharmacy pursuant to the pharmacy benefits available under their Aetna Plan or Coventry Plan, so long as doing so is not inconsistent with the terms of this Agreement.

### d.    Right to Promote Specialty Pharmacy Services

Nothing herein shall be construed to restrict or prohibit Aetna or Coventry or their agents from promoting any services provided by a Specialty Pharmacy, so long as such communications are consistent with the communication set forth in Exhibits A1, A2, B1, and B2 hereto.

### e.    No Retaliation for Filling Prescriptions

Aetna and Coventry will not penalize a retail pharmacy or alter the "in-network" status of a retail pharmacy solely on the basis that the pharmacy dispenses HIV Medications.

### f.    Reimbursement of Certain Out-of-Pocket Costs

### 1.    Reimbursement for Certain Current and Former Members

As provided in Sections III.3.f.2. and III.3.f.3, certain Current Members and Former Members of Coventry commercial plans and Aetna individual plans may submit a claim for reimbursement of certain Out-of-Pocket Costs they incurred. These Out-of-Pocket Costs are only available to Current Members and Former Members of Coventry commercial plans and Aetna individual plans who filled prescriptions between the dates set out in Paragraphs III.3.f.2 and III.3.f.3 below.

### 2.    Eligible Out-of-Pocket Costs for Coventry Commercial Plan Members

The "Out-of-Pocket Costs" available to Current Members and Former Members of Coventry commercial plans are: (1) for prescriptions filled at a retail pharmacy between January 1, 2011 and December 31, 2015, the difference between (a) the amount the member paid out-of-

pocket for the member's HIV Medications at a retail pharmacy as a result of being considered an out-of-network benefit, and (b) the amount the member would have paid out-of-pocket if the member had obtained those HIV Medications from the specialty pharmacy designated by their Coventry Plan; or (2) for prescriptions filled through the mail between January 1, 2012 and December 31, 2013, the additional amounts the member paid because the member was an eligible participant of the Ryan White, ADAP and/or other co-pay assistance program or manufacturer discount program, but could not access the co-pay assistance or manufacturer discounts of those programs because the member obtained HIV Medications from the specialty pharmacy designated by their Coventry Plan instead of at a retail pharmacy where the co-pay assistance or discount amount would have applied to their purchase. "Out-of-Pocket Costs" does not include the member's applicable in-network or out-of-network deductible, co-pay or co-insurance requirements, or co-pay assistance programs or discounts that were applied to the member's purchase of HIV Medications.

**3.      Eligible Out-of-Pocket Costs for Aetna Individual Plan Members**

The "Out-of-Pocket Costs" available to Current Members and Former Members of Aetna individual plans are, for prescriptions filled at a retail pharmacy between January 1, 2015 and May 31, 2015, the difference between (a) the amount the member paid out-of-pocket for their HIV Medications at a retail pharmacy as a result of being considered an out-of-network benefit, and (b) the amount the member would have paid out-of-pocket if they had obtained those HIV Medications from Aetna Specialty Pharmacy. "Out-of-Pocket Costs" does not include the member's applicable in-network or out-of-network deductible, co-pay or co-insurance requirements, or co-pay assistance programs or discounts that were applied to the member's purchase of HIV Medications.

### 4.    Required Proof of Out-of-Pocket Expenses

To be reimbursed for Out-of-Pocket Costs, the Current Member or Former Member must submit adequate documentation substantiating the member's payment for HIV Medications and the specific amount of Out-of-Pocket Costs for which they are seeking reimbursement under this Agreement. If a member requests reimbursement of Out-of-Pocket Costs related to the purchase of HIV Medications at a retail pharmacy as a result of being considered an out-of-network benefit, the member must submit receipts and any other records of payment supporting the claim along with a completed Claim Form.  Other records of payment may include credit card payment records, a statement from a pharmacist, or any other evidence of payments made to a pharmacist for the member's HIV Medications.  If a member's claim is related to the Ryan White, ADAP or other co-pay assistance programs or manufacturer discount program, the member must provide:  proof of purchase, proof of eligibility for the program or discount during the same time frame when the prescription was filled by mail order, and proof of the co-pay assistance or discount amount to which the member would have been entitled at the time the member filled the prescription identified.

### 5.    Deadline For Submitting Proof

To be timely submitted, the completed Claim Form must be mailed to a third party claims administrator agreed to by the Parties and postmarked no later than 60 days after the date Coventry or Aetna mails the Notice and Claim Form attached hereto as Exhibits B1, B2, C1 and C2 to the Former Member or Current Member.

### 6.    Fund For Payment Of Out-of-Pocket Expenses

Upon confirming the validity of the submitted documents, the claims administrator shall determine the total amount of valid Out-of-Pocket Costs incurred by each Person who timely

submitted a claim for payment of Out-of-Pocket Costs. Coventry or Aetna, or the claims administrator on their behalf, shall then reimburse those Current Members and Former Members for their valid Out-of-Pocket Costs. If the total amount of valid Out-of-Pocket Costs exceeds $295,000, then the amount of reimbursement to be paid to each Person shall be prorated by dividing $295,000 by the total value of timely and valid claims submitted, and applying that percentage to reduce the amount of each individual claim to be paid. Under no circumstances shall Coventry and Aetna be required to pay more than $295,000 pursuant to this paragraph. If the total amount of valid Out-of-Pocket Costs is less than $295,000, Coventry and Aetna will be entitled to keep the difference between $295,000 and the total amount of valid Out-of-Pocket Costs claimed. Prior to execution of this Agreement, Coventry and Aetna provided Plaintiffs' Counsel with claim data showing denied claims and coinsurance amounts for Current Members and Former Members of Aetna Plans and Coventry Plans during the time periods set out in Sections III.3.f.2. and III.3.f.3. The identification of the claims administrator and the specific procedures to be followed by the claims administrator in processing such claims and the calculation of the potential proration formula are attached hereto as Exhibit D.

7.      **Notice of Opportunity For Reimbursement Of Out-of-Pocket Costs**

(i)      Eligible Current Members and Former Members of Coventry commercial plans will be sent a notice letter, in the form attached hereto as Exhibit B1, advising them of the ability to submit a claim for reimbursement of Out-of-Pocket Costs as set out in paragraph III.3.f.2., along with the Claim Form in the form attached hereto as Exhibit C1. Such communications shall advise Current Members and Former Members of the process to be

established for seeking reimbursement of eligible Out-of-Pocket Costs and the requirements for doing so, including all pertinent deadlines.

(ii)    Eligible Current Members and Former Members of Aetna individual plans will be sent a notice letter, in the form attached hereto as Exhibit B2, advising them of the ability to submit a claim for reimbursement of Out-of-Pocket Costs as set out in paragraph III.3.f.3., along with the Claim Form in the form attached hereto as Exhibit C2. Such communications shall advise Current Members and Former Members of the process to be established for seeking reimbursement of eligible Out-of-Pocket Costs and the requirements for doing so, including all pertinent deadlines.

g.    **Cost and Expenses of Agreement**

All costs and expenses associated with disseminating notice, claims administration and the payments described in Sections III.3(a) - (f), 7 and 8 of this Agreement shall be paid or borne by Aetna and Coventry.

h.    **Enforceability of Agreement**

1.    All Current Members and Former Members are intended third-party beneficiaries of this Agreement.  The terms of this Agreement are to be directly enforceable by such Persons.

2.    The terms of this Agreement can be enforced by any Current Member or Former Member in any Court of competent jurisdiction in the United States of America.

4.    <u>**Dismissal of Lawsuits.**</u>  Within five days of the Effective Date, Plaintiffs shall file a request in the forms attached hereto as Exhibits E and F with both Courts in which the Complaints

are pending to dismiss the Lawsuits with prejudice as to Plaintiffs and without prejudice as to all members of the putative class as defined in the Complaints in the Lawsuits.

5.    **Non-Disparagement.**  Each Party agrees that it shall not, directly or indirectly, at any time, make any disparaging remark about a Party, either orally or in writing, concerning the terms of this Agreement.  However, nothing in this Settlement Agreement is intended to or shall be interpreted to restrict either Party's rights and/or obligations: (i) to testify truthfully in any legal forum; or (ii) to cooperate with or provide information to any government agency or commission if contacted by such government agency or commission for information.  Nothing in this Paragraph shall be interpreted as limiting any Party's right to seek further damages or legal relief in the event of a breach. The Parties further represent, agree and acknowledge that the settlement is a fair resolution of these claims for the Parties.  Neither the Parties nor their respective counsel shall make any statements suggesting the contrary, either before or after the Settlement Effective Date of this Agreement.

6.    **Compensation to Plaintiffs**. Aetna agrees to pay the four named Plaintiffs in the Lawsuits collectively $24,000.  The Parties represent that their agreement to this amount did not occur until after the substantive terms of the Agreement had been negotiated and agreed.  This amount shall be payable within 30 days after the Settlement Effective Date to the client trust account of Whatley Kallas, LLP or as separately agreed to in writing by the Parties, and distributed as agreed to with Plaintiffs by their Counsel.

7.    **Payments to Plaintiffs' Counsel for Attorneys' Fees and Reimbursement of Expenses**

a.    In consideration for entering into the terms of the Agreement and the releases provided for herein, Aetna and Coventry agree to collectively pay Plaintiffs' Counsel

attorneys' fees and reimbursement of expenses, the amount of which is to be negotiated separately or determined as set forth below in Section III.7.d.  Plaintiffs' Counsel agree that they will not seek additional attorneys' fees, expenses or incentive awards or any other form of compensation from the Released Parties as to the Released Claims as those terms are defined in this Agreement. Plaintiffs' Counsel shall allocate such attorneys' fees and expenses among themselves in a manner that, in their sole discretion, reflects the respective contributions of Plaintiffs' Counsel to the results achieved in this matter.  The Parties represent that their agreement to the method for determining such amounts did not occur until after the substantive terms of the Agreement had been negotiated and agreed.

      **b.**      All such amounts shall be payable within 30 days after the Settlement Effective Date, agreement or order and the receipt by Aetna of W-9s for all payees, whichever is later, to the client trust account of Whatley Kallas, LLP or as separately agreed to in writing by the Parties.

      **c.**      Other than as set forth in this Agreement, the Released Parties shall have no responsibility or liability whatsoever regarding the payment of attorneys' fees, costs, expenses or incentive awards or compensation of any other kind to Plaintiffs' Counsel or other attorneys representing Plaintiffs or any other Persons as to the Released Claims.

      **d.**      No later than 30 days after the execution of this Agreement, if the Parties have not by that time reached agreement as to the amount of attorneys' fees and reimbursement of expenses to be paid to Plaintiffs' Counsel, the Parties shall engage in a mediation before Brian Spector, Esq. to determine the amount to be paid by Aetna and/or Coventry under this Section. If this mediation is unsuccessful, within 45 days thereafter Plaintiffs' Counsel and Aetna and Coventry shall participate in a "baseball" arbitration to determine the amount of attorneys' fees

and reimbursement of expenses to be paid to Plaintiffs' Counsel under this Section before an

agreed-to neutral, with each side selecting a proposed amount to be awarded and the arbitrator

selecting between either of the two selected amounts.  The Parties and their counsel agree such a

determination shall be binding, final, and non-appealable.

8.    **Releases, Waiver and Covenant Not to Sue**

a.    Effective as of the Settlement Effective Date, and in consideration of this

Agreement, Plaintiffs, on behalf of themselves and their predecessors, successors, assigns,

descendants, dependents, and heirs (but expressly not on behalf of any Current Member or Former

Member as defined in this Agreement except themselves, or any putative class member as defined

in the Complaints) do fully release and forever discharge the Released Parties from the Released

Claims and forever discharge the Released Parties and their counsel from any claims arising out

of the investigation, filing, defense or resolution of the Lawsuits, and hereby covenant they (i)

shall not take any adverse action against the Released Parties or the Released Parties counsel in

response to or in retaliation to settling or dismissal of the Lawsuits, or as a result of entering into

this Agreement; and, (ii) shall not assert any of the claims asserted in these Lawsuits in any other

action, lawsuit or administrative proceeding.

b.    The Released Parties, on behalf of themselves and their respective

successors, assigns, past, present, and future parents, subsidiaries, joint venturers, partnerships,

related companies, affiliates, unincorporated entities, divisions, groups, directors, officers,

shareholders, employees, agents, representatives, servants, partners, and  administrators,  do fully

release and forever discharge Plaintiffs and Plaintiffs' Counsel, on behalf of themselves and their

respective predecessors, successors, assigns, past, present, and future parents, subsidiaries, joint

ventures, partnerships, related companies, affiliates, unincorporated entities, divisions, groups,

14

directors, officers, shareholders, employees, agents, representatives, servants, partners, executors, administrators,  descendants, dependents, and heirs, from any claims arising out of the investigation, publication,  prosecution or resolution of these Lawsuits and hereby covenant they shall not take any adverse action against Plaintiffs or Plaintiffs' Counsel in response to or in retaliation to the submission or resolution of the Lawsuits, or as a result of entering into this Agreement.

      c.      The Parties understand that if any fact relating to any matter covered by this Agreement is later found to be other than or different from the facts now believed by them to be true, they expressly accept and assume the risk of such possible differences in fact and agree and acknowledge that this Agreement shall nevertheless remain fully binding and effective.

      d.      The Parties expressly understand and acknowledge that certain state statutes and principles of common law provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his, her, or its favor.  For example, Cal. Civil Code section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HER OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

To the extent that it could be argued that such statutes or principles of common law are applicable here, the Parties agree that any such statutes, principles of common law or other sources of legal authority of any and all jurisdictions that may be applicable are hereby knowingly and voluntarily waived and relinquished, and further agree and acknowledge that this is an essential term of this Agreement.  The Parties understand the statutory language of Section 1542 of the California Civil Code and nevertheless elect to release the above-described claims, whether known or unknown,

and specifically waive any rights that each may have under said Civil Code section, and by executing below fully understand that if the facts with respect to this Agreement are found hereafter to be other than or different from the facts now believed to be true, each expressly accepts and assumes the risk of such possible difference in fact and agrees that this Agreement shall be and remain effective, notwithstanding any such difference.  The Parties declare that prior to and in connection with the execution of this Agreement, they have been apprised of sufficient relevant data from sources selected by them so as to exercise their judgment intelligently in deciding whether to execute this document and further declare that their decision is not predicated on or influenced by any declarations or representations of any other party.  The Parties state that this Agreement is executed voluntarily by them with full knowledge of its significance and legal effect.

      e.      Upon the Settlement Effective Date, Plaintiffs and the Released Parties shall have agreed to forever refrain from instituting, maintaining, or proceeding in any action against the Plaintiffs, Plaintiffs' Counsel or the Released Parties, or counsel for the Released Parties, as applicable to each, with respect to any of the claims set forth in this Section.  The Parties hereby represent they are not aware of any related action pending in any court of competent jurisdiction that asserts any of the claims set forth in this Section, other than as identified herein.

      f.      This Agreement may be pleaded as a full and complete defense to, and may be used as the basis for a temporary restraining order or preliminary or permanent injunction against, any action, suit or other proceeding, which has been or may be instituted, prosecuted, continued to be prosecuted, or attempted, asserting any claim released by this Agreement.

      **9.**      **<u>Severability</u>.** If it is determined by any court of competent jurisdiction that any provision hereof is unlawful or unenforceable, the remaining provisions hereof shall remain in full force and effect.

10.    **Entire Agreement.**  This Agreement and all Exhibits thereto shall constitute the entire agreement between the Parties, and supersedes and replaces any prior agreements and understandings, whether oral or written, between and among them, with respect to such matters. This Agreement shall not be subject to any change, modification, amendment, or addition, without the express written consent of the Parties, and may be amended or modified only by a written instrument signed by or on behalf of a Party or their representative or their respective successors-in-interest.

11.    **Binding Agreement.**  This Agreement shall benefit and bind the Parties, as well as their representatives, affiliates, heirs and successors.  However, nothing contained in this Agreement is intended to, or shall, in any way reduce, eliminate or supersede any Party's existing obligation to comply with applicable provisions of relevant state and federal law and regulations, and Coventry and Aetna shall comply with such state and federal law and regulations.

12.    **No Assignment.** The Parties each represent and warrant that they have not assigned, transferred or purported to assign or transfer, in whole or in part, any interest in any of the rights and claims that are the subject of this Agreement.

13.    **Choice of Law.**  The validity, construction, interpretation, performance, and enforcement of this Agreement shall be governed by the internal, substantive laws of the State of California without giving effect to applicable choice of law principles.

14.    **Counterparts.**  This Agreement may be executed in one or more counterparts, delivered either manually or by email or facsimile.  All executed counterparts, and each of them, shall be deemed to be one and the same original instrument.  This Agreement shall be deemed executed as of the date set forth on the first page of this Agreement.  The Parties shall exchange among themselves original, signed counterparts.

15.     **Advice of Counsel.**  Each of the Parties has had the benefit of the advice of counsel in the negotiation, drafting and execution of this Agreement, and the language in all parts of this Agreement is the product of the efforts of such counsel.   Accordingly, neither this entire Agreement, nor any specific provision within the Agreement, shall be deemed to have been proposed or drafted by any Party or construed against any Party on that alleged basis.   This Agreement shall be construed as a whole, according to its plain meaning.

16.     **Authority.**  The Parties each represent and warrant that they have authority to enter into this Agreement either directly or through their counsel.

17.     **Notification.**  All notices and other communications between the Parties referenced in this Agreement shall be in writing and shall be served by overnight mail or by registered or certified mail, return receipt requested, addressed to the Parties' counsel at their respective addresses as set forth below:

> Notices to Plaintiffs
>
> Alan M. Mansfield, Esq.
> WHATLEY KALLAS, LLP
> 16870 W. Bernardo Drive, Suite 400
> San Diego, CA 92127
>
> Jerry Flanagan, Esq.
> CONSUMER WATCHDOG
> 2701 Ocean Park Blvd. Suite 112
> Santa Monica, CA 90405
>
>
> Notices to Aetna and/or Coventry
>
> Richard Doren, Esq.
> Heather Richardson, Esq.
> GIBSON DUNN & CRUTCHER LLP
> 333 South Grand Avenue
> Los Angeles, CA, 90071

18.    **Time for Compliance.**  If the date for performance of any act required by or under this Agreement to be performed on a particular day or within a specified period of time falls on a Saturday, Sunday or legal or Court holiday, such act may be performed upon the next business day, with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.  If an act is to be performed on a particular day, it must be completed no later than 4:30 p.m. Pacific Standard or Daylight Time on that day as then in effect.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement and Release to be executed effective as of this ___ day of February, 2017.

**AETNA INC, AND ITS AFFILIATES**

_____

**By:  William Wolfe**

**Title:  Vice President, Pharmacy**

**Dated:**  February 14, 2017_____

**COVENTRY HEALTHCARE, INC,**

_(signature)_

_____

**By:  William Wolfe**

**Title: Vice President, Pharmacy**

**Dated:  February 14, 2017**

**COVENTRY    JOHN    DOE    (ACTUAL SIGNATURE   TO   BE        SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)**

_____

**By:    JOHN DOE**

**Dated:_____, 2017**

**AETNA JOHN DOE 1 (ACTUAL SIGNATURE TO   BE        SEPARATELY   SUPPLIED   IN CONFIDENCE    PURSUANT    TO    NON-DISCLOSURE AGREEMENT)**

_____

**By:    JOHN DOE**

**Dated:_____, 2017**

Title:

Dated: _____, 2017

COVENTRY JOHN DOE (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By: JOHN DOE

Dated: 2/21, 2017

AETNA JOHN DOE 1 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated: _____, 2017

AETNA JOHN DOE 2 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated: _____, 2017

20

Title:

Dated:_____, 2017

COVENTRY JOHN DOE (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:   JOHN DOE

Dated:_____, 2017

AETNA JOHN DOE 1 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

By:   JOHN DOE

Dated: 2/21 , 2017

AETNA JOHN DOE 2 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:   JOHN DOE

Dated:_____, 2017

20

Title:

Dated:_____, 2017

COVENTRY JOHN DOE (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated:_____, 2017

AETNA JOHN DOE 1 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated:_____, 2017

AETNA JOHN DOE 2 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated: 2/21 , 2017

20

**AETNA JOHN DOE 3 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)**

By:  **JOHN DOE**

Dated: _____, 2017

**PLAINTIFFS' COUNSEL:**

**WHATLEY KALLAS, LLP**

_Edith M. Kallas_

By:    Edith M. Kallas

Dated: _Feb. 3_ , 2017


**CONSUMER WATCHDOG**

_____

By:    Jerry Flanagan

Dated: _____, 2017


**PODHURST ORSECK, P.A.**

_____

By:    Peter Prieto

Dated: _____, 2017


**DEFENDANTS' COUNSEL:**

**GIBSON, DUNN & CRUTCHER LLP**

_____

By:    Richard Doren

Dated: _____, 2017


22

**PLAINTIFFS' COUNSEL:**

**WHATLEY KALLAS, LLP**

_____

By:     Edith M. Kallas

Dated:_____, 2017

**CONSUMER WATCHDOG**

_____

By:     Jerry Flanagan

Dated:_____, 2017

**PODHURST ORSECK, P.A.**

_____

By:     Peter Prieto

Dated:_____, 2017

**DEFENDANTS' COUNSEL:**

**GIBSON, DUNN & CRUTCHER LLP**

_____

By:     Richard Doren

Dated:_____, 2017

22

**PLAINTIFFS' COUNSEL:**

**WHATLEY KALLAS, LLP**

By:    **Edith M. Kallas**

Dated: _Feb. 3_ , 2017


**CONSUMER WATCHDOG**


By:    **Jerry Flanagan**

Dated: _____, 2017


**PODHURST ORSECK, P.A.**

By:    **Peter Prieto**

Dated: _Feb. 21_ , 2017


**DEFENDANTS' COUNSEL:**

**GIBSON, DUNN & CRUTCHER LLP**


By:    **Richard Doren**

Dated: _____, 2017

PLAINTIFFS' COUNSEL:

WHATLEY KALLAS, LLP

_____

By:     Edith M. Kallas

Dated:_____, 2017

CONSUMER WATCHDOG

_____

By:     Jerry Flanagan

Dated:_____, 2017

PODHURST ORSECK, P.A.

_____

By:     Peter Prieto

Dated:_____, 2017

DEFENDANTS' COUNSEL:

GIBSON, DUNN & CRUTCHER LLP

_____

By:     ~~Richard Doren~~ Heather L. Richardson

Dated: 2/23 , 2017

22

EXHIBIT A1 – Notice to Current Coventry Commercial Members

[LOGO:]

<Current Member First Name> <Current Member Last name>
<Address 1>
<Address 2>
<City> <State> <Zip >

Dear <Current Member First Name><Current Member Last name>:

The purpose of this letter is to advise you of the options available to you as a member of your Coventry health plan when filling prescriptions for HIV Medications.  For many HIV Medications, members can use a retail pharmacy or a mail order pharmacy, regardless of how they obtain their medications today.  It's the member's choice.

**Retail pharmacy**. Members may fill prescriptions for HIV Medications that are not on the Specialty Drug List at any in-network retail pharmacies.  If members choose to fill prescriptions for HIV Medications at a retail pharmacy, they should be sure to use a pharmacy that is covered by their plan.  Some Coventry commercial health plans do not provide any coverage for out-of-network pharmacies.  A list of pharmacies that are in-network with Coventry is available at www.<<<<<<<<.com.

**Express Scripts.**  Prescriptions for HIV Medications that are not on the Specialty Drug List may also be filled by Express Scripts, which sends medications to members through the mail.  To sign up for Express Scripts, call us toll-free at [INSERT].

If a member is prescribed HIV Medication(s) that are on the Specialty Drug List, Coventry will fill those prescriptions through Express Scripts, unless the member calls to notify Coventry that the member would prefer to use an in-network retail pharmacy.  Most, but not all, HIV Medications on the Specialty Drug List can be filled at in-network retail pharmacies.

To choose to fill HIV Medications at in-network retail pharmacies or to learn more about these delivery options, members can call Coventry at XXXXXX.  Members must initiate the call to Coventry to make any changes to the way they receive HIV Medications that are on the Specialty Drug List, but members may seek the assistance of their pharmacists during the course of those calls.

**We're here to help.**
If you have any questions about your pharmacy options, you can log into your secure member website or call the toll-free phone number on your member ID card.

Thank you for being a pharmacy member.

<Health Plan Name>

EXHIBIT A2 – Notice to Current Aetna Members

[LOGO:]

<Current Member First Name> <Current Member Last name>
<Address 1>
<Address 2>
<City> <State> <Zip >

Dear <Current Member First Name><Current Member Last name>:

The purpose of this letter is to advise you of the options available to you as a member of your Aetna health plan when filling prescriptions for HIV Medications.  For many HIV Medications, members can use a retail pharmacy or a mail order pharmacy, regardless of how they obtain their medications today.  It's the member's choice.

**Retail pharmacy**. Members may fill prescriptions for HIV Medications that are not on the Specialty Drug List at any in-network retail pharmacies.  If members choose to fill prescriptions for HIV Medications at a retail pharmacy, they should be sure to use a pharmacy that is covered by their plan.  Some Aetna health plans do not provide any coverage for out-of-network pharmacies.  A list of pharmacies that are in-network with Aetna is available at **www.<<<<<<<<.com.**

**Aetna Rx Home Delivery**.  Members may also choose to fill prescriptions for HIV Medications that are not on the Specialty Drug List through Aetna Rx Home Delivery.  To sign up for Aetna Rx Home Delivery call us toll-free at (1-888-792-3862) or TDD: 1-800-823-6373.

If a member is prescribed HIV Medication(s) that are on the Specialty Drug List, Aetna will fill those prescriptions through Aetna Rx Home Delivery, unless the member calls to notify Aetna that the member would prefer to use an in-network retail pharmacy.  Most, but not all, HIV Medications on the Specialty Drug List can be filled at in-network retail pharmacies.

To choose to fill HIV Medications at in-network retail pharmacies or to learn more about these delivery options, members can call Aetna at XXXXXX.  Members must initiate the call to Aetna to make any changes to the way they receive HIV Medications that are on the Specialty Drug List, but members may seek the assistance of their pharmacists during the course of those calls.

**We're here to help.**
If you have any questions about your pharmacy options, you can log into the secure member website or call the toll-free phone number on your member ID card.

Thank you for being a pharmacy member.

<Health Plan Name>

EXHIBIT B1 – Notice of Reimbursement for Coventry

[LOGO:]

<Former Member First Name> <Former Member Last name>
[and]

 <Current Member First Name><Current Member Last name>:

<Address 1>
<Address 2>
<City> <State> <Zip >

**You may be eligible for a refund for certain out-of-pocket costs**

**Dear <Former Member First Name><Former Member Last name>:**
[and]

Dear <Current Member First Name><Current Member Last name>:

Our records show that you sought coverage for HIV Medications under a Coventry health plan.

You may be able to receive a refund if you paid certain out-of-pocket costs, including: (1) between January 1, 2011 and December 31, 2015, you paid out-of-pocket the entire cost of the HIV Medication (or paid an out-of-network rate) because you chose to go to a retail pharmacy rather than receive medications through the mail and your coverage was denied or limited as a consequence; or (2) between January 1, 2012 and December 31, 2013, you received your HIV Medications from the specialty pharmacy designated by your Coventry plan, and because of this, were unable to use a copay assistance or manufacturer discount program for which you were eligible.

Please review the enclosed claim form to determine if you are eligible for the refund.  If you're eligible, please return the claim form by <DATE>.

If you have any questions about the refund process, call <xxx-xxx-xxxx> <Toll-Free Number for Settlement Administrator>.

EXHIBIT B2 – Notice of Reimbursement for Aetna

[LOGO:]

<Former Member First Name> <Former Member Last name>
[and]
<Current Member First Name><Current Member Last name>:
<Address 1>
<Address 2>
<City> <State> <Zip >

**You may be eligible for a refund for certain out-of-pocket costs**

Dear <Former Member First Name><Former Member Last name>:
[and]
Dear <Current Member First Name><Current Member Last name>:

Our records show that you sought coverage for HIV Medications under an Aetna health plan.

You may be able to receive a refund if you paid certain out-of-pocket costs between January 1, 2015 and May 31, 2015.  Specifically, you may be able to receive a refund if: you paid out-of-pocket the entire cost of the HIV Medication (or paid an out-of-network rate) because you chose to go to a retail pharmacy rather than receive medications from Aetna Specialty Pharmacy and your coverage was denied or limited as a consequence.

Please review the enclosed claim form to determine if you are eligible for the refund.  If you're eligible, please return the claim form by <DATE>.

If you have any questions about the refund process, call <xxx-xxx-xxxx> <Toll-Free Number for Settlement Administrator>.

## CLAIM FORM FOR REIMBURSEMENT

You may be eligible to receive reimbursement for certain "Out-of-Pocket Costs" you incurred as a result of purchasing HIV Medications.  Those reimbursable "Out-of-Pocket Costs" are:

**Category 1:**  If, between January 1, 2011 and December 31, 2015, you elected to purchase HIV Medications at a retail pharmacy rather than through the specialty pharmacy designated by your Coventry plan, the difference between (a) the amount you paid out-of-pocket for your HIV Medications at a retail pharmacy as a result of being considered an out of network benefit, and (b) the amount you would have paid out-of-pocket if you had obtained those HIV Medications by mail order; **or**

**Category 2:**  a discount amount that was unavailable to you as an eligible participant of the Ryan White, ADAP and/or other co-pay assistance program or manufacturer discount program because you purchased HIV Medications between January 1, 2012 and December 31, 2013 through the specialty pharmacy designated by your Coventry plan instead of at a retail pharmacy where the co-pay assistance or the discount amount would have applied to your purchase.

"Out-of-Pocket Costs" does **not** include your applicable in-network or out-of-network deductible, co-pay or co-insurance requirements, or co-pay assistance or discount programs that were applied to your purchase of HIV Medications.

To submit a claim for reimbursement of Out-of-Pocket Costs, you must provide the information below and return this Form, along with receipts or records listed in Section III of this Claim Form supporting your claim for reimbursement, to the following address by no later than <insert date from letter>:

<u>Mail completed form to</u>:
<insert address>

## I.    MEMBER INFORMATION

First Name: _____

Last Name: _____

Address: _____

City: _____    State: ___ ___    Zip: ___ ___ ___ ___ ___

Daytime Phone Number:    ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

Evening Phone Number    ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

Email Address: _____

Policy No.: _____

Membership No[1].: _____

---

[1] If you are a former member of a Coventry Plan and don't know your Member No., you can call <xxx-xxx-xxxx> <Toll-Free Number for Coventry/Aetna >.

**II.    SUMMARY OF PAYMENTS [Attach additional pages if necessary]**

    **A.  Category 1:** Please provide the following information for each out-of-pocket expense that falls within Category 1 for which you are seeking reimbursement.

| DATE OF PURCHASE | RETAIL PHARMACY NAME & ADDRESS | NAME(S) OF HIV MEDICATION PURCHASED | AMOUNT PAID |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  | **Total Amount You Paid Out of Pocket (subject to verification)** |  |

    **B.  Category 2:** Please provide the following information for each out-of-pocket expense that falls within Category 2 for which you are seeking reimbursement.

| DATE OF PURCHASE | NAME(S) OF HIV MEDICATION PURCHASED | APPLICABLE COPAY ASSISTANCE OR DISCOUNT PROGRAM | AMOUNT OF COPAY ASSISTANCE |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  | **Total Amount Of Foregone Copay Assistance** |  |

**III.    RECEIPTS & OTHER PAYMENT RECORDS**

If you are requesting reimbursement of Out-of-Pocket Costs, you must submit receipts and any other records of payment supporting your claim along with this completed Claim Form.  Other records of payment may include credit card payment records, a statement from a pharmacist, or any other documentary evidence of payments made to a pharmacist for your HIV Medications. If your claim falls within Category No. 2 above, you must provide: (1) proof of purchase, (2) proof that you were eligible for the program during the same time frame when the prescription was filled, and (3) proof of the discount amount to which you would have been entitled at the time you filled the prescription identified.

**IV.    VERIFICATION**

To the best of my knowledge the foregoing is true and correct. I understand this claim is subject to audit and verification, and that I may be required to submit additional information to support my claim for reimbursement.

Signature: _____ Date (mm/dd/yyyy):_____ ✚

Printed Name: _____

## **CHECKLIST**

1.	Did you fill out Parts I and II?

2.	Did you include a copy of all receipts and other records supporting each claim for reimbursement?

3.	Did you sign the Claim Form in Part IV?

4.	Did you retain a copy for your records?

**Important** -- This claim form needs to be postmarked no later than <insert date from letter>.  We will review the records you provide and determine the total dollar amount of valid Out-of-Pocket Costs.  Depending upon the number of timely and valid claims that are received, this claim may also be subject to being pro-rated.

 IF YOU HAVE ANY QUESTIONS ABOUT THIS CLAIM FORM OR THE CLAIMS PROCESS PLEASE CALL < >[Toll Free Number of Claims Administrator]



## CLAIM FORM FOR REIMBURSEMENT

You may be eligible to receive reimbursement for certain "Out-of-Pocket Costs" you incurred as a result of purchasing HIV Medications, specifically: if, between January 1, 2015 and May 31, 2015, you elected to purchase medications at a retail pharmacy rather than by mail, the difference between (a) the amount you paid out-of-pocket for your HIV Medications at a retail pharmacy as a result of being considered an out of network benefit, and (b) the amount you would have paid out-of-pocket if you had obtained those HIV Medications from Aetna Specialty Pharmacy.

"Out-of-Pocket Costs" does **not** include your applicable in-network or out-of-network deductible, co-pay or co-insurance requirements, or co-pay assistance or discount programs that were applied to your purchase of HIV Medications.

To submit a claim for reimbursement of Out-of-Pocket Costs, please provide the information below and return this Form, along with any receipts or records listed in Section III of this Claim Form supporting your claim for reimbursement, to the following address by no later than <insert date from letter>:

<u>Mail completed form to</u>:
<insert address>

## I.     MEMBER INFORMATION

First Name: _____

Last Name: _____

Address: _____

City: _____     State: ___  ___     Zip: ___ ___ ___ ___ ___

Daytime Phone Number:      ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

Evening Phone Number      ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

Email Address: _____

Policy No.: _____

Membership No[1].: _____

---

[1] If you are a former member of an Aetna Plan and don't know your Member No., you can call <xxx-xxx-xxxx> Toll-Free Number for Coventry/Aetna >.

**II.    SUMMARY OF PAYMENTS [Attach additional pages if necessary]**

| DATE OF PURCHASE | RETAIL PHARMACY NAME & ADDRESS | NAME(S) OF HIV MEDICATION PURCHASED | AMOUNT PAID |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  | **Total Amount You Paid Out of Pocket (subject to verification)** |  |

## III.    RECEIPTS & OTHER PAYMENT RECORDS

If you are requesting reimbursement of Out-of-Pocket Costs, you must submit receipts and any other records of payment supporting your claim along with this completed Claim Form.  Other records of payment may include credit card payment records, a statement from a pharmacist, or any other documentary evidence of payments made to a pharmacist for your HIV Medications.

## IV.    VERIFICATION

To the best of my knowledge the foregoing is true and correct. I understand this claim is subject to audit and verification, and that I may be required to submit additional information to support my claim for reimbursement.

Signature: _____    Date (mm/dd/yyyy):_____

Printed Name: _____

## CHECKLIST

1.    Did you fill out Parts I and II?

2.    Did you include a copy of all receipts and other records supporting each claim for reimbursement?

3.    Did you sign the Claim Form in Part IV?

4.    Did you retain a copy for your records?

**Important** -- This claim form needs to be postmarked no later than <insert date from letter>.  We will review the records you provide and determine the total dollar amount of valid Out-of-Pocket Costs.  Depending upon the number of timely and valid claims that are received, this claim may also be subject to being pro-rated.

 IF YOU HAVE ANY QUESTIONS ABOUT THIS CLAIM FORM OR THE CLAIMS PROCESS PLEASE CALL < >[Toll Free Number of Claims Administrator]



EXHIBIT D

**PROCEDURES FOR DECIDING REIMBURSEMENT CLAIMS**

## I.  OVERVIEW

This document outlines the procedures Kurtzman Carson Consultants ("KCC") [or other claims administrator agreed to by the Parties] is to use in determining the total amount of valid Out-of-Pocket Costs incurred by each Current Member or Former Member who timely submits a claim for payment of Out-of-Pocket Costs and the amount each such Member should be paid with respect to such Out-of-Pocket Costs.  The use of defined terms herein has the same meaning as set forth in the Settlement Agreement.  It is anticipated that in processing claims for reimbursement of Out-of-Pocket Costs questions will arise concerning these procedures and/or specific claims, and KCC is authorized to communicate with Plaintiffs' Counsel and/or Defendants' Counsel with respect to such questions, as it deems appropriate.

These procedures and individual claim determinations may be clarified, revised or amended as agreed to by KCC, Plaintiffs' Counsel, and counsel for Defendants if such agreement is confirmed in writing.

## II. PROCEDURES

### A. Claim Submissions and Timeliness/Untimeliness Determination

1. Current Members or Former Members may submit claims for reimbursement by completing the Claim Form either mailed to them or available at http://www.AetnaCoventryhivsettlement.com and mailing it to KCC along with any receipts or any other records of payment supporting their claims.

2. KCC shall review each Claim Form it receives and determine whether the Claim Form is a "Timely Claim Form" or an "Untimely Claim Form."  Claim Forms that are postmarked on or before 60 days after the date the notice letter is mailed are Timely Claim Forms.  Claim Forms that are postmarked after that date are Untimely Claim Forms.

**Rejection of Untimely Claims Forms**

1. KCC shall send a letter to each person who submitted an Untimely Claim Form informing that person that their claim was not timely submitted and, on that basis, has been denied.

**B. Initial Processing of Timely Claim Forms by KCC**

1. KCC shall review each Timely Claim Form it receives and determine whether (i) the Timely Claim Form was submitted by a Current Member or Former Member, (ii) the Timely Claim Form was completed properly and (iii) the Timely Claim Form is accompanied by receipts or other records of payment, described in II.B.2, that support the claims reflected in the Timely Claim Form. Based on that determination, each Timely Claim Form shall be deemed to be either a "Complete Timely Claim Form," an "Incomplete Timely Claim Form," or an "Improperly Submitted Claim Form" as described in ¶¶ 2-4 below.

2. <u>Receipts and Other Payment Records</u>. If a Current Member or Former Member requests reimbursement of Out-of-Pocket Costs, they must submit receipts and any other records of payment supporting their claim along with the completed Claim Form. Other records of payment may include credit card payment records, a statement from a pharmacist, or any other evidence of payments made to a pharmacist for HIV Medications. If a Current Member's or Former Member's claim is related to the Ryan White, ADAP or other co-pay assistance program or manufacturer discount program, they must provide: proof of purchase, proof of eligibility for the program during the same time frame when the prescription was filled at the Specialty Pharmacy, and proof of the discount amount that they would have been entitled to had they filled their prescription through a retail pharmacy rather than mail order.

3. <u>Complete Timely Claim Forms</u>. If KCC determines that (i) the Timely Claim Form was submitted by a Current Member or Former Member, (ii) the Timely Claim Form was completed properly and (iii) the Timely Claim Form is accompanied by receipts or other records of payment that support the claims reflected in the Timely Claim Form described in II.C.2, then the Timely Claim Form shall be deemed a Complete Timely Claim Form. KCC shall allocate payment to members submitting Complete Timely Claim Forms pursuant to Section II.D below. If the receipts or other records of payment only support a portion of the claims in the Complete Timely Claim Form, then only that portion that is so supported shall be deemed valid; the remainder of the claim shall be deemed an Incomplete Timely Claim Form.

4. <u>Incomplete Timely Claim Forms</u>. If KCC determines that (i) the Timely Claim Form was submitted by a Current Member or Former Member, but that (ii) the Timely Claim Form was not completed properly and/or (iii) the Timely Claim Form is not accompanied by receipts or any other records of payment that support the claims reflected in the Timely Claim Form, then the Timely Claim Form shall be deemed an Incomplete Timely Claim Form.

   a. KCC shall send a letter to each Current Member or Former Member who submitted an Incomplete Timely Claim Form that (i) informs the member of KCC's determination and the basis for that determination, (ii) invites the member to correct the deficiencies KCC identified by submitting a revised Claim Form and/or receipts or any other records of payment that support the member's claim,

as appropriate, and (iii) informs the member that the member's claim will be denied to the extent it is incomplete if KCC does not receive the requested information within 30 days of the date of KCC's letter.

b. If KCC receives the requested information within 30 days of the date of KCC's letter and determines that such information corrects the deficiencies that KCC had identified, then the Incomplete Timely Claim Form and the requested information collectively shall be deemed a Complete Timely Claim Form and it will be processed according to Section II.D below. If the receipts or any other records of payment only support a portion of the claims in the Complete Timely Claim Form, then only that portion that is so supported shall be deemed valid.

c. If KCC does not receive the requested information within 30 days of the date of KCC's letter or KCC determines that such information does not correct the deficiencies that KCC had identified, then KCC shall send the Current Member or Former Member a letter informing the member that KCC did not receive the requested information within 30 days of the date of KCC's letter or that such information does not correct the deficiencies KCC identified and, on that basis, the member's claim has been denied to the extent it is incomplete.

5. <u>Improperly Submitted Claims Form</u>. If KCC determines that the Timely Claim Form was not submitted by a Current Member or Former Member, then the Timely Claim Form shall be deemed an Improperly Submitted Claim Form and the claim will be rejected.

## C. Defendants' Review Of Complete Timely Claim Forms

1. Defendants may elect to review each Complete Timely Claim Form submitted to it by KCC and verify, with respect to each valid claim reflected in the Complete Timely Claim Form, how much the Current Member or Former Member would have paid out-of-pocket had the member purchased those HIV Medications from the Specialty Pharmacy or what the applicable discount would have been if the Member had obtained the HIV Medications at a retail pharmacy. Defendants shall provide that information to KCC.

2. Defendants also may, but is not obligated to, review its records for any information concerning the person who submitted the Complete Timely Claim Form and the purchases of HIV Medications reflected in the Complete Timely Claim Form. To the extent Defendants identify any information that it believes is relevant to the claims reflected in the Complete Timely Claim Form (e.g., information showing that the person who submitted the Complete Timely Claim Form is not a Current Member or Former Member or that the purchases were not made while the person was enrolled in a health insurance policy issued by Aetna or Coventry), Defendants may provide that information to KCC. KCC shall review any information provided to it by Defendants pursuant to this paragraph and determine what impact, if any, it has on the claims in the Complete Timely Claim Form. In making that determination, KCC may, but is not obligated to, communicate with the person who submitted the Complete Timely

Claim Form, Coventry, Aetna, Defendants' Counsel, and/or Plaintiffs' Counsel as it deems appropriate.

## D.  Final Determination of Reimbursement Amounts By KCC

1.  KCC shall determine for each Member who submitted a Complete Timely Claim Form the amount of such Current Member's or Former Member's Out-of-Pocket costs for valid claims based on (i) the information in the Complete Timely Claim Form, (ii) receipts or any other records of payment that support the claims reflected in the Timely Claim Form, (iii) the information it receives from Defendants pursuant to Section II.C.2 above, and (iv) any other information it obtains that it deems relevant.

2.  KCC shall prepare a spreadsheet showing how it calculated the Out-of-Pocket Costs with respect to each Current Member or Former Member who submitted a Claim Form, and it shall email that spreadsheet to Defendants' Counsel and Plaintiffs' Counsel.  The spreadsheet shall include any claim that Defendants initially do not agree to pay in full, or claims that were initially rejected in whole or in part for which the claimant provided supplemental information in response to their rejection letter. Defendants' Counsel and Plaintiffs' Counsel shall have thirty (30) days from their receipt of the spreadsheet to object to the spreadsheet.

3.  If neither Defendants' Counsel nor Plaintiffs' Counsel objects to the spreadsheet within thirty (30) days of receipt, unless otherwise agreed, then the spreadsheet shall be deemed the Final and Binding Spreadsheet.

4.  If Defendants' Counsel and/or Plaintiffs' Counsel objects to the spreadsheet, KCC shall consider whether the objection has any validity.

    a.  If KCC determines that the objection has any validity, it shall send a revised spreadsheet to Defendants' Counsel and Plaintiffs' Counsel by email and explain in the email what changes have been made and why.

    b.  If KCC determines that the objections do not have any validity, it shall send Defendants' Counsel and Plaintiffs' Counsel an email explaining its determination.

5.  If the sum of the Out-of-Pocket Costs in the Final and Binding Spreadsheet is less than or equal to $295,000, then Defendants shall transfer the total sum on the Final and Binding Spreadsheet to KCC, and KCC shall issue checks to the Current Members and Former Members who submitted Complete Timely Claim Forms in the amounts shown on the Final and Binding Spreadsheet.

6.  If the sum of the Out-of-Pocket Costs in the Final and Binding Spreadsheet is greater than $295,000, then Defendants shall transfer $295,000 to KCC, and KCC shall issue checks to Current Members and Former Members who submitted Complete Timely Claim Forms in prorated amounts.  Such prorated amounts shall be determined by dividing $295,000 by the sum of the Out-of-Pocket Costs in the Final and Binding Spreadsheet and multiplying the dollar amount of the individual's Complete Timely

Claim Form by that percentage to reduce the amount of Out-of-Pocket Costs to be paid to each Current Member or Former Member as reflected in the Final and Binding Spreadsheet.

7. KCC shall send a letter to the Current Member or Former Member who submitted the Claim Form at issue advising them of the status of their claim and how any payment was calculated.

EXHIBIT E – Stipulation of Voluntary Dismissal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-62685-CIV-ALTONAGA

JOHN DOE, on behalf of himself and all
others similarly situated,

      Plaintiffs,

vs.

COVENTRY HEALTH CARE, INC.,
COVENTRY HEALTH AND LIFE
INSURANCE COMPANY; COVENTRY
HEALTH PLAN OF FLORIDA, INC.;
COVENTRY HEALTH CARE OF
FLORIDA, INC.; AETNA INC., AETNA
LIFE INSURANCE CO.,

      Defendants.
_____/

## STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. PROC. 41(A)(1)(a)(II)

WHEREAS, on December 22, 2015, Plaintiff filed an action entitled *John Doe v. Coventry Health Care, Inc., et al.*, Case No. 15-cv-62685-ALTONAGA (the "Action"), which was assigned to the Honorable Cecilia M. Altonaga of the Southern District of Florida ("Court");

WHEREAS, based on a recently agreed to settlement that provides for notice to current members of the ability to obtain HIV Medications through a retail pharmacist and an offer of reimbursement to members for certain direct out-of-pocket expenses, the Parties have concluded that the claims asserted in this Action should no longer be prosecuted on a class-wide basis;

WHEREAS, without any admission of liability on the part of either party, the parties desire to avoid continued litigation of any remaining claims for relief;

WHEREAS, no class has been certified and no motion for class certification is pending;

NOW THEREFORE,

In recognition of the foregoing, the parties stipulate that subject to the terms of the Parties' Settlement Agreement, Plaintiff's individual claims in the above-entitled Action will and hereby are voluntarily dismissed with prejudice, and that the claims of all other persons will and hereby are voluntarily dismissed without prejudice, against Defendants pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(ii).

DATED: January ___, 2017

**PODHURST ORSECK, P.A.**
By: /s/ Peter Prieto
   PETER PRIETO (FL Bar No. 501492)
   AARON S. PODHURST (FL Bar No. 63606)
   JOHN GRAVANTE III (FL Bar No. 617113)
   MATTHEW WEINSHALL (FL Bar No. 84783)
   ALISSA DEL RIEGO (FL Bar No. 99742)
   SunTrust International Center
   One S.E. 3rd Avenue, Suite 2700
   Miami, Florida 33131
   Phone: (305) 358-2800/Fax: (305) 358-2382
   pprieto@podhurst.com
   apodhurst@podhurst.com
   jgravante@podhurst.com
   mweinshall@podhurst.com
   adelriego@podhurst.com

**WHATLEY KALLAS, LLP**
Joe R. Whatley, Jr.
jwhatley@whatleykallas.com
Edith M. Kallas (*Admitted  Pro Hac Vice*)
ekallas@whatleykallas.com
1180 Avenue of the Americas, 20th Floor
New York, NY 10036
Tel: (212) 447-7060/Fax: (800) 922-4851

Alan M. Mansfield (*Admitted Pro Hac Vice*)
(Of Counsel)
amansfield@whatleykallas.com
16870 W. Bernardo Dr., Suite 400
San Diego, CA  92127
Tel: (858) 674-6641/Fax: (855) 274-1888

**CONSUMER WATCHDOG**
Jerry Flanagan (*Admitted Pro Hac Vice*)
jerry@consumerwatchdog.org
Laura Antonini (*Admitted Pro Hac Vice*)
laura@consumerwatchdog.org
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522

*Attorneys for Plaintiff*


**GRAY ROBINSON**
By:  /s/ Shari Gerson
  SHARI GERSON (FL Bar No. 17035)
  401 East Las Olas Boulevard, Suite 1000
  Fort Lauderdale, FL 33301
  Tel: (954) 761-8111/Fax: (954) 761-8112
  Shari.gerson@gray-robinson.com

GIBSON DUNN & CRUTCHER, LLP
  Richard J. Doren
  Heather L. Richardson
  333 South Grand Avenue
  Los Angeles, CA 90071
  Tel: (213) 229-7000
  rdoren@gibsondunn.com
  hrichardson@gibsondunn.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the

Clerk of the Court via CM/ECF and served upon all counsel or parties of record via Electronic

Notice of Filing on _____, 2017.


                                                    /s/ John Gravante, III
                                                      John Gravante, III

EXHIBIT F – Stipulation of Voluntary Dismissal

1  WHATLEY KALLAS, LLP
   Edith M. Kallas (Admitted *Pro Hac Vice*)
2  ekallas@whatleykallas.com
   1180 Avenue of the Americas, 20th Floor
3  New York, NY 10036
   Tel: (212) 447-7060/ Fax: (800) 922-4851
4
   Alan M. Mansfield (Of Counsel, SBN: 125998)
5  amansfield@whatleykallas.com
   16870 W. Bernardo Dr., Suite 400
6  San Diego, CA  92127
   Tel: (619) 308-5034/ Fax: (855) 274-1888
7
   CONSUMER WATCHDOG
8  Harvey Rosenfield (SBN: 123082)
   Harvey@consumerwatchdog.org
9  Pamela Pressley (SBN: 180362)
   pam@consumerwatchdog.org
10 Jerry Flanagan (SBN: 271272)
   jerry@consumerwatchdog.org
11 2701 Ocean Park Blvd., Suite 112
   Santa Monica, CA 90405
12 Tel: (310) 392-0522/ Fax: (310) 392-8874
13
   Attorneys for Plaintiffs
14

15             **UNITED STATES DISTRICT COURT**

16            **SOUTHERN DISTRICT OF CALIFORNIA**

17 **JOHN DOE ONE, JOHN DOE**      **Case No. 14-cv-02986-LAB (DHB)**
   **TWO, and JOHN DOE THREE, on**
18 **behalf of themselves and all others**   **CLASS ACTION**
   **similarly situated,**
19                                **STIPULATION OF VOLUNTARY**
                                   **DISMISSAL PURSUANT TO FED. R.**
20                 **Plaintiffs,**   **CIV. PROC. 41(a)(1)(A)(II)**
   **v.**
21                                **Judge:       Hon. Larry A. Burns**
   **AETNA, INC.; AETNA**          **Trial Date:   Not Set**
22 **HEALTHCARE, INC.; AETNA**
   **SPECIALTY PHARMACY, LLC;**
23 **and DOES 1-10, inclusive,**    **Complaint Filed: December 19, 2014**

24                 **Defendants.**

25

26        WHEREAS, on December 19, 2014, Plaintiff filed an action entitled *John*

27 *Doe One v. Aetna, Inc.; Aetna HealthCare, Inc., and Aetna Specialty Pharmacy,*

28 *LLC*, Case No. 14-cv-02986-LAB (DHB) (the "Action"), which was amended on

                                   -1-

May 8, 2015 to add John Doe Two and John Doe Three, which was assigned to the Honorable Larry A. Burns of the Southern District of California ("Court");

WHEREAS, based on a recently agreed to settlement that provides for notice to current members of the ability to obtain most HIV Medications through a retail pharmacist and an offer of reimbursement to members for certain direct out-of-pocket expenses, the Parties have concluded that the claims asserted in this Action should no longer be prosecuted on a class-wide basis;

WHEREAS, without any admission of liability on the part of either party, the parties desire to avoid continued litigation of any remaining claims for relief;

WHEREAS, no class has been certified and no motion for class certification is pending;

NOW THEREFORE,

In recognition of the foregoing, the parties stipulate that subject to the terms of the Parties' Settlement Agreement, Plaintiffs' individual claims in the above-entitled Action will and hereby are voluntarily dismissed with prejudice, and that the claims of all other persons will and hereby are voluntarily dismissed without prejudice, against Defendants pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(ii).

**Filer's Attestation**:   Pursuant to this Court's Policies and Procedures Manual, section 4, Alan M. Mansfield hereby certifies that concurrence in the filing of this document has been obtained from all signatories.

/s/ Alan M. Mansfield

Dated: January __, 2017                Respectfully submitted,

**WHATLEY KALLAS, LLP**

By: __/S/Alan M. Mansfield_____
       Alan M. Mansfield (SBN 125998)
       (Of Counsel)
       16870 W. Bernardo Dr., Suite 400
       San Diego, CA 92127

-2-

1

Tel: (619) 308-5034
Fax: (855) 274-1888
amansfield@whatleykallas.com

2

3

Edith M. Kallas (Admitted *Pro Hac Vice*)
1180 Avenue of the Americas, 20th Floor
New York, NY 10036
Tel: (212) 447-7060
Fax: (800) 922-4851
ekallas@whatleykallas.com

4

5

6

**CONSUMER WATCHDOG**
Harvey Rosenfield (SBN: 123082)
Pamela Pressley (SBN: 180362)
Jerry Flanagan (SBN: 271272)
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
Fax: (310) 392-8874
harvey@consumerwatchdog.org
pam@consumerwatchdog.org
jerry@consumerwatchdog.org

7

8

9

10

11

12

*Attorneys for Plaintiffs*

13

14

Dated:  January __, 2017

GIBSON, DUNN & CRUTCHER, LLP

15

By:  __/s/ Heather L. Richardson__
         Heather L. Richardson (SBN 246517)
Richard J. Doren
Lauren M. Blas
333 South Grand Avenue
Los Angeles, CA  90071-3197
Tel: (213) 229-7000
Fax: (213) 229-7520
hrichardson@gibsondunn.com
rdoren@gibsondunn.com
lblas@gibsondunn.com

16

17

18

19

20

Attorneys for Defendants AETNA, INC.;
AETNA HEALTHCARE, INC.; and
AETNA SPECIALTY PHARMACY, LLC

21

22

23

24

25

26

27

28

-3-

# Exhibit B

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

AETNA, INC.; AETNA HEALTHCARE, INC.; and DOES 1-25, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

JOHN DOE,



FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**FILED**

2017 OCT 20  A 11: 23

STEPHEN H. NASH
CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CA

BY: _____
A. Adams CLERK

---

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

---

| The name and address of the court is: *(El nombre y dirección de la corte es):* CONTRA COSTA SUPERIOR COURT | CASE NUMBER: *(Número del Caso):* **C17 - 02082** |
|---|---|

Wakefield Taylor Courthouse
725 Court Street, Martinez California 94553

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
CONSUMER WATCHDOG, 2701 Ocean Park Blvd., #112, Santa Monica, CA 90405 Tel: 310-392-0522

| DATE: *(Fecha)* **OCT 2 0 2017** | Clerk, by *(Secretario)* ____A. Adams____ | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20 465
www.courtinfo.ca.gov

CM-010

**FILE BY FAX**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>Jerry Flanagan (SBN 271272)<br>CONSUMER WATCHDOG<br>2701 Ocean Park Blvd., Suite 112<br>Santa Monica, CA 90405<br>TELEPHONE NO.: (310) 392-0522    FAX NO.: (310) 392-8874<br>ATTORNEY FOR (Name): Plaintiff | FOR COURT USE ONLY<br><br>**FILED**<br><br>2017 OCT 20  A 11: 23<br><br>STEPHEN H. NASH<br>CLERK OF THE SUPERIOR COURT<br>COUNTY OF CONTRA COSTA, CA<br>BY A. Adams  DEPUTY CLERK |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 725 Court Street
MAILING ADDRESS: (Same as above)
CITY AND ZIP CODE: Martinez, CA 94553
BRANCH NAME: Wakefield Taylor Courthouse

CASE NAME:
JOHN DOE v. AETNA, INC., et al.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br><br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | C17-02082<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [ ] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [✓] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint (not specified above) (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition (not specified above) (43)

2. This case [✓] is  [ ] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[ ] punitive
4. Number of causes of action (specify):  Two (2)
5. This case [ ] is  [✓] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: 10/20/2017

JERRY FLANAGAN
(TYPE OR PRINT NAME)                    (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

COPY

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)—Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice— Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

SUPERIOR COURT – MARTINEZ
COUNTY OF CONTRA COSTA
MARTINEZ, CA  94553

DOE VS. AETNA, INC

MSC17-02082

NOTICE OF ASSIGNMENT TO DEPARTMENT SEVENTEEN FOR CASE
MANAGEMENT DETERMINATION

THIS FORM, A COPY OF THE NOTICE TO PLAINTIFFS, THE ADR INFORMATION
SHEET, AND A BLANK CASE MANAGEMENT STATEMENT ARE TO BE SERVED
UPON ALL OPPOSING PARTIES, ALL PARTIES SERVED WITH SUMMONS AND
COMPLAINT/CROSS-COMPLAINT.

1. This matter has been assigned to Department 17, Judge B. Goode
presiding, for all purposes; Department 17 is designated as the
complex litigation department of the Court and as such (a) hears all
cases wherein a designation of complex case has been made and (b)
conducts hearings, in cases that this court determines, on a pre-
liminary basis may be complex, to determine whether the case should
remain in the complex litigation program.

2. All counsel are required to appear in Dept. 17 on 12/22/17
   at 8:30 a.m.
      (a) If the case has been designated as complex, and no counter-
          designation has been filed, the Court will hold its first
          case management conference at that time.
      (b) If the case has been assigned to Department 17 on a
          preliminary basis the Court will hold a hearing to determine
          if the matter is, or is not, complex.  If the matter is
          determined to be complex, the Court will then proceed with
          the first case management conference.

3. Each party shall file and serve a Case Management Conference
Statement five (5) days before this hearing and be prepared to
participate effectively in the Conference, including being thoroughly
familiar with the case and able to discuss the suitability of the case
for private mediation, arbitration or the use of a special master or
referee.

4. Prior to the conference counsel for plaintiff shall meet and confer
with counsel for each other party in an effort to precisely define the
the issues in the case, discuss the possiblity of early mediation, the
identities of possible other parties, and their respective plans for
discovery.

5. Until the time of the conference the following INTERIM ORDERS shall
be in effect:

   A. Plaintiff shall diligently proceed in locating and serving each
      and every defendant.  It is the Court's intention that each party
      be served in sufficient time to have entered an appearance within
      the time allowed by law and to attend the first conference.
   B. All discovery shall be stayed excepting as all parties to the
      action might otherwise stipulate or the Court otherwise order.
   C. No party shall destroy any writing or other evidence in its
      possession or under its control which bears in any way upon the
      matters which are the subject of this litigation.
   D. Within the time for any party to file an answer or demurrer
      such party may alternatively file a notice of general appearance.
      In such event the time for filing of an answer or demurrer
      shall be extended to twenty (20) days following the first
      conference unless the Court shall, at that time, set a different
      schedule.
   E. Counsel for each party shall do a conflict check to determine
      whether such counsel might have a possible conflict of interest
      as to any present or contemplated future party.

BY ORDER OF THE COURT

A. Adams

FILE BY FAX

COPY

1  **WHATLEY KALLAS, LLP**
Joe R. Whatley, Jr. (To Be Admitted *Pro Hac Vice*)
2  jwhatley@whatleykallas.com
Edith M. Kallas (To Be Admitted *Pro Hac Vice*)
3  ekallas@whatleykallas.com
1180 Avenue of the Americas, 20th Fl.
4  New York, NY  10036
Tel: (212) 447-7060
5  Fax: (800) 922-4851

6  Alan M. Mansfield (Of Counsel, SBN: 125998)
amansfield@whatleykallas.com
7  16870 W. Bernardo Dr., Suite 400
San Diego, CA, 92127
8  Tel: (858) 674-6641
Fax: (855) 274-1888

9

10 **CONSUMER WATCHDOG**
Harvey Rosenfield (SBN: 123082)
Harvey@consumerwatchdog.org
11 Jerry Flanagan (SBN: 271272)
jerry@consumerwatchdog.org
12 Benjamin Powell (SBN: 311624)
ben@consumerwatchdog.org
13 2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
14 Tel: (310) 392-0522
Fax: (310) 392-8874

15

16 **Attorneys for Plaintiff**

17          **IN THE SUPERIOR COURT OF CALIFORNIA**

18        **IN AND FOR THE COUNTY OF CONTRA COSTA**

19 **JOHN DOE,**

20          **Plaintiff,**

21     v.

22 **AETNA, INC.; AETNA HEALTHCARE,
INC.; and DOES 1-25, inclusive,**

23          **Defendants.**

24

25

26

27

28

Case No.  **C 17 - 0 2 0 8 2**

**COMPLAINT FOR:**

(1) **Breach of Contract and the Implied
Covenant of Good Faith and Fair Dealing;**

(2) **Violation of the "Unlawful" Prong of the
Unfair Competition Law, Business and
Professions Code § 17200, et seq.**

**Jury Trial Demanded On All Claims So
Triable**

FILED

2017 OCT 20  A 11: 23

STEPHEN H. NASH
CLERK OF THE SUPERIOR COURT
COUNTY OF CONTRA COSTA, CA

BY: A. Adams CLERK

PER LOCAL RULE 5 THIS
CASE IS ASSIGNED TO
DEPT____

**SUMMONS ISSUED**

1

Plaintiff John Doe,[1] by and through the undersigned attorneys, brings this action against Defendants AETNA, INC.; AETNA HEALTHCARE, INC.; and DOES 1-10, inclusive (hereafter collectively "Aetna" or "Defendants"). Plaintiff alleges the following on information and belief, except as to those allegations that pertain to Plaintiff, which are alleged on personal knowledge:

## NATURE OF THE ACTION

1.    On or about November 28, 2014, Aetna announced a policy change that barred enrollees diagnosed with HIV/AIDS that they could no longer fill their prescriptions for HIV medications at their local pharmacy, effective January 1, 2015. Instead, they would be required to obtain these medications by mail order. Further purchases at a brick and mortar pharmacy were to be treated as "out of network," at a potentially staggering cost to the enrollee. (The "Program"). Mail-order delivery of these medications often required refrigerated containers to be delivered to a person's home or office, thus potentially disclosing the enrollee's medical condition to third parties. The Program raised major privacy implications due to the social stigma that continues to be associated with the disease, motivating individuals with the disease to be very protective of information concerning their medical condition.

2.    On December 19, 2014, a class action lawsuit was filed against Aetna alleging that Aetna's Program put patients' health and privacy at risk. *See DOE v. Aetna*, U.S. Dist. Ct. S.D. Cal. Case No. 14-cv-02986-LAB (DHB) ("Aetna Privacy Breach #1"). A primary goal of that action was to protect the privacy of HIV/AIDS patients.

3.    On May 8, 2015, Plaintiff joined the Aetna Privacy Breach #1 lawsuit as a JOHN DOE plaintiff in a First Amended Complaint filed with the Court. By that time, Aetna had already implemented the Program as to individual plan enrollees and was considering whether to implement the Program as to group plans. JOHN DOE was a member of an Aetna plan.

4.    After over two years of hard-fought litigation, the Aetna Privacy Breach #1

---

[1] Due to the sensitive nature of this action, Plaintiff has chosen to file under a fictitious name psuedonym. (*See, e.g., Jane Doe 8015 v. Sup. Ct.*, 148 Cal.App.4th 489 (2007) [patient allowed to proceed anonymously when suing a laboratory after acquiring HIV].)

matter was resolved, along with a related action against an Aetna subsidiary Coventry Health Care, Inc. ("Coventry") (*DOE v. Coventry Health Plans,* U.S. Dist. Ct, S.D. Fla. Case No. 05-cv-62685-CMA). Under the terms of a Settlement Agreement entered into between the Plaintiffs in both actions and Aetna on or about February 27, 2017, a true and correct copy of which is attached hereto as Ex. 1 and incorporated by reference.

5.    In the Settlement Agreement, Aetna agreed to, among other terms, (1) send a notice to all affected consumers enrolled in Aetna plans advising them of their right to obtain HIV/AIDS medications from a community pharmacy of their choice, where their privacy would be protected (the "July 2017 Change of Practice Letter"); and (2) send a separate notice offering certain individuals the right to receive compensation for incurred out of pocket losses.

6.    The Settlement Agreement specifically places the responsibility for sending the July 2017 Change of Practice Letter upon Aetna. Communications with Aetna representatives confirm that Aetna itself would send out the July 2017 Change of Practice Letter.

7.    A similar set of notices were to be sent to affected consumers enrolled in Coventry plans.[2]

8.    Unbeknownst to Plaintiff and his counsel, on or about July 28, 2017, the "July 2017 Change of Practice Letter" was sent to approximately 12,000 individual Aetna enrollees nationwide, in an envelope *with an oversized glassine window*. A large version of Aetna's corporate logo and the name and address of the recipient was visible in this oversized window. The envelope window also *displayed a portion of the text of the Letter itself, disclosing the fact that the July 2017 Change of Practice Letter was being sent to those members of Aetna health plans who had been prescribed "HIV Medications."* Plaintiff received the July 2017 Change of Practice Letter.

9.    While Aetna has refused to explain to counsel for Plaintiff why or how this unlawful disclosure occurred, it appears that Aetna's motive in sending such a sensitive mailing in an envelope with an irregular, oversized window was two-fold: (1) To attempt to avoid the

---

[2] While this lawsuit refers solely to the Aetna Change of Practice Letter, Plaintiff's investigation is ongoing as to the comparable Coventry letter.

impression that Aetna was required to send the letter as part of a settlement of a civil lawsuit, and (2) To save printing costs.

10.     By this conduct, Aetna disclosed approximately 12,000 individuals' HIV status to any person coming in contact with the July 2017 Change of Practice Letter: employers, co-workers, neighbors, family members, roommates, apartment managers, and postal workers. The privacy rights of these patients were violated.

11.     Aetna's failure to protect the privacy of recipients of the July 2017 Change of Practice Letter constitutes a devastating breach of the Settlement Agreement entered into by Plaintiff and Aetna.

12.     Moreover, Section 11 of the Settlement Agreement makes it clear that nothing in the agreement limited Aetna's obligations to comply with relevant state and federal law; indeed, it requires that Aetna "shall comply with such state and federal law and regulations." These include the Health Insurance Portability and Accountability Act ("HIPAA"), 42. U.S. Code 1320(d)-6 and the HIPAA Privacy Rules at 45 C.F.R. Sec. 164.500 *et seq.*, enrollees' inalienable right to privacy as protected by California's Constitution, Article 1, § 1, and other relevant federal and state law, including the California Confidentiality of Medical Information Act, Cal Civ. Code § 56 *et seq.* (the "Act"), which requires such sensitive medical information to be kept private.

13.     Pursuant to Section 3(h)(2) of the Settlement Agreement, Plaintiff brings this action to enforce the terms of the Settlement Agreement, including specifically those provisions that Aetna has breached, to obtain such provisional relief as is necessary to remedy the breach and to prevent such breaches of the Settlement Agreement in the future, and to obtain for himself the damages sustained as a result of Aetna's breach. While the parties released certain claims against each other as set forth in Section 8 of the Settlement Agreement, Plaintiff retained the right to bring claims for breach of that Settlement Agreement.

**THE PARTIES**

14.     Plaintiff is a resident of California. He enrolled in an Aetna health care services plan contract on or about August 1, 2014 and remains an enrollee. Pursuant to that health plan,

he receives health care services from providers and is a person to whom the disclosed medical information pertains. He is a signatory to the Settlement Agreement in the Aetna Privacy Breach #1 action and has standing under Section 3(h)(2) of the Settlement Agreement to assert claims for violations of that Agreement. As a result of Aetna's breach of the Settlement Agreement, Plaintiff has already been injured and/or will suffer injury in fact and a loss of money or property by Aetna's unlawful business acts and practices by, *inter alia*, having received the letter, spending hours dealing with these issues and not receiving the compensation that Aetna by law is required to pay him for the consequences of Aetna's breach. Such claims are based on Aetna's direct breach of the Settlement Agreement as to him, and thus have not been released under the terms of Section 8 of the Settlement Agreement.

15.     Defendants Aetna, Inc. and Aetna Healthcare, Inc. are transacting the business of providing health plans made in this State.

16.     The true names, roles and/or capacities of Defendants named as DOES 1 through 25, inclusive, are currently unknown to Plaintiff and, therefore, are named as Defendants under fictitious names pursuant to California Code of Civil Procedure § 474. Plaintiff will identify their true identities and their involvement in the wrongdoing at issue if and when they become known.

17.     Defendants' conduct described herein was undertaken or authorized by Aetna's officers or agents who were responsible for supervision of and operations decisions with respect to the format, printing and dissemination of the July 2017 Change of Practice Letter. The described conduct of said agents and individuals was undertaken on behalf of Aetna. Aetna further had advance knowledge of the actions and conduct of said individuals whose actions and conduct were ratified, authorized, and approved by Aetna, either directly or through its officers and agents.

## **JURISDICTION AND VENUE**

18.     This Court has jurisdiction over this action under Article VI, § 10 of the California Constitution and section 410.10 of the Code of Civil Procedure. Jurisdiction is also proper under Business & Professions Code § 17200, *et seq.* Jurisdiction is also proper under Section 3(h)(2) of the Settlement Agreement, which provides that any action to enforce a breach

of the Settlement Agreement may be brought in any Court of competent jurisdiction.

19.     Jurisdiction over Aetna is proper because Aetna has purposely availed itself of the privilege of conducting business activities in California, because it expressly agreed in the Settlement Agreement that California law would apply to such claims (Section 13), because Aetna currently maintains systematic and continuous business contacts with this State, and because Aetna has many thousands of affected enrollees who are residents of this State and who do business with Aetna, including Plaintiff.

20.     Plaintiff does not directly assert any claims arising under the laws of the United States of America. The amount in controversy in this action does not exceed $75,000 as to Plaintiff, nor does the object of this action in terms of the relief sought exceed that amount.

21.     Venue is proper in this Court because Aetna engaged in business in this County, maintains a primary place of business and operations in this County through its wholly-owned subsidiary, and Aetna received substantial profits from enrollees who reside in this County.

22.     Furthermore, venue is proper in this Court because the Section 3(h)(2) of the Settlement Agreement provides that: "The terms of this Agreement can be enforced by any Current Member… in any Court of competent jurisdiction in the United States of America." Plaintiff is a "Current Member" as that term is defined in the Settlement Agreement.

## **FACTUAL ALLEGATIONS**

23.     Protection of privacy is of paramount importance under California law, which as noted above governs the interpretation and enforcement of the Settlement Agreement.   For example, Article 1, § 1 of the California Constitution guarantees "all people" the right to privacy:

> All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

24.     California Civil Code § 56.31 of the Act provides in relevant part as follows:

> Notwithstanding any other provision of law, nothing in subdivision (f) of Section 56.30 shall permit the disclosure or use of medical information regarding whether a patient is infected with or exposed to the human immunodeficiency virus

without the prior authorization from the patient unless the patient is an injured worker claiming to be infected with or exposed to the human immunodeficiency virus through an exposure incident arising out of and in the course of employment.

25.    In addition, California Civil Code § 56.31 prohibits

the disclosure or use of medical information regarding whether a patient is infected with or exposed to the human immunodeficiency virus without the prior authorization from the patient….

26.    Many patients with HIV/AIDS choose to keep their medical condition private due to its highly sensitive nature and for fear of social, economic, and personal reprisals, even from their friends, family and others they would invite into their homes. Aetna is required to protect this data from unauthorized disclosure under HIPAA, and other state and federal laws, including the Act.

27.    In November 2014, Aetna and its affiliates informed enrollees diagnosed with HIV/AIDS that as of January 1, 2015 they could no longer purchase certain HIV specialty medications at brick and mortar pharmacies. Instead, those enrollees could only purchase the specialty medications used to treat a targeted list of serious health conditions from a mail-order pharmacy of Aetna's choosing, Aetna Specialty Pharmacy ("ASP"). The start date of the Program was later delayed, partially as a result of preliminary, informal efforts of Plaintiff's counsel to stop this practice, as to group plans. However, as to individual enrollees the Program became effective in April 2015. During this time, Plaintiff, on several occasions, expressly sought to opt-out of the mandatory mail order program. Despite such requests, JOHN DOE was informed by Aetna's representatives in writing on January 5, 2015 that his participation in the Program was mandatory.  In that letter, ASP informed Plaintiff that his request "not to use Aetna Specialty pharmacy has been denied."

28.    In late December 2014, Plaintiff's counsel here filed an action against Aetna in federal court on behalf of patients needing specialty medications covered by Aetna who had received a notice in November 2014 that they would be required to obtain their HIV medications by mail order from Aetna's subsidiary. The Complaint filed in that action alleged that Aetna's mandatory mail order program specifically targeted individuals that are HIV-positive or have full

7

blown AIDS and put such patients' health and privacy at significant risk. The Complaint also alleged that those who desired to continue to use their retail pharmacies would have to shoulder the full cost of their drugs as an "out of network" payment, at a cost of potentially thousands of dollars each month. The Complaint alleged that the Program denied HIV/AIDS patients full and equal access to utilize the drug delivery mechanism and pharmacies of their choice specifically because of their disability and/or medical condition, since at the same time other non-HIV/AIDS-positive Aetna enrollees under the same plans were permitted to continue to enjoy full and equal access to the pharmacies of their choice. The Complaint further alleged that the ability for pharmacists to be able to closely monitor drug regimens is life-saving in many instances, because there is no cure for HIV and AIDS and the virus continually mutates around the medications prescribed to treat the diseases. The Complaint also alleged the serious implications of the Program for patients' privacy rights.

29.    For at least six months, counsel for Plaintiffs communicated with Aetna and its counsel urging Aetna to terminate the Program or to suspend it and to provide corrective notice to Aetna enrollees who had received the letter from Aetna in November 2014 announcing the Program. Ultimately, Aetna agreed to not implement this Program as to group plans. However, as to individual plans Aetna in fact had already initiated the Program. In response to pressure from Plaintiffs, in approximately June 2015 Aetna suspended the Program as to members in individual plans as well.

30.    The Complaint was amended on May 8, 2015, to include additional plaintiffs, including the Plaintiff in this action.

31.    After over two years of litigation, the *DOE v. Aetna* lawsuit was resolved under the terms of a non-class Settlement Agreement. Plaintiff was a signatory to that Settlement Agreement.

32.    Under the terms of the February 2017 Settlement Agreement, members of certain health plans issued by Aetna, Inc. and its subsidiary, Coventry, are no longer required to obtain their HIV/AIDS medications by mail-order and may obtain those medications at retail pharmacies – the primary goal of the *DOE v. Aetna* litigation – and could recover "out of pocket costs" they

were forced to incur in connection with the Program. (Settlement Agreement, Sections 3(b) and 3(f).

33. Aetna expressly undertook numerous obligations under the Settlement Agreement. First, and most relevant for purposes of this lawsuit, Aetna agreed that it would notify enrollees of the termination of the Program in the form of a letter. The Settlement Agreement at Section 3(b) provides that Aetna would send the July 2017 Change of Practice Letter:

> Aetna and/or Coventry will provide notice of the policy set forth in III.3.a. to all Current Members who have submitted a claim for coverage of HIV Medications since January 1, 2015. All Current Members shall be sent a letter by United States Postal Service. The form of the communication to be sent to Current Members is attached hereto as Exhibit A1 (for Current Members of Coventry Plans) and Exhibit A2 (for Current Members of Aetna Plans).

34. Aetna also agreed to send a separate notice offering certain individuals the right to receive compensation for certain out of pocket losses they incurred. (Settlement Agreement, Section 3(f)). Aetna representatives claimed the third party settlement administrator referred to in the Settlement Agreement was only handling the monetary compensation component of the settlement.

35. In addition to the unambiguous text of the Settlement Agreement, subsequent communications from Aetna representatives confirmed that Aetna itself was solely undertaking the obligation to send out the Change of Practice Letters, because Aetna wanted individuals to call Aetna directly if they had questions about their pharmacy benefits. Aetna has publicly stated that it retained a third party vendor to mail the Change of Practice Letters on Aetna's behalf. Thus, Aetna directly provided enrollees' confidential medical information to that vendor for purposes of disseminating the Change of Practice Letters. Aetna asserted that the vendor handling that mailing used a window envelope that allowed personal health information to be viewable through that window. Aetna did not consult counsel for plaintiffs in that litigation concerning the use of an envelope with a window to mail the Change of Practice Letters. These facts further demonstrate that Aetna's dissemination of the Change of Practice Letters under Section 3(b) of the Settlement Agreement was treated separate and apart from the obligation to provide notice and an opportunity to obtain compensation under Section 3(f) of the Settlement Agreement.

9

Ultimately, Aetna sent the July 2017 Change of Practice Letter to approximately 12,000 Aetna enrollees.

36.     Privacy was at the forefront of the initial *DOE v. Aetna* litigation. Yet in resolving that litigation, Aetna inexplicably failed to take reasonable steps to ensure that its members' private health information was protected from disclosure. In performing its obligations under the terms of the Settlement Agreement, Aetna elected to utilize an envelope with an irregular, unreasonably large clear glassine window. Not only was the Aetna logo and the name and address of recipient visible, but the envelope window also displayed a portion of the text of the letter itself, disclosing the fact that the July 2017 Change of Practice Letter was being sent to those members of Aetna health plans who had been prescribed HIV/AIDS medications. Thus, Aetna breached its agreement to perform the obligations it was solely responsible for undertaking under the terms of Section 3(b) of the Settlement Agreement.

37.     Moreover, the Settlement Agreement specifically incorporates an obligation for Aetna to comply with state and federal law into that agreement:

> [N]othing contained in this Agreement is intended to, or shall, in any way reduce, eliminate or supersede any Party's existing obligation to comply with applicable provisions of relevant state and federal law and regulations, **and Coventry and Aetna shall comply with such state and federal law and regulations**.
> (Settlement Agreement, Section 11, emphasis added)

> The validity, construction, interpretation**, performance,** and enforcement of this Agreement shall be governed by the internal, substantive laws of the State of California without giving effect to applicable choice of law principles.
> (Settlement Agreement, Section 13, emphasis added)

38.     Defendants violated the California and federal laws set forth in this Complaint, thereby breaching its agreement to perform its obligations under the terms of the Settlement Agreement in accordance with applicable state and federal law.

39.     The Settlement Agreement further provides in Section 3(h)(1) that all affected enrollees are third party beneficiaries of the Agreement.

40.     Prior to the initiation of this action, Plaintiff's counsel repeatedly sent demands to Aetna's counsel requesting information as to (1) the cause of the privacy breach and (2) what, if anything, Aetna was doing to address the breach. Aetna has refused to provide any explanation

or documentation concerning the violation of its enrollees' privacy. Aetna has said only that they will work to ensure nothing similar happens in the future – an empty assurance that is of little comfort to Plaintiff.

41.    Plaintiff may be without adequate remedy at law, rendering equitable, injunctive and/or declaratory relief appropriate in that: (a) relief is necessary to inform the parties of their rights and obligations under the Agreement asserted herein, (b) damages may not adequately compensate him for the injuries suffered, nor may other claims permit such relief; (c) the relief sought herein in terms of correcting such practices may not be fully accomplished by awarding damages; and (d) if the conduct complained of is not corrected, harm will result to members of the general public.

## FIRST CAUSE OF ACTION

### Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

42.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

43.    Plaintiff was a signatory to the Settlement Agreement, under which Aetna agreed to provide the benefits thereunder, agreed its conduct under the Settlement Agreement would be conducted in accordance with the requirements of California law, including in connection with sending the July 2017 Change of Practice Letter described above, and agreed to the performance and enforcement of this Agreement to be governed by California law. As to this latter provision, the principle that all applicable laws are incorporated into every contract and can be enforced in the same manner as the breach of any other term of the agreement is a foundational concept of the law of contracts. *McCracken v. Hayward*, 43 U.S. 608, 612-613 (1844). California law is in accord. In fact, the California Supreme Court cited the *McCracken* decision at least as early as 1857 in *Stafford v. Lick*, 7 Cal. 479, 496 (1857) ("[T]he law existing at the time the contract is made, enters into and forms a part of the contract itself, without any stipulation to that effect...." (Emphasis added.)).

44.    The California Supreme Court has uniformly affirmed and reiterated this basic principle. *See Silveira v. Ohm*, 33 Cal.2d 272, 278 (1949); *Alpha Beta Food Markets, Inc. v.*

*Retail Clerks Union*, 45 Cal.2d 764, 771 (1955) (noting the "general rule that 'all applicable laws in existence when an agreement is made . . . necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated'"); *Swenson v. File*, 3 Cal.3d 389, 393 (1970); *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937, 954-955 (2008).

45.     By engaging in the actions set forth above, Aetna breached the Settlement Agreement – specifically, by releasing confidential protected medical information and disseminating the July 2017 Change of Practice notice in a manner that did not comply with state and federal laws, including those specifically identified above.

46.     The Settlement Agreement by operation of California law also contains an implied covenant of good faith and fair dealing that is incorporated into all contracts that, *inter alia*, requires such contracts shall be performed and executed consistent with the requirements of California law and enforced in a manner that acts to protect and make effective the interests of Plaintiff in the having the promises required by agreement and law performed.

47.     Aetna has also breached this duty of good faith and fair dealing owed to Plaintiff as in undertaking the actions described above it frustrated or denied Plaintiff the benefits of this bargain by implementing the settlement in a manner that violated California law and Constitutionally-protected privacy rights, as set forth above.

48.     An actual controversy over which this Court has jurisdiction now exists between Plaintiff and Aetna concerning their respective rights, duties and obligations under the Settlement Agreement. Plaintiff also desires a declaration of rights under the Settlement Agreement asserted herein, which declaration may be had before there has been any breach of such obligation in respect to which such declaration is sought.

49.     A judicial declaration is necessary and appropriate at this time and under these circumstances so the parties may ascertain their respective rights and duties. Plaintiff requests a judicial determination and declaration of his rights and the corresponding responsibilities of Aetna.

50.     As a proximate result of the conduct of Aetna set forth above, Plaintiff suffered

damages in an amount to be proven at trial, but is less than $75,000. As a further proximate result of the conduct of Aetna, Plaintiff was compelled to retain legal counsel and to institute litigation to assure Aetna acted consistent with the terms of the Settlement Agreement.

### SECOND CAUSE OF ACTION

**Violation of Business & Professions Code § 17200, *et seq.* –**

**Unlawful Business Acts and Practices**

51.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

52.    Business & Professions Code § 17200, *et seq.* ("UCL") prohibits acts of "unfair competition", which is defined by Business & Professions Code § 17200 as including "any unlawful, unfair or fraudulent business act or practice. . . ."

53.    "A breach of contract may…form the predicate for Section 17200 claims, *provided it also constitutes conduct that is 'unlawful, or unfair, or fraudulent.'" Puentes v. Wells Fargo Home Mortgage., Inc.*160 Cal.App.4th 638 (2008) (emphasis in original).

54.    The acts and practices of Aetna's conduct, as described above, violates Business & Professions Code § 17200's prohibition against engaging in "unlawful" business acts or practices, by engaging in conduct that operates as a systematic breach of contract. As set forth above, Aetna breached the Settlement Agreement and violated the UCL by performing the obligations that it solely undertook in a manner that violated both California and federal law.

55.    As a result of Aetna's violations of the UCL, Plaintiff is entitled to seek equitable relief in the form of public injunctive relief, and individual restitution and disgorgement of the profits derived from Aetna's unlawful business acts and practices.

56.    Plaintiff also seeks an order enjoining Aetna from refusing to correct its unlawful business practices, including a commitment to use non-windowed envelopes in its notification mailings to persons prescribed HIV medications.

57.    THEREFORE, Plaintiff prays for relief as set forth below as appropriate for this Cause of Action.

/ / /

13

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief as follows as applicable for the particular cause of action:

1.      An Order awarding Plaintiff individual damages and pre-judgment and post-judgment interest thereon;

2.      An Order awarding Plaintiff individual restitution and/or disgorgement and such other equitable relief as the Court deems proper;

3.      An Order enjoining Aetna from refusing to take appropriate corrective action to remedy its breaches of the Settlement Agreement and other appropriate public injunctive and declaratory relief;

4.      An Order awarding Plaintiff's attorneys' fees, expert witness fees and other costs pursuant to, *inter alia*, Code Civ. Proc. § 1021.5 and as otherwise permitted by statute or California law; and

5.      An Order awarding such other and further relief as may be just and proper, although the total amount of relief requested is less than $75,000.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

DATED:  October 20, 2017

**CONSUMER WATCHDOG**

By: _____
          Jerry Flanagan (SBN: 271272)
Harvey Rosenfield (SBN: 123082)
Benjamin Powell (SBN: 311624)
ben@consumerwatchdog.org
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
harvey@consumerwatchdog.org
pam@consumerwatchdog.org
jerry@consumerwatchdog.org

WHATLEY KALLAS, LLP
Alan M. Mansfield (SBN 125998)

14

COMPLAINT

(Of Counsel)
16870 W. Bernardo Dr. Suite 400
San Diego, CA  92127
Tel: (858) 674-6641
Fax: (855) 274-1888
amansfield@whatleykallas.com

Joe R. Whatley, Jr. (To Apply *Pro Hac Vice*)
Edith M. Kallas (To Apply *Pro Hac Vice*)
1180 Avenue of the Americas, 20th Fl.
New York, NY  10036
Tel: (212) 447-7060
Fax: (800) 922-4851
jwhatley@whatleykallas.com
ekallas@whatleykallas.com

***Attorneys for Plaintiff***

COMPLAINT

EXHIBIT 1

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, including its recitals and exhibits ("Agreement"), is made and entered into as of this ___ day of February 2017, by Aetna Inc., Aetna Life Insurance Company, Aetna Specialty Pharmacy, LLC (collectively "Aetna"), Coventry Health Care, Inc., Coventry Health and Life Insurance Company, Coventry Health Plan of Florida, Inc. and Coventry Health Care of Florida, Inc. (collectively, "Coventry"), and the four individuals who have been named as JOHN DOE Plaintiffs in *Doe, et al. v. Aetna, Inc., et al.*, Case No. 3:14-cv-02986-LAB-DHB, and in *Doe, et al. v. Coventry Health Care, Inc., et al.,* U.S. Dist. Ct. S.D. Fl. Case No. 0:15-cv-62685-CMA (collectively, "Plaintiffs").  Aetna, Coventry, and Plaintiffs are collectively referred to herein as the "Parties," or individually as a "Party."

## I.  BACKGROUND

WHEREAS, Plaintiffs collectively filed two lawsuits, one in the United States District Court for the Southern District of California (captioned *Doe, et al. v. Aetna, Inc., et al.*, Case No. 3:14-cv-02986-LAB-DHB), and one in the United States District Court for the Southern District of Florida (captioned *Doe, et al. v. Coventry Health Care, Inc., et al.,* U.S. Dist. Ct. S.D. Fl. Case No. 0:15-cv-62685-CMA) (collectively, "Lawsuits").  In these Lawsuits, Plaintiffs challenge an alleged requirement that members of Aetna and Coventry health plans obtain HIV Medications solely through the mail instead of through a retail pharmacy.  Plaintiffs assert various causes of action under state and federal law;

WHEREAS, Aetna and Coventry deny any wrongdoing or liability whatsoever with respect to the Lawsuits and any and all allegations made therein, and without admitting any wrongdoing or liability whatsoever, nevertheless have agreed to enter into this Agreement to avoid

1

the prospect and the uncertainties of litigation, and to promptly resolve the issues raised in the Lawsuits;

WHEREAS, Plaintiffs have been fully advised by Plaintiffs' counsel Whatley Kallas, LLP, Podhurst Orseck P.A., and Consumer Watchdog attorneys (collectively, "Plaintiffs' Counsel") as to the terms and effects of this Agreement, including the nature of the claims released, the potential for success if the Lawsuits were to be litigated to their conclusions, and the significant relief obtained by the settlement;

WHEREAS, in evaluating the settlement set forth in this Agreement, the Parties and their counsel have concluded that the substantial benefits provided under this Agreement make a settlement pursuant to such terms and conditions reasonable when weighed against the uncertainties and complexities of such litigation and overcoming the legal and factual defenses that have been asserted by Aetna and Coventry, and the expense and length of time necessary to prosecute the Lawsuits through trial, as compared to providing relief promptly and efficiently;

WHEREAS, the Parties desire to settle all of the Released Claims as that term is defined herein by or on behalf of Plaintiffs but not releasing any claims of any other persons except as provided herein;

WHEREAS, the Parties, through their respective counsel, have engaged in extensive arm's length negotiations with the assistance of a mediator in reaching this Agreement, and the formal and informal exchange of relevant information;

WHEREAS, the Parties, and their respective counsel, believe that the terms of the settlement set forth in this Agreement are fair, reasonable and adequate;

NOW, THEREFORE, it is agreed that, in consideration of the promises and mutual covenants set forth in this Agreement, the Parties have agreed to the following terms.

The recitals stated above are true and accurate and are hereby made a part of this Agreement.

## II.    DEFINITIONS

A.    The term "Aetna Plan(s)" means all insured individual, family, group, or commercial health plans that have a prescription drug benefit that is administered by or through Aetna.

B.    The term "Coventry Plan(s)" means all insured commercial health plans that have a prescription drug benefit that is administered by or through Coventry.

C.    The term "Complaints" shall refer to the amended complaints filed in *Doe, et al. v. Aetna, Inc., et al.*, U.S. Dist. Ct. S.D. Cal. Case No. 3:14-cv-02986-LAB-DHB, and in *Doe, et al. v. Coventry Health Care, Inc., et al.,* U.S. Dist. Ct. S.D. Fl. Case No. 0:15-cv-62685-CMA that are the operative Complaints in the Lawsuits as of the Settlement Effective Date.

D.    The term "Current Member" means a natural person who has submitted a claim for coverage of an HIV Medication to an Aetna Plan or Coventry Plan since January 1, 2011, and who as of the Settlement Effective Date is enrolled in or covered by an Aetna Plan or Coventry Plan.

E.    The term "Former Member" means a natural person who submitted a claim for coverage of an HIV Medication to an Aetna Plan or Coventry Plan and who, after January 1, 2011, was, but as of the Settlement Effective Date no longer is, enrolled in or covered by an Aetna Plan or Coventry Plan.

F.    The phrase "HIV Medication" shall refer to any self-administered medication prescribed by a physician to a Current Member or Former Member in connection with the treatment of HIV or AIDS, but shall not include Limited Distribution Drugs or any other self-

3

administered medication for treatment of HIV or AIDS that requires special handling, coordination with the Member's provider, or education of the Member that cannot be provided by a retail pharmacy (*e.g.*, Fuzeon). The phrase "Limited Distribution Drugs" shall refer to prescription drugs that are only available through select pharmacies or wholesalers as determined by the manufacturer.

G.    The term "Persons" means persons and entities, including, without limitation, any individuals, sole proprietorships, associations, companies, partnerships, joint ventures, corporations, trusts, estates, or any other persons or entities.

H.    The term "Released Claims" means any and all known and unknown claims for relief, causes of action, suits, rights of action, or demands, whether sounding in contract, tort, equity, or any violation of law or regulation, including, without limitation, claims for injunctive or other equitable relief, damages, debts, indemnity, contribution, or for costs, expenses and attorney's fees, arising from the claims asserted in the Lawsuits concerning the Aetna Plans and Coventry Plans, subject to the terms of this Agreement. All claims under California Civil Code section 1542 are waived with regard to the Released Claims consistent with Section 8 herein and the terms of this Agreement.

I.    The phrase "Released Parties" shall refer individually and collectively, as appropriate, to Aetna and to all of its affiliates and Coventry and to all of its affiliates, and any sponsor of an Aetna Plan or a Coventry Plan and its successors and/or assigns but only if the plan sponsor or any successors and/or assigns operate in compliance with the provisions of Section III.3.a, below.

J.    The phrase "Settlement Effective Date" shall mean the date upon which the Agreement has been executed by the Parties.

4

### III.  TERMS OF AGREEMENT

1.    **Non-Admission of Liability**.  This Agreement is for settlement purposes only, and neither the fact of, nor any specific provision contained in, this Agreement nor any action taken hereunder shall constitute, or be construed as, any admission of the validity of any claim or any fact alleged by Plaintiff or by any other Person of any wrongdoing, fault, violation of law, or liability of any kind on the part of the Released Parties.  This Agreement constitutes a compromise pursuant to Fed. R. of Evidence 408, Fl. Evidence Code 90.408 and Cal. Evidence Code section 1152 and all similar state or federal laws, rights, rules, or legal principles of any other jurisdiction that may be applicable.  It shall not be offered or be admissible in any proceeding, either in whole or in part, as evidence against the Released Parties, except in any action or proceeding to enforce its terms.

2.    **Applicability of Agreement**

    a.    The terms of this Agreement shall apply to all Aetna Plans and all Coventry Plans.

    b.    The terms of this Agreement shall continue to remain in full force and effect regardless of whether any merger between Aetna Inc. and any other entity is completed.

3.    **Settlement Consideration**.  In consideration for entering into the terms of this Agreement, Aetna and Coventry shall, in accordance with the terms of this Agreement, unless otherwise specifically modified below, implement procedures to provide for the following:

    a.    **Mail-Order Programs And Right to Obtain HIV Medication from a Retail Pharmacy**

Coventry and Aetna represent that as of January 1, 2016, they do not mandate that any Person must obtain HIV Medications by mail for any Aetna Plan or Coventry Plan. Aetna and Coventry further affirm that Current Members of Aetna Plans and Coventry Plans may obtain HIV Medications through a retail pharmacy pursuant to the pharmacy benefits available under their Coventry Plan or their Aetna Plan.

### b.  Notice of Options

Aetna and/or Coventry will provide notice of the policy set forth in III.3.a. to all Current Members who have submitted a claim for coverage of HIV Medications since January 1, 2015. All Current Members shall be sent a letter by United States Postal Service. The form of the communication to be sent to Current Members is attached hereto as Exhibit A1 (for Current Members of Coventry Plans) and Exhibit A2 (for Current Members of Aetna Plans).

### c.  No Loss of or Decrease in Benefits

Current Members shall not suffer any additional personal expense, or decrease, alteration, or reduction in pharmacy benefits available under their Aetna Plan or Coventry Plan solely because of exercising their right: (i) to obtain their HIV Medications at a retail pharmacy pursuant to the pharmacy benefits available under their Aetna Plan or Coventry Plan and/or (ii) to submit a claim for reimbursement of Out-of-Pocket Costs under the terms of this Agreement. This provision shall in no way limit Aetna's and Coventry's absolute right and sole discretion, subject to applicable law, to (1) control the formularies for Aetna Plans or Coventry Plans, or (2) place medications, including HIV Medications, into various classes or tiers of its formularies for Aetna Plans or Coventry Plans, or (3) impact Aetna's or Coventry's ability to establish the cost-shares applicable to such tiers, so long as doing so is not inconsistent with the terms of this Agreement. This provision shall in no way limit the applicability of the benefit design requirements of the Current

Member's prescription drug benefit if the member chooses to obtain HIV Medications from a retail pharmacy pursuant to the pharmacy benefits available under their Aetna Plan or Coventry Plan, so long as doing so is not inconsistent with the terms of this Agreement.

### d.      Right to Promote Specialty Pharmacy Services

Nothing herein shall be construed to restrict or prohibit Aetna or Coventry or their agents from promoting any services provided by a Specialty Pharmacy, so long as such communications are consistent with the communication set forth in Exhibits A1, A2, B1, and B2 hereto.

### e.      No Retaliation for Filling Prescriptions

Aetna and Coventry will not penalize a retail pharmacy or alter the "in-network" status of a retail pharmacy solely on the basis that the pharmacy dispenses HIV Medications.

### f.      Reimbursement of Certain Out-of-Pocket Costs

### 1.      Reimbursement for Certain Current and Former Members

As provided in Sections III.3.f.2. and III.3.f.3, certain Current Members and Former Members of Coventry commercial plans and Aetna individual plans may submit a claim for reimbursement of certain Out-of-Pocket Costs they incurred.  These Out-of-Pocket Costs are only available to Current Members and Former Members of Coventry commercial plans and Aetna individual plans who filled prescriptions between the dates set out in Paragraphs III.3.f.2 and III.3.f.3 below.

### 2.      Eligible Out-of-Pocket Costs for Coventry Commercial Plan Members

The "Out-of-Pocket Costs" available to Current Members and Former Members of Coventry commercial plans are:  (1)  for prescriptions filled at a retail pharmacy between January 1, 2011 and December 31, 2015, the difference between (a) the amount the member paid out-of-

pocket for the member's HIV Medications at a retail pharmacy as a result of being considered an out-of-network benefit, and (b) the amount the member would have paid out-of-pocket if the member had obtained those HIV Medications from the specialty pharmacy designated by their Coventry Plan; or (2) for prescriptions filled through the mail between January 1, 2012 and December 31, 2013, the additional amounts the member paid because the member was an eligible participant of the Ryan White, ADAP and/or other co-pay assistance program or manufacturer discount program, but could not access the co-pay assistance or manufacturer discounts of those programs because the member obtained HIV Medications from the specialty pharmacy designated by their Coventry Plan instead of at a retail pharmacy where the co-pay assistance or discount amount would have applied to their purchase. "Out-of-Pocket Costs" does not include the member's applicable in-network or out-of-network deductible, co-pay or co-insurance requirements, or co-pay assistance programs or discounts that were applied to the member's purchase of HIV Medications.

3. **Eligible Out-of-Pocket Costs for Aetna Individual Plan Members**

The "Out-of-Pocket Costs" available to Current Members and Former Members of Aetna individual plans are, for prescriptions filled at a retail pharmacy between January 1, 2015 and May 31, 2015, the difference between (a) the amount the member paid out-of-pocket for their HIV Medications at a retail pharmacy as a result of being considered an out-of-network benefit, and (b) the amount the member would have paid out-of-pocket if they had obtained those HIV Medications from Aetna Specialty Pharmacy. "Out-of-Pocket Costs" does not include the member's applicable in-network or out-of-network deductible, co-pay or co-insurance requirements, or co-pay assistance programs or discounts that were applied to the member's purchase of HIV Medications.

### 4.        Required Proof of Out-of-Pocket Expenses

To be reimbursed for Out-of-Pocket Costs, the Current Member or Former Member must submit adequate documentation substantiating the member's payment for HIV Medications and the specific amount of Out-of-Pocket Costs for which they are seeking reimbursement under this Agreement. If a member requests reimbursement of Out-of-Pocket Costs related to the purchase of HIV Medications at a retail pharmacy as a result of being considered an out-of-network benefit, the member must submit receipts and any other records of payment supporting the claim along with a completed Claim Form.  Other records of payment may include credit card payment records, a statement from a pharmacist, or any other evidence of payments made to a pharmacist for the member's HIV Medications.  If a member's claim is related to the Ryan White, ADAP or other co-pay assistance programs or manufacturer discount program, the member must provide:  proof of purchase, proof of eligibility for the program or discount during the same time frame when the prescription was filled by mail order, and proof of the co-pay assistance or discount amount to which the member would have been entitled at the time the member filled the prescription identified.

### 5.        Deadline For Submitting Proof

To be timely submitted, the completed Claim Form must be mailed to a third party claims administrator agreed to by the Parties and postmarked no later than 60 days after the date Coventry or Aetna mails the Notice and Claim Form attached hereto as Exhibits B1, B2, C1 and C2 to the Former Member or Current Member.

### 6.        Fund For Payment Of Out-of-Pocket Expenses

Upon confirming the validity of the submitted documents, the claims administrator shall determine the total amount of valid Out-of-Pocket Costs incurred by each Person who timely

submitted a claim for payment of Out-of-Pocket Costs.  Coventry or Aetna, or the claims administrator on their behalf, shall then reimburse those Current Members and Former Members for their valid Out-of-Pocket Costs.  If the total amount of valid Out-of-Pocket Costs exceeds $295,000, then the amount of reimbursement to be paid to each Person shall be prorated by dividing $295,000 by the total value of timely and valid claims submitted, and applying that percentage to reduce the amount of each individual claim to be paid. Under no circumstances shall Coventry and Aetna be required to pay more than $295,000 pursuant to this paragraph.  If the total amount of valid Out-of-Pocket Costs is less than $295,000, Coventry and Aetna will be entitled to keep the difference between $295,000 and the total amount of valid Out-of-Pocket Costs claimed. Prior to execution of this Agreement, Coventry and Aetna provided Plaintiffs' Counsel with claim data showing denied claims and coinsurance amounts for Current Members and Former Members of Aetna Plans and Coventry Plans during the time periods set out in Sections III.3.f.2. and III.3.f.3. The identification of the claims administrator and the specific procedures to be followed by the claims administrator in processing such claims and the calculation of the potential proration formula are attached hereto as Exhibit D.

> 7.    **Notice of Opportunity For Reimbursement Of Out-of-Pocket Costs**

> (i)    Eligible Current Members and Former Members of Coventry commercial plans will be sent a notice letter, in the form attached hereto as Exhibit B1, advising them of the ability to submit a claim for reimbursement of Out-of-Pocket Costs as set out in paragraph III.3.f.2., along with the Claim Form in the form attached hereto as Exhibit C1. Such communications shall advise Current Members and Former Members of the process to be

established for seeking reimbursement of eligible Out-of-Pocket Costs and the requirements for doing so, including all pertinent deadlines.

(ii)    Eligible Current Members and Former Members of Aetna individual plans will be sent a notice letter, in the form attached hereto as Exhibit B2, advising them of the ability to submit a claim for reimbursement of Out-of-Pocket Costs as set out in paragraph III.3.f.3., along with the Claim Form in the form attached hereto as Exhibit C2. Such communications shall advise Current Members and Former Members of the process to be established for seeking reimbursement of eligible Out-of-Pocket Costs and the requirements for doing so, including all pertinent deadlines.

### g.    Cost and Expenses of Agreement

All costs and expenses associated with disseminating notice, claims administration and the payments described in Sections III.3(a) - (f), 7 and 8 of this Agreement shall be paid or borne by Aetna and Coventry.

### h.    Enforceability of Agreement

1.    All Current Members and Former Members are intended third-party beneficiaries of this Agreement.  The terms of this Agreement are to be directly enforceable by such Persons.

2.    The terms of this Agreement can be enforced by any Current Member or Former Member in any Court of competent jurisdiction in the United States of America.

**4.    <u>Dismissal of Lawsuits.</u>**  Within five days of the Effective Date, Plaintiffs shall file a request in the forms attached hereto as Exhibits E and F with both Courts in which the Complaints

are pending to dismiss the Lawsuits with prejudice as to Plaintiffs and without prejudice as to all members of the putative class as defined in the Complaints in the Lawsuits.

5. **Non-Disparagement.** Each Party agrees that it shall not, directly or indirectly, at any time, make any disparaging remark about a Party, either orally or in writing, concerning the terms of this Agreement. However, nothing in this Settlement Agreement is intended to or shall be interpreted to restrict either Party's rights and/or obligations: (i) to testify truthfully in any legal forum; or (ii) to cooperate with or provide information to any government agency or commission if contacted by such government agency or commission for information. Nothing in this Paragraph shall be interpreted as limiting any Party's right to seek further damages or legal relief in the event of a breach. The Parties further represent, agree and acknowledge that the settlement is a fair resolution of these claims for the Parties. Neither the Parties nor their respective counsel shall make any statements suggesting the contrary, either before or after the Settlement Effective Date of this Agreement.

6. **Compensation to Plaintiffs**. Aetna agrees to pay the four named Plaintiffs in the Lawsuits collectively $24,000. The Parties represent that their agreement to this amount did not occur until after the substantive terms of the Agreement had been negotiated and agreed. This amount shall be payable within 30 days after the Settlement Effective Date to the client trust account of Whatley Kallas, LLP or as separately agreed to in writing by the Parties, and distributed as agreed to with Plaintiffs by their Counsel.

7. **Payments to Plaintiffs' Counsel for Attorneys' Fees and Reimbursement of Expenses**

    a. In consideration for entering into the terms of the Agreement and the releases provided for herein, Aetna and Coventry agree to collectively pay Plaintiffs' Counsel

attorneys' fees and reimbursement of expenses, the amount of which is to be negotiated separately or determined as set forth below in Section III.7.d.  Plaintiffs' Counsel agree that they will not seek additional attorneys' fees, expenses or incentive awards or any other form of compensation from the Released Parties as to the Released Claims as those terms are defined in this Agreement. Plaintiffs' Counsel shall allocate such attorneys' fees and expenses among themselves in a manner that, in their sole discretion, reflects the respective contributions of Plaintiffs' Counsel to the results achieved in this matter.  The Parties represent that their agreement to the method for determining such amounts did not occur until after the substantive terms of the Agreement had been negotiated and agreed.

      **b.**    All such amounts shall be payable within 30 days after the Settlement Effective Date, agreement or order and the receipt by Aetna of W-9s for all payees, whichever is later, to the client trust account of Whatley Kallas, LLP or as separately agreed to in writing by the Parties.

      **c.**    Other than as set forth in this Agreement, the Released Parties shall have no responsibility or liability whatsoever regarding the payment of attorneys' fees, costs, expenses or incentive awards or compensation of any other kind to Plaintiffs' Counsel or other attorneys representing Plaintiffs or any other Persons as to the Released Claims.

      **d.**    No later than 30 days after the execution of this Agreement, if the Parties have not by that time reached agreement as to the amount of attorneys' fees and reimbursement of expenses to be paid to Plaintiffs' Counsel, the Parties shall engage in a mediation before Brian Spector, Esq. to determine the amount to be paid by Aetna and/or Coventry under this Section. If this mediation is unsuccessful, within 45 days thereafter Plaintiffs' Counsel and Aetna and Coventry shall participate in a "baseball" arbitration to determine the amount of attorneys' fees

and reimbursement of expenses to be paid to Plaintiffs' Counsel under this Section before an agreed-to neutral, with each side selecting a proposed amount to be awarded and the arbitrator selecting between either of the two selected amounts.  The Parties and their counsel agree such a determination shall be binding, final, and non-appealable.

8.    **Releases, Waiver and Covenant Not to Sue**

a.    Effective as of the Settlement Effective Date, and in consideration of this Agreement, Plaintiffs, on behalf of themselves and their predecessors, successors, assigns, descendants, dependents, and heirs (but expressly not on behalf of any Current Member or Former Member as defined in this Agreement except themselves, or any putative class member as defined in the Complaints) do fully release and forever discharge the Released Parties from the Released Claims and forever discharge the Released Parties and their counsel from any claims arising out of the investigation, filing, defense or resolution of the Lawsuits, and hereby covenant they (i) shall not take any adverse action against the Released Parties or the Released Parties counsel in response to or in retaliation to settling or dismissal of the Lawsuits, or as a result of entering into this Agreement; and, (ii) shall not assert any of the claims asserted in these Lawsuits in any other action, lawsuit or administrative proceeding.

b.    The Released Parties, on behalf of themselves and their respective successors, assigns, past, present, and future parents, subsidiaries, joint venturers, partnerships, related companies, affiliates, unincorporated entities, divisions, groups, directors, officers, shareholders, employees, agents, representatives, servants, partners, and  administrators,  do fully release and forever discharge Plaintiffs and Plaintiffs' Counsel, on behalf of themselves and their respective predecessors, successors, assigns, past, present, and future parents, subsidiaries, joint ventures, partnerships, related companies, affiliates, unincorporated entities, divisions, groups,

14

directors, officers, shareholders, employees, agents, representatives, servants, partners, executors, administrators,  descendants, dependents, and heirs, from any claims arising out of the investigation, publication,  prosecution or resolution of these Lawsuits and hereby covenant they shall not take any adverse action against Plaintiffs or Plaintiffs' Counsel in response to or in retaliation to the submission or resolution of the Lawsuits, or as a result of entering into this Agreement.

c.    The Parties understand that if any fact relating to any matter covered by this Agreement is later found to be other than or different from the facts now believed by them to be true, they expressly accept and assume the risk of such possible differences in fact and agree and acknowledge that this Agreement shall nevertheless remain fully binding and effective.

d.    The Parties expressly understand and acknowledge that certain state statutes and principles of common law provide that a "general" release does not extend to claims that a creditor does not know or suspect to exist in his, her, or its favor.  For example, Cal. Civil Code section 1542 provides:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HER OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

To the extent that it could be argued that such statutes or principles of common law are applicable here, the Parties agree that any such statutes, principles of common law or other sources of legal authority of any and all jurisdictions that may be applicable are hereby knowingly and voluntarily waived and relinquished, and further agree and acknowledge that this is an essential term of this Agreement.  The Parties understand the statutory language of Section 1542 of the California Civil Code and nevertheless elect to release the above-described claims, whether known or unknown,

and specifically waive any rights that each may have under said Civil Code section, and by executing below fully understand that if the facts with respect to this Agreement are found hereafter to be other than or different from the facts now believed to be true, each expressly accepts and assumes the risk of such possible difference in fact and agrees that this Agreement shall be and remain effective, notwithstanding any such difference. The Parties declare that prior to and in connection with the execution of this Agreement, they have been apprised of sufficient relevant data from sources selected by them so as to exercise their judgment intelligently in deciding whether to execute this document and further declare that their decision is not predicated on or influenced by any declarations or representations of any other party. The Parties state that this Agreement is executed voluntarily by them with full knowledge of its significance and legal effect.

       **e.**     Upon the Settlement Effective Date, Plaintiffs and the Released Parties shall have agreed to forever refrain from instituting, maintaining, or proceeding in any action against the Plaintiffs, Plaintiffs' Counsel or the Released Parties, or counsel for the Released Parties, as applicable to each, with respect to any of the claims set forth in this Section. The Parties hereby represent they are not aware of any related action pending in any court of competent jurisdiction that asserts any of the claims set forth in this Section, other than as identified herein.

       **f.**     This Agreement may be pleaded as a full and complete defense to, and may be used as the basis for a temporary restraining order or preliminary or permanent injunction against, any action, suit or other proceeding, which has been or may be instituted, prosecuted, continued to be prosecuted, or attempted, asserting any claim released by this Agreement.

       **9.**    **<u>Severability.</u>** If it is determined by any court of competent jurisdiction that any provision hereof is unlawful or unenforceable, the remaining provisions hereof shall remain in full force and effect.

10.     **Entire Agreement.**  This Agreement and all Exhibits thereto shall constitute the entire agreement between the Parties, and supersedes and replaces any prior agreements and understandings, whether oral or written, between and among them, with respect to such matters. This Agreement shall not be subject to any change, modification, amendment, or addition, without the express written consent of the Parties, and may be amended or modified only by a written instrument signed by or on behalf of a Party or their representative or their respective successors-in-interest.

11.     **Binding Agreement.**  This Agreement shall benefit and bind the Parties, as well as their representatives, affiliates, heirs and successors.   However, nothing contained in this Agreement is intended to, or shall, in any way reduce, eliminate or supersede any Party's existing obligation to comply with applicable provisions of relevant state and federal law and regulations, and Coventry and Aetna shall comply with such state and federal law and regulations.

12.     **No Assignment.** The Parties each represent and warrant that they have not assigned, transferred or purported to assign or transfer, in whole or in part, any interest in any of the rights and claims that are the subject of this Agreement.

13.     **Choice of Law.**   The validity, construction, interpretation, performance, and enforcement of this Agreement shall be governed by the internal, substantive laws of the State of California without giving effect to applicable choice of law principles.

14.     **Counterparts.**  This Agreement may be executed in one or more counterparts, delivered either manually or by email or facsimile.  All executed counterparts, and each of them, shall be deemed to be one and the same original instrument.  This Agreement shall be deemed executed as of the date set forth on the first page of this Agreement.  The Parties shall exchange among themselves original, signed counterparts.

17

15.    **Advice of Counsel.**  Each of the Parties has had the benefit of the advice of counsel in the negotiation, drafting and execution of this Agreement, and the language in all parts of this Agreement is the product of the efforts of such counsel.   Accordingly, neither this entire Agreement, nor any specific provision within the Agreement, shall be deemed to have been proposed or drafted by any Party or construed against any Party on that alleged basis.   This Agreement shall be construed as a whole, according to its plain meaning.

16.    **Authority**.  The Parties each represent and warrant that they have authority to enter into this Agreement either directly or through their counsel.

17.    **Notification.**  All notices and other communications between the Parties referenced in this Agreement shall be in writing and shall be served by overnight mail or by registered or certified mail, return receipt requested, addressed to the Parties' counsel at their respective addresses as set forth below:

<u>Notices to Plaintiffs</u>

Alan M. Mansfield, Esq.
WHATLEY KALLAS, LLP
16870 W. Bernardo Drive, Suite 400
San Diego, CA 92127

Jerry Flanagan, Esq.
CONSUMER WATCHDOG
2701 Ocean Park Blvd. Suite 112
Santa Monica, CA 90405

<u>Notices to Aetna and/or Coventry</u>

Richard Doren, Esq.
Heather Richardson, Esq.
GIBSON DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA, 90071

**18.**    <u>**Time for Compliance.**</u>  If the date for performance of any act required by or under this Agreement to be performed on a particular day or within a specified period of time falls on a Saturday, Sunday or legal or Court holiday, such act may be performed upon the next business day, with the same effect as if it had been performed on the day or within the period of time specified by or under this Agreement.  If an act is to be performed on a particular day, it must be completed no later than 4:30 p.m. Pacific Standard or Daylight Time on that day as then in effect.

IN WITNESS WHEREOF, the Parties hereto have caused this Settlement Agreement and Release to be executed effective as of this __ day of February, 2017.

**AETNA INC, AND ITS AFFILIATES**

_____

**By:  William Wolfe**

**Title:  Vice President, Pharmacy**

<u>**Dated:**</u>  February 14, 2017

**COVENTRY HEALTHCARE, INC,**

_____

**By:  William Wolfe**

**Title: Vice President, Pharmacy**

**Dated:**  February 14, 2017

**COVENTRY JOHN DOE (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)**

_____

**By:    JOHN DOE**

**Dated:_____, 2017**

**AETNA JOHN DOE 1 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)**

_____

**By:    JOHN DOE**

**Dated:_____, 2017**

Title:

Dated: _____, 2017

COVENTRY JOHN DOE (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated: 2/21, 2017


AETNA JOHN DOE 1 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)


_____

By:    JOHN DOE

Dated: _____, 2017


AETNA JOHN DOE 2 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)


_____

By:    JOHN DOE

Dated: _____, 2017


20

Title:

Dated:_____, 2017

COVENTRY JOHN DOE (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated:_____, 2017

AETNA JOHN DOE 1 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated: 2/2 , 2017

AETNA JOHN DOE 2 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated:_____, 2017

20

Title:

Dated:_____, 2017

COVENTRY JOHN DOE (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)


_____

By:    JOHN DOE

Dated:_____, 2017


AETNA JOHN DOE 1 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)


_____

By:    JOHN DOE

Dated:_____, 2017


AETNA JOHN DOE 2 (ACTUAL SIGNATURE TO BE SEPARATELY SUPPLIED IN CONFIDENCE PURSUANT TO NON-DISCLOSURE AGREEMENT)

_____

By:    JOHN DOE

Dated: 2/21 , 2017

20

AETNA JOHN DOE 3 (ACTUAL SIGNATURE TO BE      SEPARATELY SUPPLIED IN CONFIDENCE     PURSUANT     TO     NON-DISCLOSURE AGREEMENT)

By:     JOHN DOE

Dated: _____, 2017

**PLAINTIFFS' COUNSEL:**

**WHATLEY KALLAS, LLP**

_(signature)_

By:    **Edith M. Kallas**

Dated: __Feb. 3__ , 2017


**CONSUMER WATCHDOG**

_____

By:    **Jerry Flanagan**

Dated: _____, 2017


**PODHURST ORSECK, P.A.**

_____

By:    **Peter Prieto**

Dated: _____, 2017


**DEFENDANTS' COUNSEL:**

**GIBSON, DUNN & CRUTCHER LLP**

_____

By:    **Richard Doren**

Dated: _____, 2017


22

**PLAINTIFFS' COUNSEL:**

**WHATLEY KALLAS, LLP**

_____

By:    Edith M. Kallas

Dated:_____, 2017


**CONSUMER WATCHDOG**

_____

By:    Jerry Flanagan

Dated:_____, 2017


**PODHURST ORSECK, P.A.**

_____

By:    Peter Prieto

Dated:_____, 2017


**DEFENDANTS' COUNSEL:**

**GIBSON, DUNN & CRUTCHER LLP**

_____

By:    Richard Doren

Dated:_____, 2017


22

**PLAINTIFFS' COUNSEL:**

**WHATLEY KALLAS, LLP**

By:    **Edith M. Kallas**

Dated: _Feb. 3_ , 2017

**CONSUMER WATCHDOG**

By:    **Jerry Flanagan**

Dated: _____ , 2017

**PODHURST ORSECK, P.A.**

By:    **Peter Prieto**

Dated: _Feb. 21_ , 2017

**DEFENDANTS' COUNSEL:**

**GIBSON, DUNN & CRUTCHER LLP**

By:    **Richard Doren**

Dated: _____ , 2017

PLAINTIFFS' COUNSEL:

WHATLEY KALLAS, LLP

_____

By:   **Edith M. Kallas**

Dated: _____, 2017

CONSUMER WATCHDOG

_____

By:   **Jerry Flanagan**

Dated: _____, 2017

PODHURST ORSECK, P.A.

_____

By:   **Peter Prieto**

Dated: _____, 2017

DEFENDANTS' COUNSEL:

GIBSON, DUNN & CRUTCHER LLP

_____

By:   ~~**Richard Doren**~~ Heather L Richardson

Dated: 2/23 , 2017

22

EXHIBIT A1 – Notice to Current Coventry Commercial Members

[LOGO:]

<Current Member First Name> <Current Member Last name>
<Address 1>
<Address 2>
<City> <State> <Zip >

Dear <Current Member First Name><Current Member Last name>:

The purpose of this letter is to advise you of the options available to you as a member of your Coventry health plan when filling prescriptions for HIV Medications.  For many HIV Medications, members can use a retail pharmacy or a mail order pharmacy, regardless of how they obtain their medications today.  It's the member's choice.

**Retail pharmacy**. Members may fill prescriptions for HIV Medications that are not on the Specialty Drug List at any in-network retail pharmacies.  If members choose to fill prescriptions for HIV Medications at a retail pharmacy, they should be sure to use a pharmacy that is covered by their plan.  Some Coventry commercial health plans do not provide any coverage for out-of-network pharmacies.  A list of pharmacies that are in-network with Coventry is available at www.<<<<<<<<.com.

**Express Scripts.**  Prescriptions for HIV Medications that are not on the Specialty Drug List may also be filled by Express Scripts, which sends medications to members through the mail.  To sign up for Express Scripts, call us toll-free at [INSERT].

If a member is prescribed HIV Medication(s) that are on the Specialty Drug List, Coventry will fill those prescriptions through Express Scripts, unless the member calls to notify Coventry that the member would prefer to use an in-network retail pharmacy.  Most, but not all, HIV Medications on the Specialty Drug List can be filled at in-network retail pharmacies.

To choose to fill HIV Medications at in-network retail pharmacies or to learn more about these delivery options, members can call Coventry at XXXXXX.  Members must initiate the call to Coventry to make any changes to the way they receive HIV Medications that are on the Specialty Drug List, but members may seek the assistance of their pharmacists during the course of those calls.

**We're here to help.**
If you have any questions about your pharmacy options, you can log into your secure member website or call the toll-free phone number on your member ID card.

Thank you for being a pharmacy member.

<Health Plan Name>

EXHIBIT A2 – Notice to Current Aetna Members

[LOGO:]

<Current Member First Name> <Current Member Last name>
<Address 1>
<Address 2>
<City> <State> <Zip >

Dear <Current Member First Name><Current Member Last name>:

The purpose of this letter is to advise you of the options available to you as a member of your Aetna health plan when filling prescriptions for HIV Medications.  For many HIV Medications, members can use a retail pharmacy or a mail order pharmacy, regardless of how they obtain their medications today.  It's the member's choice.

**Retail pharmacy**. Members may fill prescriptions for HIV Medications that are not on the Specialty Drug List at any in-network retail pharmacies.  If members choose to fill prescriptions for HIV Medications at a retail pharmacy, they should be sure to use a pharmacy that is covered by their plan.  Some Aetna health plans do not provide any coverage for out-of-network pharmacies.  A list of pharmacies that are in-network with Aetna is available at **www.<<<<<<<<.com.**

**Aetna Rx Home Delivery**.  Members may also choose to fill prescriptions for HIV Medications that are not on the Specialty Drug List through Aetna Rx Home Delivery.  To sign up for Aetna Rx Home Delivery call us toll-free at (1-888-792-3862) or TDD: 1-800-823-6373.

If a member is prescribed HIV Medication(s) that are on the Specialty Drug List, Aetna will fill those prescriptions through Aetna Rx Home Delivery, unless the member calls to notify Aetna that the member would prefer to use an in-network retail pharmacy.  Most, but not all, HIV Medications on the Specialty Drug List can be filled at in-network retail pharmacies.

To choose to fill HIV Medications at in-network retail pharmacies or to learn more about these delivery options, members can call Aetna at XXXXXX.  Members must initiate the call to Aetna to make any changes to the way they receive HIV Medications that are on the Specialty Drug List, but members may seek the assistance of their pharmacists during the course of those calls.

**We're here to help.**
If you have any questions about your pharmacy options, you can log into the secure member website or call the toll-free phone number on your member ID card.

Thank you for being a pharmacy member.

<Health Plan Name>

102239305.1

EXHIBIT B1 – Notice of Reimbursement for Coventry

[LOGO:]

<Former Member First Name> <Former Member Last name>
[and]

 <Current Member First Name><Current Member Last name>:

<Address 1>
<Address 2>
<City> <State> <Zip >

**You may be eligible for a refund for certain out-of-pocket costs**

**Dear <Former Member First Name><Former Member Last name>:**
[and]

Dear <Current Member First Name><Current Member Last name>:

Our records show that you sought coverage for HIV Medications under a Coventry health plan.

You may be able to receive a refund if you paid certain out-of-pocket costs, including: (1) between January 1, 2011 and December 31, 2015, you paid out-of-pocket the entire cost of the HIV Medication (or paid an out-of-network rate) because you chose to go to a retail pharmacy rather than receive medications through the mail and your coverage was denied or limited as a consequence; or (2) between January 1, 2012 and December 31, 2013, you received your HIV Medications from the specialty pharmacy designated by your Coventry plan, and because of this, were unable to use a copay assistance or manufacturer discount program for which you were eligible.

Please review the enclosed claim form to determine if you are eligible for the refund.  If you're eligible, please return the claim form by <DATE>.

If you have any questions about the refund process, call <xxx-xxx-xxxx> <Toll-Free Number for Settlement Administrator>.

EXHIBIT B2 – Notice of Reimbursement for Aetna

[LOGO:]

&lt;Former Member First Name&gt; &lt;Former Member Last name&gt;
[and]
&lt;Current Member First Name&gt;&lt;Current Member Last name&gt;:
&lt;Address 1&gt;
&lt;Address 2&gt;
&lt;City&gt; &lt;State&gt; &lt;Zip &gt;

**You may be eligible for a refund for certain out-of-pocket costs**

Dear &lt;Former Member First Name&gt;&lt;Former Member Last name&gt;:
[and]
Dear &lt;Current Member First Name&gt;&lt;Current Member Last name&gt;:

Our records show that you sought coverage for HIV Medications under an Aetna health plan.

You may be able to receive a refund if you paid certain out-of-pocket costs between January 1, 2015 and May 31, 2015.  Specifically, you may be able to receive a refund if: you paid out-of-pocket the entire cost of the HIV Medication (or paid an out-of-network rate) because you chose to go to a retail pharmacy rather than receive medications from Aetna Specialty Pharmacy and your coverage was denied or limited as a consequence.

Please review the enclosed claim form to determine if you are eligible for the refund.  If you're eligible, please return the claim form by &lt;DATE&gt;.

If you have any questions about the refund process, call &lt;xxx-xxx-xxxx&gt; &lt;Toll-Free Number for Settlement Administrator&gt;.



## CLAIM FORM FOR REIMBURSEMENT

You may be eligible to receive reimbursement for certain "Out-of-Pocket Costs" you incurred as a result of purchasing HIV Medications.  Those reimbursable "Out-of-Pocket Costs" are:

**Category 1:**  If, between January 1, 2011 and December 31, 2015, you elected to purchase HIV Medications at a retail pharmacy rather than through the specialty pharmacy designated by your Coventry plan, the difference between (a) the amount you paid out-of-pocket for your HIV Medications at a retail pharmacy as a result of being considered an out of network benefit, and (b) the amount you would have paid out-of-pocket if you had obtained those HIV Medications by mail order; **or**

**Category 2:**  a discount amount that was unavailable to you as an eligible participant of the Ryan White, ADAP and/or other co-pay assistance program or manufacturer discount program because you purchased HIV Medications between January 1, 2012 and December 31, 2013 through the specialty pharmacy designated by your Coventry plan instead of at a retail pharmacy where the co-pay assistance or the discount amount would have applied to your purchase.

"Out-of-Pocket Costs" does **not** include your applicable in-network or out-of-network deductible, co-pay or co-insurance requirements, or co-pay assistance or discount programs that were applied to your purchase of HIV Medications.

To submit a claim for reimbursement of Out-of-Pocket Costs, you must provide the information below and return this Form, along with receipts or records listed in Section III of this Claim Form supporting your claim for reimbursement, to the following address by no later than <insert date from letter>:

<u>Mail completed form to</u>:
<insert address>

## I.  MEMBER INFORMATION

First Name:  _____

Last Name:  _____

Address:  _____

City:  _____    State: ___  ___    Zip: ___ ___ ___ ___ ___

Daytime Phone Number:    ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

Evening Phone Number    ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

Email Address:  _____

Policy No.:  _____

Membership No[1].:  _____

---

[1] If you are a former member of a Coventry Plan and don't know your Member No., you can call <xxx-xxx-xxx> <Toll-Free Number for Coventry/Aetna >.

**II.     SUMMARY OF PAYMENTS [Attach additional pages if necessary]**

    **A.  Category 1:** Please provide the following information for each out-of-pocket expense that falls within Category 1 for which you are seeking reimbursement.

| DATE OF PURCHASE | RETAIL PHARMACY NAME & ADDRESS | NAME(S) OF HIV MEDICATION PURCHASED | AMOUNT PAID |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  | **Total Amount You Paid Out of Pocket (subject to verification)** |  |

    **B.  Category 2:** Please provide the following information for each out-of-pocket expense that falls within Category 2 for which you are seeking reimbursement.

| DATE OF PURCHASE | NAME(S) OF HIV MEDICATION PURCHASED | APPLICABLE COPAY ASSISTANCE OR DISCOUNT PROGRAM | AMOUNT OF COPAY ASSISTANCE |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  | **Total Amount Of Foregone Copay Assistance** |  |

**III.     RECEIPTS & OTHER PAYMENT RECORDS**

If you are requesting reimbursement of Out-of-Pocket Costs, you must submit receipts and any other records of payment supporting your claim along with this completed Claim Form.  Other records of payment may include credit card payment records, a statement from a pharmacist, or any other documentary evidence of payments made to a pharmacist for your HIV Medications. If your claim falls within Category No. 2 above, you must provide: (1) proof of purchase, (2) proof that you were eligible for the program during the same time frame when the prescription was filled, and (3) proof of the discount amount to which you would have been entitled at the time you filled the prescription identified.

**IV.     VERIFICATION**

To the best of my knowledge the foregoing is true and correct. I understand this claim is subject to audit and verification, and that I may be required to submit additional information to support my claim for reimbursement.

2 -

Signature: _____ Date (mm/dd/yyyy):_____ ✚

Printed Name: _____

## **CHECKLIST**

1.      Did you fill out Parts I and II?

2.      Did you include a copy of all receipts and other records supporting each claim for reimbursement?

3.      Did you sign the Claim Form in Part IV?

4.      Did you retain a copy for your records?

**Important** -- This claim form needs to be postmarked no later than <insert date from letter>.  We will review the records you provide and determine the total dollar amount of valid Out-of-Pocket Costs.  Depending upon the number of timely and valid claims that are received, this claim may also be subject to being pro-rated.

 IF YOU HAVE ANY QUESTIONS ABOUT THIS CLAIM FORM OR THE CLAIMS PROCESS PLEASE CALL < >[Toll Free Number of Claims Administrator]



## CLAIM FORM FOR REIMBURSEMENT

You may be eligible to receive reimbursement for certain "Out-of-Pocket Costs" you incurred as a result of purchasing HIV Medications, specifically: if, between January 1, 2015 and May 31, 2015, you elected to purchase medications at a retail pharmacy rather than by mail, the difference between (a) the amount you paid out-of-pocket for your HIV Medications at a retail pharmacy as a result of being considered an out of network benefit, and (b) the amount you would have paid out-of-pocket if you had obtained those HIV Medications from Aetna Specialty Pharmacy.

"Out-of-Pocket Costs" does **not** include your applicable in-network or out-of-network deductible, co-pay or co-insurance requirements, or co-pay assistance or discount programs that were applied to your purchase of HIV Medications.

To submit a claim for reimbursement of Out-of-Pocket Costs, please provide the information below and return this Form, along with any receipts or records listed in Section III of this Claim Form supporting your claim for reimbursement, to the following address by no later than <insert date from letter>:

<u>Mail completed form to</u>:
<insert address>

## I.    MEMBER INFORMATION

First Name:    _____

Last Name:    _____

Address:    _____

City:    _____    State: ___ ___    Zip: ___ ___ ___ ___ ___

Daytime Phone Number:    ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

Evening Phone Number    ___ ___ ___ ___ ___ ___ ___ ___ ___ ___

Email Address:    _____

Policy No.:    _____

Membership No[1].:    _____

---

[1] If you are a former member of an Aetna Plan and don't know your Member No., you can call <xxx-xxx-xxxx> Toll-Free Number for Coventry/Aetna >.

**II.    SUMMARY OF PAYMENTS [Attach additional pages if necessary]**

| DATE OF PURCHASE | RETAIL PHARMACY NAME & ADDRESS | NAME(S) OF HIV MEDICATION PURCHASED | AMOUNT PAID |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  | **Total Amount You Paid Out of Pocket (subject to verification)** |  |

**III.    RECEIPTS & OTHER PAYMENT RECORDS**

If you are requesting reimbursement of Out-of-Pocket Costs, you must submit receipts and any other records of payment supporting your claim along with this completed Claim Form.  Other records of payment may include credit card payment records, a statement from a pharmacist, or any other documentary evidence of payments made to a pharmacist for your HIV Medications.

**IV.    VERIFICATION**

To the best of my knowledge the foregoing is true and correct. I understand this claim is subject to audit and verification, and that I may be required to submit additional information to support my claim for reimbursement.

Signature: _____    Date (mm/dd/yyyy):_____

Printed Name: _____

**CHECKLIST**

1.    Did you fill out Parts I and II?

2.    Did you include a copy of all receipts and other records supporting each claim for reimbursement?

3.    Did you sign the Claim Form in Part IV?

4.    Did you retain a copy for your records?

**Important** -- This claim form needs to be postmarked no later than <insert date from letter>.  We will review the records you provide and determine the total dollar amount of valid Out-of-Pocket Costs.  Depending upon the number of timely and valid claims that are received, this claim may also be subject to being pro-rated.

 IF YOU HAVE ANY QUESTIONS ABOUT THIS CLAIM FORM OR THE CLAIMS PROCESS PLEASE CALL < >[Toll Free Number of Claims Administrator]

2 -


EXHIBIT D

**PROCEDURES FOR DECIDING REIMBURSEMENT CLAIMS**

## I. OVERVIEW

This document outlines the procedures Kurtzman Carson Consultants ("KCC") [or other claims administrator agreed to by the Parties] is to use in determining the total amount of valid Out-of-Pocket Costs incurred by each Current Member or Former Member who timely submits a claim for payment of Out-of-Pocket Costs and the amount each such Member should be paid with respect to such Out-of-Pocket Costs. The use of defined terms herein has the same meaning as set forth in the Settlement Agreement. It is anticipated that in processing claims for reimbursement of Out-of-Pocket Costs questions will arise concerning these procedures and/or specific claims, and KCC is authorized to communicate with Plaintiffs' Counsel and/or Defendants' Counsel with respect to such questions, as it deems appropriate.

These procedures and individual claim determinations may be clarified, revised or amended as agreed to by KCC, Plaintiffs' Counsel, and counsel for Defendants if such agreement is confirmed in writing.

## II. PROCEDURES

### A. Claim Submissions and Timeliness/Untimeliness Determination

1. Current Members or Former Members may submit claims for reimbursement by completing the Claim Form either mailed to them or available at http://www.AetnaCoventryhivsettlement.com and mailing it to KCC along with any receipts or any other records of payment supporting their claims.

2. KCC shall review each Claim Form it receives and determine whether the Claim Form is a "Timely Claim Form" or an "Untimely Claim Form." Claim Forms that are postmarked on or before 60 days after the date the notice letter is mailed are Timely Claim Forms. Claim Forms that are postmarked after that date are Untimely Claim Forms.

**Rejection of Untimely Claims Forms**

1. KCC shall send a letter to each person who submitted an Untimely Claim Form informing that person that their claim was not timely submitted and, on that basis, has been denied.

**B. Initial Processing of Timely Claim Forms by KCC**

1. KCC shall review each Timely Claim Form it receives and determine whether (i) the Timely Claim Form was submitted by a Current Member or Former Member, (ii) the Timely Claim Form was completed properly and (iii) the Timely Claim Form is accompanied by receipts or other records of payment, described in II.B.2, that support the claims reflected in the Timely Claim Form. Based on that determination, each Timely Claim Form shall be deemed to be either a "Complete Timely Claim Form," an "Incomplete Timely Claim Form," or an "Improperly Submitted Claim Form" as described in ¶¶ 2-4 below.

2. Receipts and Other Payment Records. If a Current Member or Former Member requests reimbursement of Out-of-Pocket Costs, they must submit receipts and any other records of payment supporting their claim along with the completed Claim Form. Other records of payment may include credit card payment records, a statement from a pharmacist, or any other evidence of payments made to a pharmacist for HIV Medications. If a Current Member's or Former Member's claim is related to the Ryan White, ADAP or other co-pay assistance program or manufacturer discount program, they must provide: proof of purchase, proof of eligibility for the program during the same time frame when the prescription was filled at the Specialty Pharmacy, and proof of the discount amount that they would have been entitled to had they filled their prescription through a retail pharmacy rather than mail order.

3. Complete Timely Claim Forms. If KCC determines that (i) the Timely Claim Form was submitted by a Current Member or Former Member, (ii) the Timely Claim Form was completed properly and (iii) the Timely Claim Form is accompanied by receipts or other records of payment that support the claims reflected in the Timely Claim Form described in II.C.2, then the Timely Claim Form shall be deemed a Complete Timely Claim Form. KCC shall allocate payment to members submitting Complete Timely Claim Forms pursuant to Section II.D below. If the receipts or other records of payment only support a portion of the claims in the Complete Timely Claim Form, then only that portion that is so supported shall be deemed valid; the remainder of the claim shall be deemed an Incomplete Timely Claim Form.

4. Incomplete Timely Claim Forms. If KCC determines that (i) the Timely Claim Form was submitted by a Current Member or Former Member, but that (ii) the Timely Claim Form was not completed properly and/or (iii) the Timely Claim Form is not accompanied by receipts or any other records of payment that support the claims reflected in the Timely Claim Form, then the Timely Claim Form shall be deemed an Incomplete Timely Claim Form.

   a. KCC shall send a letter to each Current Member or Former Member who submitted an Incomplete Timely Claim Form that (i) informs the member of KCC's determination and the basis for that determination, (ii) invites the member to correct the deficiencies KCC identified by submitting a revised Claim Form and/or receipts or any other records of payment that support the member's claim,

as appropriate, and (iii) informs the member that the member's claim will be denied to the extent it is incomplete if KCC does not receive the requested information within 30 days of the date of KCC's letter.

b.  If KCC receives the requested information within 30 days of the date of KCC's letter and determines that such information corrects the deficiencies that KCC had identified, then the Incomplete Timely Claim Form and the requested information collectively shall be deemed a Complete Timely Claim Form and it will be processed according to Section II.D below.  If the receipts or any other records of payment only support a portion of the claims in the Complete Timely Claim Form, then only that portion that is so supported shall be deemed valid.

c.  If KCC does not receive the requested information within 30 days of the date of KCC's letter or KCC determines that such information does not correct the deficiencies that KCC had identified, then KCC shall send the Current Member or Former Member a letter informing the member that KCC did not receive the requested information within 30 days of the date of KCC's letter or that such information does not correct the deficiencies KCC identified and, on that basis, the member's claim has been denied to the extent it is incomplete.

5.  <u>Improperly Submitted Claims Form</u>. If KCC determines that the Timely Claim Form was not submitted by a Current Member or Former Member, then the Timely Claim Form shall be deemed an Improperly Submitted Claim Form and the claim will be rejected.

## C.  Defendants' Review Of Complete Timely Claim Forms

1.  Defendants may elect to review each Complete Timely Claim Form submitted to it by KCC and verify, with respect to each valid claim reflected in the Complete Timely Claim Form, how much the Current Member or Former Member would have paid out-of-pocket had the member purchased those HIV Medications from the Specialty Pharmacy or what the applicable discount would have been if the Member had obtained the HIV Medications at a retail pharmacy.  Defendants shall provide that information to KCC.

2.  Defendants also may, but is not obligated to, review its records for any information concerning the person who submitted the Complete Timely Claim Form and the purchases of HIV Medications reflected in the Complete Timely Claim Form.  To the extent Defendants identify any information that it believes is relevant to the claims reflected in the Complete Timely Claim Form (e.g., information showing that the person who submitted the Complete Timely Claim Form is not a Current Member or Former Member or that the purchases were not made while the person was enrolled in a health insurance policy issued by Aetna or Coventry), Defendants may provide that information to KCC.  KCC shall review any information provided to it by Defendants pursuant to this paragraph and determine what impact, if any, it has on the claims in the Complete Timely Claim Form.  In making that determination, KCC may, but is not obligated to, communicate with the person who submitted the Complete Timely

Claim Form, Coventry, Aetna, Defendants' Counsel, and/or Plaintiffs' Counsel as it deems appropriate.

**D. Final Determination of Reimbursement Amounts By KCC**

1. KCC shall determine for each Member who submitted a Complete Timely Claim Form the amount of such Current Member's or Former Member's Out-of-Pocket costs for valid claims based on (i) the information in the Complete Timely Claim Form, (ii) receipts or any other records of payment that support the claims reflected in the Timely Claim Form, (iii) the information it receives from Defendants pursuant to Section II.C.2 above, and (iv) any other information it obtains that it deems relevant.

2. KCC shall prepare a spreadsheet showing how it calculated the Out-of-Pocket Costs with respect to each Current Member or Former Member who submitted a Claim Form, and it shall email that spreadsheet to Defendants' Counsel and Plaintiffs' Counsel. The spreadsheet shall include any claim that Defendants initially do not agree to pay in full, or claims that were initially rejected in whole or in part for which the claimant provided supplemental information in response to their rejection letter. Defendants' Counsel and Plaintiffs' Counsel shall have thirty (30) days from their receipt of the spreadsheet to object to the spreadsheet.

3. If neither Defendants' Counsel nor Plaintiffs' Counsel objects to the spreadsheet within thirty (30) days of receipt, unless otherwise agreed, then the spreadsheet shall be deemed the Final and Binding Spreadsheet.

4. If Defendants' Counsel and/or Plaintiffs' Counsel objects to the spreadsheet, KCC shall consider whether the objection has any validity.

   a. If KCC determines that the objection has any validity, it shall send a revised spreadsheet to Defendants' Counsel and Plaintiffs' Counsel by email and explain in the email what changes have been made and why.

   b. If KCC determines that the objections do not have any validity, it shall send Defendants' Counsel and Plaintiffs' Counsel an email explaining its determination.

5. If the sum of the Out-of-Pocket Costs in the Final and Binding Spreadsheet is less than or equal to $295,000, then Defendants shall transfer the total sum on the Final and Binding Spreadsheet to KCC, and KCC shall issue checks to the Current Members and Former Members who submitted Complete Timely Claim Forms in the amounts shown on the Final and Binding Spreadsheet.

6. If the sum of the Out-of-Pocket Costs in the Final and Binding Spreadsheet is greater than $295,000, then Defendants shall transfer $295,000 to KCC, and KCC shall issue checks to Current Members and Former Members who submitted Complete Timely Claim Forms in prorated amounts. Such prorated amounts shall be determined by dividing $295,000 by the sum of the Out-of-Pocket Costs in the Final and Binding Spreadsheet and multiplying the dollar amount of the individual's Complete Timely

Claim Form by that percentage to reduce the amount of Out-of-Pocket Costs to be paid to each Current Member or Former Member as reflected in the Final and Binding Spreadsheet.

7. KCC shall send a letter to the Current Member or Former Member who submitted the Claim Form at issue advising them of the status of their claim and how any payment was calculated.

EXHIBIT E – Stipulation of Voluntary Dismissal

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-62685-CIV-ALTONAGA

JOHN DOE, on behalf of himself and all
others similarly situated,

      Plaintiffs,

vs.

COVENTRY HEALTH CARE, INC.,
COVENTRY HEALTH AND LIFE
INSURANCE COMPANY; COVENTRY
HEALTH PLAN OF FLORIDA, INC.;
COVENTRY HEALTH CARE OF
FLORIDA, INC.; AETNA INC., AETNA
LIFE INSURANCE CO.,

      Defendants.
_____/

## STIPULATION OF VOLUNTARY DISMISSAL PURSUANT TO FED. R. CIV. PROC. 41(A)(1)(a)(II)

WHEREAS, on December 22, 2015, Plaintiff filed an action entitled *John Doe v. Coventry Health Care, Inc., et al.*, Case No. 15-cv-62685-ALTONAGA (the "Action"), which was assigned to the Honorable Cecilia M. Altonaga of the Southern District of Florida ("Court");

WHEREAS, based on a recently agreed to settlement that provides for notice to current members of the ability to obtain HIV Medications through a retail pharmacist and an offer of reimbursement to members for certain direct out-of-pocket expenses, the Parties have concluded that the claims asserted in this Action should no longer be prosecuted on a class-wide basis;

WHEREAS, without any admission of liability on the part of either party, the parties desire to avoid continued litigation of any remaining claims for relief;

WHEREAS, no class has been certified and no motion for class certification is pending;

NOW THEREFORE,

In recognition of the foregoing, the parties stipulate that subject to the terms of the Parties' Settlement Agreement, Plaintiff's individual claims in the above-entitled Action will and hereby are voluntarily dismissed with prejudice, and that the claims of all other persons will and hereby are voluntarily dismissed without prejudice, against Defendants pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(ii).

DATED:  January ___, 2017

**PODHURST ORSECK, P.A.**
By:  /s/ Peter Prieto
    PETER PRIETO (FL Bar No. 501492)
    AARON S. PODHURST (FL Bar No. 63606)
    JOHN GRAVANTE III (FL Bar No. 617113)
    MATTHEW WEINSHALL (FL Bar No. 84783)
    ALISSA DEL RIEGO (FL Bar No. 99742)
    SunTrust International Center
    One S.E. 3rd Avenue, Suite 2700
    Miami, Florida 33131
    Phone: (305) 358-2800/Fax: (305) 358-2382
    pprieto@podhurst.com
    apodhurst@podhurst.com
    jgravante@podhurst.com
    mweinshall@podhurst.com
    adelriego@podhurst.com

**WHATLEY KALLAS, LLP**
Joe R. Whatley, Jr.
jwhatley@whatleykallas.com
Edith M. Kallas (*Admitted  Pro Hac Vice*)
ekallas@whatleykallas.com
1180 Avenue of the Americas, 20th Floor
New York, NY 10036
Tel: (212) 447-7060/Fax: (800) 922-4851

Alan M. Mansfield (*Admitted Pro Hac Vice*)
(Of Counsel)
amansfield@whatleykallas.com
16870 W. Bernardo Dr., Suite 400
San Diego, CA  92127
Tel: (858) 674-6641/Fax: (855) 274-1888

2

**CONSUMER WATCHDOG**
Jerry Flanagan (*Admitted Pro Hac Vice*)
jerry@consumerwatchdog.org
Laura Antonini (*Admitted Pro Hac Vice*)
laura@consumerwatchdog.org
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522

*Attorneys for Plaintiff*

**GRAY ROBINSON**
By:  /s/ Shari Gerson
        SHARI GERSON (FL Bar No. 17035)
        401 East Las Olas Boulevard, Suite 1000
        Fort Lauderdale, FL 33301
        Tel: (954) 761-8111/Fax: (954) 761-8112
        Shari.gerson@gray-robinson.com

GIBSON DUNN & CRUTCHER, LLP
        Richard J. Doren
        Heather L. Richardson
        333 South Grand Avenue
        Los Angeles, CA 90071
        Tel: (213) 229-7000
        rdoren@gibsondunn.com
        hrichardson@gibsondunn.com

*Attorneys for Defendants*

3

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the

Clerk of the Court via CM/ECF and served upon all counsel or parties of record via Electronic

Notice of Filing on _____, 2017.


_____/s/ John Gravante, III_____
                    John Gravante, III

EXHIBIT F – Stipulation of Voluntary Dismissal

1  WHATLEY KALLAS, LLP
   Edith M. Kallas (Admitted *Pro Hac Vice)*
2  ekallas@whatleykallas.com
   1180 Avenue of the Americas, 20th Floor
3  New York, NY 10036
   Tel: (212) 447-7060/ Fax: (800) 922-4851
4
   Alan M. Mansfield (Of Counsel, SBN: 125998)
5  amansfield@whatleykallas.com
   16870 W. Bernardo Dr., Suite 400
6  San Diego, CA  92127
   Tel: (619) 308-5034/ Fax: (855) 274-1888
7
   CONSUMER WATCHDOG
8  Harvey Rosenfield (SBN: 123082)
   Harvey@consumerwatchdog.org
9  Pamela Pressley (SBN: 180362)
   pam@consumerwatchdog.org
10 Jerry Flanagan (SBN: 271272)
   jerry@consumerwatchdog.org
11 2701 Ocean Park Blvd., Suite 112
   Santa Monica, CA 90405
12 Tel: (310) 392-0522/ Fax: (310) 392-8874
13
   Attorneys for Plaintiffs
14

15              **UNITED STATES DISTRICT COURT**

16           **SOUTHERN DISTRICT OF CALIFORNIA**

17 **JOHN DOE ONE, JOHN DOE**          Case No.  **14-cv-02986-LAB (DHB)**
   **TWO, and JOHN DOE THREE, on**
18 **behalf of themselves and all others**  **CLASS ACTION**
   **similarly situated,**
19                                       **STIPULATION OF VOLUNTARY**
                                         **DISMISSAL PURSUANT TO FED. R.**
20              **Plaintiffs,**          **CIV. PROC. 41(a)(1)(A)(II)**
   **v.**
21                                       **Judge:        Hon. Larry A. Burns**
   **AETNA, INC.; AETNA**               **Trial Date:    Not Set**
22 **HEALTHCARE, INC.; AETNA**
   **SPECIALTY PHARMACY, LLC;**
23 **and DOES 1-10, inclusive,**        **Complaint Filed:  December 19, 2014**

24              **Defendants.**

25

26      WHEREAS, on December 19, 2014, Plaintiff filed an action entitled *John*

27 *Doe One v. Aetna, Inc.; Aetna HealthCare, Inc., and Aetna Specialty Pharmacy,*

28 *LLC*, Case No. 14-cv-02986-LAB (DHB) (the "Action"), which was amended on

-1-

May 8, 2015 to add John Doe Two and John Doe Three, which was assigned to the Honorable Larry A. Burns of the Southern District of California ("Court");

WHEREAS, based on a recently agreed to settlement that provides for notice to current members of the ability to obtain most HIV Medications through a retail pharmacist and an offer of reimbursement to members for certain direct out-of-pocket expenses, the Parties have concluded that the claims asserted in this Action should no longer be prosecuted on a class-wide basis;

WHEREAS, without any admission of liability on the part of either party, the parties desire to avoid continued litigation of any remaining claims for relief;

WHEREAS, no class has been certified and no motion for class certification is pending;

NOW THEREFORE,

In recognition of the foregoing, the parties stipulate that subject to the terms of the Parties' Settlement Agreement, Plaintiffs' individual claims in the above-entitled Action will and hereby are voluntarily dismissed with prejudice, and that the claims of all other persons will and hereby are voluntarily dismissed without prejudice, against Defendants pursuant to Fed. R. Civ. Proc. 41(a)(1)(A)(ii).


**Filer's Attestation**:   Pursuant to this Court's Policies and Procedures Manual, section 4, Alan M. Mansfield hereby certifies that concurrence in the filing of this document has been obtained from all signatories.

/s/ Alan M. Mansfield


Dated: January __, 2017                Respectfully submitted,

**WHATLEY KALLAS, LLP**

By: __/S/Alan M. Mansfield_____
        Alan M. Mansfield (SBN 125998)
        (Of Counsel)
        16870 W. Bernardo Dr., Suite 400
        San Diego, CA 92127

-2-

1    Tel: (619) 308-5034
     Fax: (855) 274-1888
2    amansfield@whatleykallas.com

3    Edith M. Kallas (Admitted *Pro Hac Vice*)
     1180 Avenue of the Americas, 20th Floor
4    New York, NY 10036
     Tel: (212) 447-7060
5    Fax: (800) 922-4851
     ekallas@whatleykallas.com

6    **CONSUMER WATCHDOG**
     Harvey Rosenfield (SBN: 123082)
7    Pamela Pressley (SBN: 180362)
     Jerry Flanagan (SBN: 271272)
8    2701 Ocean Park Blvd., Suite 112
     Santa Monica, CA 90405
9    Tel: (310) 392-0522
     Fax: (310) 392-8874
10   harvey@consumerwatchdog.org
     pam@consumerwatchdog.org
11   jerry@consumerwatchdog.org

12   *Attorneys for Plaintiffs*

13

14   Dated:  January __, 2017         GIBSON, DUNN & CRUTCHER, LLP

15                                    By:   /s/ Heather L. Richardson
                                              Heather L. Richardson (SBN 246517)
16                                    Richard J. Doren
                                      Lauren M. Blas
17                                    333 South Grand Avenue
                                      Los Angeles, CA  90071-3197
18                                    Tel: (213) 229-7000
                                      Fax: (213) 229-7520
19                                    hrichardson@gibsondunn.com
                                      rdoren@gibsondunn.com
20                                    lblas@gibsondunn.com

21                                    Attorneys for Defendants AETNA, INC.;
                                      AETNA HEALTHCARE, INC.; and
22                                    AETNA SPECIALTY PHARMACY, LLC

23

24

25

26

27

28

STIPULATION OF VOLUNTARY DISMISSAL              CASE NO.: 14-CV-02986-LAB (DHB)

*Superior Court of California, County of Contra Costa*

# UNLIMITED JURISDICTION
## Civil Actions
# PACKET

### What you will find in this packet:

- **Notice To Plaintiffs** (CV-655a-INFO)

- **Notice To Defendants** (CV-655d-INFO)

- **ADR Case Management Stipulation and Order** (CV-655b)

- **Case Management Statement** (CM-110)

- **Alternative Dispute Resolution (ADR) Information** (CV-655c-INFO)

*You Can Get Court Forms FREE at:  www.cc-courts.org/forms*

## Superior Court of California, County of Contra Costa

## NOTICE TO PLAINTIFFS
In <u>Unlimited Jurisdiction</u> Civil Actions

### AFTER YOU FILE YOUR COURT CASE:

1. **Have the forms the clerk gives you served on <u>all</u> defendants in this case:**
   a. The Complaint
   b. The Summons
   c. The Notice of Case Management Conference (shows hearing date and time)
   d. The Notice to Defendants  (Local Court Form CV-655d-INFO)
   e. <u>Blank</u>: Case Management Statement (Judicial Council Form CM-110)
   f. <u>Blank</u>: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days  (Local Court Form CV-655b)
   g. Alternative Dispute Resolution (ADR) Information (Local Court Form CV-655c-INFO)

2. Within 60 days of the date you filed the complaint **you must prove that the forms have been served on (delivered to) the defendants correctly** by filing the ***Proof of Service*** form (POS-010) (completed by the person who did the service) with the court.

3. **Go to the case management conference on the date indicated on** <u>The Notice of Case Management Conference.</u>

4. **Consider using mediation, arbitration, or neutral case evaluation (ADR) to resolve the dispute.** All parties must answer questions about ADR on the *Case Management Statement* form. For more information, see the enclosed ADR information, visit <u>www.cc-courts.org/adr</u>, or email <u>adrweb@contracosta.courts.ca.gov</u>

5. **You may delay the first case management conference while you try to resolve the dispute in ADR.**  If all parties agree to use ADR, complete and file the <u>Stipulation and Order to Attend ADR and Continue First Case Management Conference 90 Days</u> form to tell the court you want to use this option.

All civil actions *(except juvenile, probate, family, unlawful detainer, extraordinary writ, and asset forfeiture[1])* and personal injury cases where a party is claiming damages[2] must meet the Civil Trial Delay Reduction time limits for filing documents and moving their cases forward. These time limits are listed in California Rule of Court 3.110 and Local Court Rules; Title Three. If parties miss these deadlines, a judge might issue an order (*Order to Show Cause*) for them to explain in court why they should not have to pay a fine or have their case dismissed.

### VIEW LOCAL COURT RULES AT: (WWW.CC-COURTS.ORG/RULES)

---

[1] *Health and Safety Code §11470 et seq.*
[2] *Including claims for emotional distress and/or wrongful death.*

## Superior Court of California, County of Contra Costa

# NOTICE TO DEFENDANTS
### In Unlimited Jurisdiction Civil Actions

**YOU ARE BEING SUED.**  The packet you have been served should contain:
- a.    The Summons
- b.    The Complaint
- c.    The Notice of Case Management (shows hearing date and time)
- d.    Blank: Case Management Statement (Judicial Council Form CM-110)
- e.    Blank: Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days (Local Court Form CV-655b)
- f.    Alternative Dispute Resolution (ADR) Information  (Local Court Form CV-655c-INFO)

---

  **WHAT DO I DO NOW?**  

### You must:

1. **Prepare your response**    YOU COULD LOSE YOUR CASE—even before it is heard by a judge or before you can defend yourself, if you do not prepare and file a response on time. See the other side of this page for types of responses you can prepare.

2. **Complete the *Case Management  Statement*  (CM-110)**

3. **File and serve your court papers on time**    Once your court forms are complete, you <u>must</u> file 1 original and 2 copies of the forms at court. An adult who is NOT involved in your case must serve one set of forms on the Plaintiff. If you were served in person you must file your response in 30 days. If the server left a copy of the papers with an adult living at your home or an adult in charge at your work or you received a copy by mail you must file your response in 40 days.

4. **Prove you served your court papers on time**    by having your server complete a *Proof of Service*, *(Judicial Council form POS-040)*, that <u>must</u> be filed at the court within <u>60</u> days.

5. **Go to court** on the date and time given in the *Notice of Case Management Conference*.

6. **Consider trying to settle your case before trial**    If you and the other party to the case can agree to use mediation, arbitration or neutral case evaluation, the *<u>Stipulation and Order to Attend ADR and Delay First Case Management Conference 90 Days</u>* can be filed with your other papers.  For more information read the enclosed ADR information, visit www.cc-courts.org/adr, or email adrweb@contracosta.courts.ca.gov.

**IMPORTANT! The court recommends consulting an attorney for all or part of your case.  While you may represent yourself, lawsuits can be complicated, and the court cannot give you legal advice.**

---

**COURT FEES:**  You must pay court fees the first time you file your papers.  If you also file a motion, you must pay another fee.  If you cannot afford the fees, you may ask the court to waive (allow you not to pay) fees. Use Judicial Council forms FW-001-INFO [information sheet]; FW-001 [application]; and FW-003 [order].

**COURT FORMS:**  Buy forms at the Law Library (1020 Ward Street, Martinez, CA) or download them for free at: www.courtinfo.ca.gov/forms/

## WHAT KIND OF RESPONSES CAN I FILE?

1. If you disagree with some or all of what the plaintiff says in the complaint because you believe, or know it is not true, you can file an ANSWER.

2. If you have a claim in the same case against the plaintiff, you may file a CROSS-COMPLAINT.

3. If you want to ask the court to do something on your behalf, you may file a MOTION *(See TYPES OF MOTIONS below)*

## HOW DO I PREPARE AN ANSWER?

There are two kinds of Answers you can use, depending on whether the Complaint was verified. You can tell if a Complaint is verified because it says "Verified Complaint" and/or has a signed oath on the last page.

**For complaints that are NOT verified:**

   Use Judicial Council form PLD-050 – General Denial

**For complaints that ARE verified:**

   a. For personal injury, property damage, and wrongful death claims, use Judicial Council PLD-PI-003 (do not check number 2).

   b. For contract claims, use Judicial Council PLD-C-010 (do not check number 3a).

   c. Be sure to deny every claim with which you disagree. For example, you might write: *"I believe, or know, that the information in paragraph #__ is untrue/incorrect."* Continue your list until you have addressed each paragraph in the Complaint.

**NOTE:** The Judicial Council Answer forms have spaces for your affirmative defenses. Be sure to include them or you may not be able to use them later. To find out what your affirmative defenses might be, go to the law library and ask the librarian to help you find the information you need.

**If you want to file a Cross-Complaint, you must do so at the same time you file the Answer.**

   a. For a personal injury, property damage, and/or wrongful death Cross-Complaint, use Judicial Council form PLD-PI-002.

   b. For a contract Cross-Complaint, use Judicial Council PLD-C-001.

## TYPES OF MOTIONS

Written motions are documents that ask the court to do something. You may have to file an *Answer* at the same time. At this point in the case, you can only make Motions from the following list:

1. Demurrer *(the facts stated in the complaint are wrong, or the deadline to file the lawsuit has passed)*;
2. Motion to Strike  *(the complaint is unclear; does not follow the law, "doesn't matter", etc.)*;
3. Motion to Transfer *(the complaint is in the wrong court or there's a more appropriate court)*;
4. Motion to Quash Service of Summons  *(you were not legally served)*;
5. Motion to Stay  *(put the case on hold)*; or
6. Motion to Dismiss *(stops the case)*.

   **NOTE: Motions are very complicated and you may want to hire a lawyer to help you.**

## WHERE CAN I GET MORE HELP?

- **Lawyer Referral Service:**   (925) 825-5700
- **Bay Area Legal Aid:**   (800) 551-5554
- **Contra Costa County Law Library**      Martinez:  (925) 646- 2783        Richmond:  (510) 374-3019
- **Ask the Law Librarian:**   www.247ref.org/portal/access_law3.cfm



**CONTRA COSTA COUNTY SUPERIOR COURT**
**ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION**

All judges in the Civil Trial Delay Reduction Program agree that parties should consider using Alternative Dispute Resolution (ADR) to settle their cases. To tell the court you will use ADR:

- Choose ADR on the *Case Management Form (*CM-110);
- File a *Stipulation and Order to Attend ADR and Continue First Case Management Conference 90-Days* (local court form); or
- Agree to ADR at your first court appearance.

*Questions?* Email *adrweb@contracosta.courts.ca.gov or call (925) 608-2075*

## MEDIATION

Mediation is often faster and less expensive than going to trial. Mediators help people who have a dispute talk about ways they can settle their case. Parties email, fax or visit the ADR Programs office to get a list of mediators. After parties have agreed on a mediator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the mediator at least 5 court days before mediation starts.

ALL parties and attorneys must go to mediation. Mediation can be held whenever and wherever the parties and the mediator want, as long as they finish before the court deadline. In some kinds of court cases, parties have the chance to mediate in the courthouse on their trial day.

Most mediators begin by talking with the parties together, helping them focus on the important issues. The mediator may also meet with each party alone. Mediators often ask parties for their ideas about how to settle the case. Some mediators tell the parties how much money they think a case is worth, or tell them what they think might happen if the case went to trial. Other mediators help the parties decide these things for themselves. No matter what approach a mediator takes, decisions about settling a case can only be made when all the parties agree.

If the parties go through the court ADR program, mediators do not charge fees for the first half hour spent scheduling or preparing for mediation. They also do not charge fees for the first two hours of mediation. If parties need more time, they must pay the mediators regular fees. Some mediators ask for a deposit before mediation starts. Mediators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the mediation. A party whose court fees have been waived (cancelled) may ask if their mediation fees or deposit can be waived.

If parties agree about how they will settle their case, they can choose to keep it private, write it up as a contract, or ask the judge to make it a court order. What parties say and agree to in mediation is confidential (private).

## PRIVATE MEDIATION

Private mediation works in the same way as judicial mediation, but the parties do not go through the ADR Programs office. Parties choose a mediator on their own, and pay the mediator's normal fees.

## JUDICIAL ARBITRATION (non-binding)

In judicial arbitration, an independent attorney (arbitrator) looks at the evidence, listens to the parties and their witnesses, and decides how the case will be settled. Judicial arbitration is less formal than court. Parties email, fax or visit the ADR Programs office to get a list of arbitrators. If they cannot agree on an arbitrator, the court will assign one. The judge can send cases to arbitration if there is less than $50,000 in dispute. The person who started the court case can make sure the case goes to arbitration if they agree to limit the amount they are asking for to $50,000. Parties can also agree they want to use judicial arbitration. The arbitrator must send their decision (award) to the court within 10 days of the last hearing. The award becomes a court judgment unless a party asks the court to review the case within 60 days. Parties must use the ADR-102 form to ask for a new court hearing (called a trial de novo.) Judicial arbitrators charge $150 per case or per day.

## PRIVATE ARBITRATION (non-binding and binding)

Private, non-binding arbitration is the same as judicial arbitration, except that the parties do not go through the ADR Programs office to choose an arbitrator, and the arbitrator's award will not become a judgment of the court unless all parties agree. Parties must pay the arbitrator's normal fees.

Binding arbitration is different from judicial or private non-binding arbitration because the arbitrator's decision is final. Parties give up their right to have a judge review their case later (except for reasons listed in California Code of Civil Procedure, Section 1286.2.) Binding arbitration rules are listed in California Code of Civil Procedure, Sections 1280-1288.8. Parties may also agree any time before the judge has made a decision that ends the case to switch to binding arbitration. Parties choose the arbitrator on their own, and must pay the arbitrator's normal (not $150) fees.

## SETTLEMENT MENTOR CONFERENCE

Settlement mentors are independent, experienced trial attorneys that a judge has assigned to help parties look for ways to settle their case. The conference is free and is held in the courthouse. It is often held on the morning of trial, but it can be scheduled anytime. These conferences usually last two or three hours. Parties do not present evidence and do not call witnesses. Parties can ask the settlement mentor to keep some information confidential (private) from the other party, but not from the judge. The settlement mentor can share any information with the judge, or involve the judge in settlement discussions.  All principals, clients, and claims representatives must attend the settlement mentor conference.

## NEUTRAL CASE EVALUATION

In neutral case evaluation, an independent attorney (evaluator) reviews documents and listens to each party's side of the case. The evaluator then tells the parties what they think could happen if the case went to trial. Many people use the evaluator's opinion to reach an agreement on their own, or use this information later in mediation or arbitration to settle their case.

Parties email, fax or visit the ADR Programs office to get a list of evaluators. After parties have agreed on an evaluator, they must write a summary (5 pages or less) explaining the facts, legal arguments, and legal authority for their position. They must send this summary to the other parties and the evaluator at least 5 court days before evaluation starts. ALL parties and their attorneys must go to neutral case evaluation. The evaluation can be held whenever and wherever the parties and the evaluator want, as long as they finish before the court deadline. If the parties go through the court's ADR program, evaluators do not charge any fees for the first half hour spent scheduling or preparing for the evaluation conference. They also do not charge fees for the first two hours of the evaluation. If parties need more time, they must pay that evaluators regular fees. Some evaluators ask for a deposit before evaluation starts. Evaluators who do this must give back whatever is left after counting the time he or she spent preparing for or doing the evaluation. A party whose court fees have been waived (cancelled) may ask if their evaluation fees or deposit can be waived.

**TEMPORARY JUDGE**

Some parties want a trial, but want to choose who will decide the case and when the trial will take place. Parties can agree on an attorney that they want the court to appoint as a temporary judge for their case. (See Article 6, Section 21 of the State Constitution and Rule 2.830 of the California Rules of Court.) Temporary judges have nearly the same authority as a superior court judge to conduct a trial and make decisions. As long as the parties meet the court deadline, they can schedule the trial at their own and the temporary judge's convenience.

Each of the temporary judges on the court's panel has agreed to serve at no charge for up to 5 court days. If the parties need more time, they must pay that person's regular fees. All parties and their lawyers must attend the trial, and provide a copy of all briefs or other court documents to the temporary judge at least two weeks before the trial. These trials are similar to other civil trials, but are usually held outside the court. The temporary judge's decision can be appealed to the superior court. There is no option for a jury trial. The parties must provide their own court reporter.

**SPECIAL MASTER**

A special master is a private lawyer, retired judge, or other expert appointed by the court to help make day-to-day decisions in a court case. The special master's role can vary, but often includes making decisions that help the discovery (information exchange) process go more smoothly. He or she can make decisions about the facts in the case. Special masters can be especially helpful in complex cases. The trial judge defines what the special master can and cannot do in a court order.

Special masters often issue both interim recommendations and a final report to the parties and the court. If a party objects to what the special master decides or reports to the court, that party can ask the judge to review the matter. In general, the parties choose (by stipulation) whom they want the court to appoint as the special master, but there are times (see California Code of Civil Procedure Section 639), when the court may appoint a special master or referee without the parties' agreement. The parties are responsible to pay the special master's regular fees.

**COMMUNITY MEDIATION SERVICES**

Mediation Services are available through non-profit community organizations. These low-cost services are provided by trained volunteer mediators.  For more information about these programs contact the ADR Program at adrweb@contracosta.courts.ca.gov

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF CONTRA COSTA

_____

_____
               Plaintiff(s) / Cross Plaintiff(s)

        **vs.**

_____

_____
         Defendant(s) / Cross Defendant(s)

***ADR Case Management Stipulation and Order***
*(Unlimited Jurisdiction Civil Cases)*

**CASE NO:** _____

---

►   ALL PARTIES STIPULATING TO ADR AND DELAYING THEIR CASE MANAGEMENT CONFERENCE 90 DAYS MUST **SUBMIT THE ORDER FOR THE JUDGE'S SIGNATURE AND FILE THIS FORM AT LEAST 15 DAYS BEFORE THEIR CASE MANAGEMENT CONFERENCE.** (NOT AVAILABLE IN COMPLEX LITIGATION CASES.)

►   PARTIES MUST ALSO **SEND A COPY OF THIS <u>FILED</u> STIPULATION AND ORDER TO THE ADR OFFICE:** EMAIL <u>adrweb@contracosta.courts.ca.gov</u> FAX: (925) 608-2109  MAIL: P.O. BOX 911, MARTINEZ, CA 94553

---

**Counsel and all parties agree to delay their case management conference 90 days to attend ADR and complete pre-ADR discovery as follows:**

1. <u>Selection and scheduling for Alternative Dispute Resolution (ADR)</u>:
   a. The parties have agreed to ADR as follows:
      i. ❑ Mediation  ❑ Court-connected ❑ Private)
      ii. ❑ Arbitration  ❑ Judicial Arbitration (non-binding)  ❑ Private (non-binding)  ❑ Private (binding))
      iii. ❑ Neutral case evaluation
   b. The ADR neutral shall be selected by *(date)*: _____ *(no more than 14 days after filing this form)*
   c. ADR shall be completed by *(date)*: _____ *(no more than 90 days after filing this form)*
2. <u>The parties will complete the following discovery plan</u>:
   a. ❑ Written discovery:  (❑ Additional page(s) attached)
      i. ❑ Interrogatories to:
      ii. ❑ Request for Production of Documents to:
      iii. ❑ Request for Admissions to:
      iv. ❑ Independent Medical Evaluation of:
      v. ❑ Other:
   b. ❑ Deposition of the following parties or witnesses: (❑ Additional page(s) attached)
      i. _____
      ii. _____
      iii. _____
   c. ❑ No Pre-ADR discovery needed
3. The parties also agree: _____
_____
4. Counsel and self-represented parties represent they are familiar with and will fully comply with all local court rules related to ADR as provided in Title Three; Chapter 5, <u>will pay the fees associated with these services</u>, and understand that if they do not, without good cause, comply with this stipulation and all relevant local court rules, they may be subject to sanctions.

| | | | |
|---|---|---|---|
| Counsel for Plaintiff *(print)* | Fax | Counsel for Defendant *(print)* | Fax |
| Signature | | Signature | |
| Counsel for Plaintiff *(print)* | Fax | Counsel for Defendant *(print)* | Fax |
| Signature | | Signature | |

---

Pursuant to the Stipulation of the parties, and subject to the *Case Management Order* to be filed, **IT IS SO ORDERED** that the Case Management Conference set for _____ is vacated and rescheduled for _____ at (8:30 a.m. / _____ ) <u>**Plaintiff / Plaintiff's counsel must notify all parties of the new case management conference.**</u>

Dated: _____   _____

                                               **Judge of the Superior Court**

CM-110

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |

TELEPHONE NO.:                    FAX NO. *(Optional):*
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):*

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
STREET ADDRESS:
MAILING ADDRESS:
CITY AND ZIP CODE:
BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| | |
|---|---|
| **CASE MANAGEMENT STATEMENT**<br>*(Check one):* ☐ **UNLIMITED CASE**  ☐ **LIMITED CASE**<br>(Amount demanded  (Amount demanded is $25,000<br>exceeds $25,000)  or less) | CASE NUMBER: |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:                Time:            Dept.:          Div.:          Room:

Address of court *(if different from the address above):*

☐ Notice of Intent to Appear by Telephone, by *(name):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name):*
   b. ☐ This statement is submitted **jointly** by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. ☐ The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not):*

      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names):*

      (3) ☐ have had a default entered against them *(specify names):*

   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served):*

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint    *(Describe, including causes of action):*

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
*www.courts.ca.gov*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a.  ☐ The trial has been set for *(date):*
b.  ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.  Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.  ☐ days *(specify number):*
b.  ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  E-mail address:
☐ Additional representation is described in Attachment 8.
f.  Fax number:
g.  Party represented:

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10.  **Alternative dispute resolution (ADR)**
a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1)  For parties represented by counsel: Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)  For self-represented parties: Party ☐ has ☐ has not reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).
(1)  ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)  ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)  ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled <br> ☐ Mediation session scheduled for *(date)*: <br> ☐ Agreed to complete mediation by *(date)*: <br> ☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled <br> ☐ Settlement conference scheduled for *(date)*: <br> ☐ Agreed to complete settlement conference by *(date)*: <br> ☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled <br> ☐ Neutral evaluation scheduled for *(date)*: <br> ☐ Agreed to complete neutral evaluation by *(date)*: <br> ☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled <br> ☐ Judicial arbitration scheduled for *(date)*: <br> ☐ Agreed to complete judicial arbitration by *(date)*: <br> ☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled <br> ☐ Private arbitration scheduled for *(date)*: <br> ☐ Agreed to complete private arbitration by *(date)*: <br> ☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled <br> ☐ ADR session scheduled for *(date)*: <br> ☐ Agreed to complete ADR session by *(date)*: <br> ☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**

a. ☐ Insurance carrier, if any, for party filing this statement *(name):*

b. Reservation of rights: ☐ Yes ☐ No

c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**

Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.

☐ Bankruptcy ☐ Other *(specify):*

Status:

**13. Related cases, consolidation, and coordination**

a. ☐ There are companion, underlying, or related cases.

    (1) Name of case:

    (2) Name of court:

    (3) Case number:

    (4) Status:

☐ Additional cases are described in Attachment 13a.

b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**

☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**

☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**

a. ☐ The party or parties have completed all discovery.

b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|

c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

| Attorney or Party without Attorney: | | For Court Use Only |
|---|---|---|
| Jerry Flanagan, Esq, Bar #271272<br>CONSUMER WATCHDOG<br>2701 Ocean Park Boulevard<br>Suite 112<br>Santa Monica, CA 90405<br>Telephone No: 310-392-0522    FAX No: 310-392-8874 | | FILED<br>2017 NOV 14 P 12: 10<br>CLERK OF<br>COURT<br>BY: |
| Attorney for: Plaintiff | Ref. No. or File No.: | |

12
22
017

Insert name of Court, and Judicial District and Branch Court:
Contra Costa County Superior Court

| Plaintiff: John Doe | | | | |
|---|---|---|---|---|
| Defendant: Aetna, Inc., et al. | | | | |
| **PROOF OF SERVICE**<br>**Summons & Complaint** | Hearing Date: | Time: | Dept/Div: | Case Number:<br>C1702082 |

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the Summons; Complaint; Civil Case Cover Sheet; Notice of Assignment to Department Seventeen for Case Management Determination; Notice to Plaintiffs; Notice to Defendant; ADR Information; Case Management Statement (blank)

3. a. Party served:           Aetna, Inc.
   b. Person served:          Gabriela Sanchez, Person Authorized to Accept Service, Hispanic, Female, 25 Years Old, Black Hair, Wearing Glasses, 5 Feet 5 Inches, 135 Pounds

4. Address where the party was served:   C T Corporation
                                         818 W. 7th Street
                                         Suite 930
                                         Los Angeles, CA 90017

5. I served the party:
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Wed., Oct. 25, 2017 (2) at: 2:50PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of: Aetna, Inc.
   Under CCP 416.10 (corporation)

7. **Person Who Served Papers:**                    Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. V. Avendano                          d. **The Fee for Service was:**
   b. **Class Action Research & Litigation**   e. I am: (3) registered California process server
      P.O Box 740                             (i)   Independent Contractor
      Penryn, CA 95663                        (ii)  Registration No.:   PSC #2720
   c. (916) 663-2562, FAX (916) 663-4955      (iii) County:            Orange

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   Date: Wed, Oct. 25, 2017

   _(signature)_

Judicial Council Form POS-010              PROOF OF SERVICE                   (V. Avendano)    208148   jefla.171766
Rule 2.150.(a)&(b) Rev January 1, 2007     Summons & Complaint

# ORIGINAL

| Attorney or Party without Attorney: | | | | | For Court Use Only |
|---|---|---|---|---|---|

Attorney or Party without Attorney:
Jerry Flanagan, Esq, Bar #271272
CONSUMER WATCHDOG
2701 Ocean Park Boulevard
Suite 112
Santa Monica, CA 90405
Telephone No: 310-392-0522        FAX No: 310-392-8874

Ref. No. or File No.:

**FILED**

NOV 14 P 12: 11

STEPHEN H. NASH
CLERK OF THE SUPERIOR COURT
COUNTY CONTRA COSTA, CA

CLERK

Attorney for: Plaintiff

Insert name of Court, and Judicial District and Branch Court:
Contra Costa County Superior Court

Plaintiff: John Doe

Defendant: Aetna, Inc., et al.

| PROOF OF SERVICE Summons & Complaint | Hearing Date: | Time: | Dept/Div: | Case Number: C1702082 |
|---|---|---|---|---|

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of the Summons; Complaint; Civil Case Cover Sheet; Notice of Assignment to Department Seventeen for Case Management Determination; Notice to Plaintiffs; Notice to Defendant; ADR Information; Case Management Statement (blank)

3. a. Party served:                    Aetna Healthcare, Inc.,
   b. Person served:                  Gabriela Sanchez, Person Authorized to Accept Service, Hispanic, Female, 25 Years Old, Black Hair, Wearing Glasses, 5 Feet 5 Inches, 135 Pounds

4. Address where the party was served:    C T Corporation
                                          818 W. 7th Street
                                          Suite 930
                                          Los Angeles, CA 90017

5. I served the party:
   a. by personal service. I personally delivered the documents listed in item 2 to the party or person authorized to receive process for the party (1) on: Wed., Oct. 25, 2017 (2) at: 2:50PM

6. The "Notice to the Person Served" (on the Summons) was completed as follows:
   on behalf of: Aetna Healthcare, Inc.,
   Under CCP 416.10 (corporation)

7. Person Who Served Papers:                                    Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. V. Avendano                          d. The Fee for Service was:
   b. Class Action Research & Litigation   e. I am: (3) registered California process server
      P O Box 740                             (i)   Independent Contractor
      Penryn, CA 95663                        (ii)  Registration No.:      PSC #2720
   c. (916) 663-2562, FAX (916) 663-4955     (iii) County:                Orange

8. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   Date: Wed, Oct. 25, 2017

Judicial Council Form POS-010          **PROOF OF SERVICE**              (V. Avendano)    208148    jefla.171767
Rule 2.150.(a)&(b) Rev January 1, 2007   Summons & Complaint

**ORIGINAL**

MANATT, PHELPS & PHILLIPS, LLP
MATTHEW P. KANNY (Bar No. CA 167118)
E-mail: MKanny@manatt.com
DONNA L. WILSON (Bar No. CA 186984)
E-mail: DLWilson@manatt.com
CRAIG S. RUTENBERG (Bar No. CA 205309)
E-mail: crutenberg@manatt.com
BRANDON P. REILLY (Bar No. CA 278012)
E-mail: breilly@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA  90064-1614
Telephone:  (310) 312-4000
Facsimile:  (310) 312-4224

Attorneys for Defendants
AETNA, INC. and AETNA HEALTHCARE, INC.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF CONTRA COSTA

| | |
|---|---|
| JOHN DOE, | Case No. C17-02082 |
| Plaintiff, | Hon. Barry Goode<br>Dept. 17 |
| vs. | |
| AETNA, INC.; AETNA HEALTHCARE, INC.; and DOES 1-25, inclusive,, | **STIPULATION AND [PROPOSED] ORDER REGARDING SERVICE AND RESPONSE TO COMPLAINT** |
| Defendant. | Action Filed: October 20, 2017 |

319499693.1

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

STIPULATION AND [PROPOSED] ORDER REGARDING RESPONSE TO COMPLAINT

1       Plaintiff John Doe ("Plaintiff") and Defendants Aetna, Inc. and Aetna Healthcare, Inc.

2  (together, "Aetna"), by and through their respective counsel, stipulate as follows:

3       WHEREAS, Plaintiff filed the Complaint on October 20, 2017;

4       WHEREAS, Plaintiff filed proofs of service on November 14, 2017 reflecting personal

5  service on Aetna on October 25, 2017;

6       WHEREAS, Aetna disputes that service was properly effected on October 25, 2017;

7       WHEREAS, the parties have agreed to resolve any dispute regarding service of the

8  Complaint;

9       WHEREAS, the parties have agreed that Aetna may accept service of the Complaint as of

10  November 21, 2017, and its responsive pleading is due thirty (30) days thereafter.

11       THEREFORE, it is stipulated as follows:

12      1.     Aetna agrees to accept service of the Complaint effective November 21, 2017;

13      2.     Aetna's responsive pleading is due December 21, 2017.

14  Dated: November 21, 2017      MANATT, PHELPS & PHILLIPS, LLP

15

16                     By: _____

17                         Matthew P. Kanny
                            *Attorneys for Defendants*

18                         AETNA, INC. and AETNA HEALTHCARE, INC.

19

20  Dated: November 29, 2017      CONSUMER WATCHDOG

21

22                     By: _____

23                         Jerry Flanagan
                            *Attorneys for Plaintiff*
                         JOHN DOE

24

25       GOOD CAUSE APPEARING, THEREFORE,

26       IT IS SO ORDERED:

27  Dated: December __, 2017          _____

28                           Judge of the Superior Court

**PROOF OF SERVICE**

I, Vanessa Q. Le, declare as follows:

     I am employed in the County of Orange, State of California, over the age of eighteen years, and not a party to the within action. My business address is: 695 Town Center Drive, 14th Floor, Costa Mesa, California 92626.

     On November 29, 2017, I served the following document(s) described as: **STIPULATION AND [PROPOSED] ORDER REGARDING SERVICE AND RESPONSE TO COMPLAINT** on the interested parties in this action, addressed as follows:

Joe R. Whatley, Jr., Esq.
Edith M. Kallas
WHATLEY KALLAS LLP
1180 Avenue of the Americas, 20th Fl.
New York, NY 10036
Tel: (212) 447-7060
Fax: (800) 922-4851
Email: jwhatley@whatleykallas.com
Email: ekallas@whatleykallas.com

Alan M. Mansfield, Esq.
WHATLEY KALLAS LLP
16870 W. Bernardo Drive, Suite 400
San Diego, CA, 92127
Tel: (858) 674-6641
Fax: (855) 274-1888
Email: amansfield@whatleykallas.com
*Attorneys for Plaintiff*

Harvey Rosenfield, Esq.
Jerry Flanagan, Esq.
Benjamin Powell, Esq.
CONSUMER WATCHDOG
2701 Ocean Park Blvd., Suite 112
Santa Monica, CA 90405
Tel: (310) 392-0522
Fax: (310) 392-8874
Email: Harvey@consumerwatchdog.org
Email: Jerry@consumerwatchdog.org
Email: Ben@consumerwatchdog.org

☒    **(VIA U.S. MAIL)** I placed such document in a sealed envelope or package, with postage fully prepaid, for collection and mailing at Manatt, Phelps & Phillips, LLP, Costa Mesa, California following ordinary business practice. I am readily familiar with the practice at Manatt, Phelps & Phillips, LLP for collection and processing of correspondence for mailing with the United States Postal Service, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for collection.

☐    **(BY ELECTRONIC MAIL)** Based on a court order or an agreement of the parties to accept electronic service, I transmitted such document(s) electronically from my e-mail address, vle@manatt.com to the person(s) at the electronic mail addresses listed above. The transmission was reported as complete and without error.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on November 29, 2017, at Costa Mesa, California.

_____
Vanessa Q. Le

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES