United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DOE,<br><br>    Plaintiff,<br><br>v.<br><br>AETNA, INC.,<br><br>    Defendant. | Case No. 17-cv-07167-EMC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**<br><br>Docket No. 18 |

Plaintiff John Doe has filed suit against Defendant Aetna, Inc., asserting claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of California Business and Professions Code § 17200. Aetna removed the case from state court to this Court pursuant to diversity jurisdiction. *See* 28 U.S.C. § 1332. Currently pending before the Court is Doe's motion to remand the action back to state court. Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby **GRANTS** the motion to remand.

## I.    FACTUAL & PROCEDURAL BACKGROUND

Doe initiated this case against Aetna in state court. Doe's claims are related to the settlement of a separate putative class action that included Doe as a plaintiff. *See* Compl. ¶¶ 2-4; 28-31. The putative class action concerned an Aetna policy that required enrollees diagnosed with HIV/AIDS to fill their prescriptions for HIV medications by mail order, as opposed to obtaining the medications at their local pharmacies. *See* Compl. ¶ 1. The policy also made purchases of these medications in local pharmacies "out of network." *See* Compl. ¶ 1. Ultimately, the putative class action settled. *See* Compl. ¶ 4. Under the settlement agreement, Aetna was required to send letters, in July 2017, to approximately 12,000 individual Aetna enrollees nationwide. *See* Compl.

¶ 6. As Doe alleges in the instant case, Aetna ultimately sent the letters in envelopes that had clear "windows" so large that text within the letter was visible; that text included language disclosing that members had been prescribed "HIV Medications."[1] *See* Compl. ¶¶ 8-10.

Subsequently, Doe filed suit against Aetna, asserting that it breached the settlement agreement by sending the letters in the way that it did. *See* Compl. ¶¶ 43-45. Doe's theory is predicated on the fact that the settlement agreement includes provisions requiring Aetna to comply with relevant state and federal law, *see* Settlement Agreement ¶ 11, including the California Confidentiality of Medical Information Act ("CMIA") and the Health Insurance Portability and Accountability Act ("HIPAA"). *See* Compl. ¶ 12. In addition to his claim for breach of contract, Doe asserts a related claim for breach of the implied covenant of good faith and fair dealing and a claim for violation of California Business and Professions Code § 17200. *See* Compl. ¶¶ 46-47; 51-57. As relief, Doe seeks compensatory damages, equitable relief, injunctive relief, and attorney's fees and other costs. *See* Compl. at 14 (prayer for relief).

On December 18, 2017, Aetna removed Doe's case from state court to this Court pursuant to diversity jurisdiction. *See* 28 U.S.C. § 1332. The parties do not contest that there is complete diversity of citizenship. However, they dispute whether the amount in controversy exceeds $75,000, as required by § 1332. Doe now moves to remand, arguing that (1) Aetna did not timely remove the case to federal court and (2) there is no diversity jurisdiction because the amount in controversy does not exceed $75,000.

## II.   DISCUSSION

A.   Timeliness of Removal

A notice of removal shall be filed within thirty days after the receipt of the complaint by the defendant through service or otherwise. *See* 28 U.S.C. § 1446(b). The Supreme Court has held that the "clock" on the date of removal begins to run on the date formal service was effected. *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 356 (1999) (finding that

---

[1] Although Doe alleges that these letters *could* have been seen by third parties, he does not allege that the letter Aetna sent to him has *actually* been viewed by any unauthorized persons. *See* Compl. ¶¶ 10-11.

2

faxing a "courtesy copy" of the complaint to one of the defendant company's vice presidents did not trigger the removal period because it did not constitute proper service under applicable state law); *see also Big B Auto. Warehouse Distribs., Inc. v. Cooperative Computing, Inc.*, No. 00-2602, 2000 U.S. Dist. LEXIS 16363, (N.D. Cal. Oct. 31, 2000) (finding that plaintiffs must demonstrate compliance with the requirements of service, and that proof by plaintiffs that defendants actually received a copy of the complaint by a particular date was not sufficient).

Aetna argues that it was not formally served until November 21, 2017, which thereby makes its removal on December 18, 2017, timely. In support of its position, Aetna notes that the parties initially had a dispute about whether Aetna was properly served on October 25, 2017, which was ultimately resolved when the parties entered into a stipulation – on November 21 – that "Aetna agrees to accept service of the Complaint effective November 21, 2017," and that "Aetna's responsive pleading is due December 21, 2017." Docket No. 1 (Stip. ¶¶ 1-2).

The Court finds Aetna's position meritorious. There is no evidence that Aetna was properly served (as Doe contends) on October 25, 2017. For example, there is no evidence that CT Corporation (California), upon whom Doe personally delivered the summons and complaint, is in fact Aetna's authorized agent for service of process. *See* Neugebauer Decl. ¶¶ 4-5 (testifying that Aetna's agent for service of process is CT Corporation in East Hartford, Connecticut, and that CT Corporation in Los Angeles, California, is not an authorized agent for service of process). Furthermore, the evidence reflects that Doe's mail service on Aetna was deficient in that the mailing was addressed to Aetna and not any specific individual. Serving a corporate defendant by mail at an address outside the state requires a plaintiff to mail the summons to a *person* to be served on behalf of the corporation, *i.e.*, to one of the individuals specified in Code Civ. Proc., § 416.10. Simply naming the company, instead of an individual, is not sufficient. *See Dill v. Berquist Construction Co.*, 24 Cal. App. 4th 1426 (1994) (finding that plaintiff's mailing to corporate defendant did not constitute proper service because plaintiff addressed the mailing to the corporation rather than to any of the individuals enumerated under Code Civ. Proc., § 416.10).

Moreover, the clear intent of the stipulation was to resolve any dispute about the date of service. Doe contends that the stipulation only extended the date by which Aetna had to respond

3

1 to the complaint because it said nothing about extending the time to remove. But this argument is
2 unavailing because the full text of the stipulation – reflecting that "Aetna agrees to accept service
3 of the Complaint effective November 21, 2017" – establishes otherwise. Docket No. 1 (Stip. ¶ 1).

Because Aetna filed its notice of removal on December 18, 2017, within 30 days from the date of service of November 21, 2017, its removal of the case to federal court was timely.

B. <u>Amount in Controversy</u>

As noted above, diversity jurisdiction requires, *inter alia*, that the amount in controversy exceed $75,000. *See Urbino v. Orkin Services of Cal.*, 726 F.3d 1118, 1121 (9th Cir. 2013). Doe did not allege a specific dollar amount for damages in his complaint. "Where . . . 'it is unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled,' the 'removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold." *Id.*; *see also Guglielmino v. McKee Foods, Inc.*, 506 F.3d 696, 699 (9th Cir. 2007) (stating the same); *cf. Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (stating that "[t]he 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper").

In the instant case, Aetna argues that it has met its burden because, per his complaint, Doe seeks as relief compensatory damages, injunctive relief, and attorney's fees, each of which is enough to bring the amount in controversy over $75,000. As discussed below, the Court does not agree.

1. <u>Compensatory Damages</u>

As an initial matter, Aetna argues that Doe has admitted his compensatory damages could total at least $74,999.99. *See* Opp'n at 2. This argument is meritless. Although Doe alleged in his complaint that he "suffered damages in an amount to be proven at trial, but . . . less than $75,000," Compl. ¶ 50, a subsequent allegation clarified that "the *total* amount of relief requested is less than $75,000." Compl. at 14 (prayer for relief) (emphasis added). Thus, it is clear from the complaint that Doe's invocation of $75,000 was to place his case outside of diversity jurisdiction.

Aetna next argues that Doe's compensatory damages still exceed $75,000, citing in support

4

awards made in breach-of-privacy cases where plaintiffs were awarded damages more than $75,000. *See Doe v. Infectious Disease Associates*, P.A., No. SN13C12218, 2015 WL 11022560 (Del. Superior Ct. Dec. 29, 2015) (plaintiff awarded over $1,100,000 in damages for loss of wages arising out of invasion of privacy and other tort claims); *Francies v. Kapla*, 127 Cal. App. 4th 1381 (2005) (plaintiff awarded over $500,000 in damages for claims of invasion of privacy, violation of CMIA, and other tort claims when defendant disclosed plaintiff's HIV status to plaintiff's employer and plaintiff was placed on unpaid leave without benefits). But this analogy is deficient because these cases are easily distinguishable. Unlike the plaintiffs in the cases cited by Aetna, Doe here is not asserting any tort claim for, *e.g.*, breach of privacy but rather is maintaining only a contract claim.[2] Furthermore, unlike the plaintiffs in the cases cited by Aetna, Doe does not claim that anyone actually saw the letter Aetna sent to him. In fact, Doe has not alleged any specific injury that he suffered from Aetna's alleged breach (*e.g.*, loss of wages, emotional distress). Moreover, even if Doe had alleged emotional distress, that still would not take the amount in controversy past $75,000 because emotional distress damages are not typically awarded in breach-of-contract cases. *See Erlich v. Menezes*, 21 Cal. 4th 543, 546 (1999) (finding that emotional distress damages cannot be recovered for the breach of a contract to construct a house because tort damages cannot be recovered if the act is wrongful only because it breaches a contractual obligation).

Accordingly, absent a more concrete showing of harm compensable under contract law, there is a high likelihood that Doe's compensatory damages would be nominal.

2. Injunctive Relief

According to Aetna, even if the compensatory damages were disregarded, the amount in controversy exceeds $75,000 based on Doe's request for injunctive relief (for his § 17200 claim). The critical injunctive relief is that referenced in ¶ 56 of the complaint, where Doe states that he "seeks an order enjoining Aetna from refusing to correct its unlawful business practices, including a commitment to use non-windowed envelopes in its notification mailings to persons prescribed

---

[2] While Doe has a § 17200 claim, he does not seek any compensatory damages for that claim.

HIV medications." Compl. ¶ 56. Here, Aetna's basic argument is that the cost to it of implementing a policy of not using windowed envelopes would exceed $75,000. *See* Opp'n at 17 (referring to costs associated with training and changing its policies, procedures, and practices).

The Court is not persuaded. As a preliminary matter, the Court acknowledges that, where injunctive relief is at issue, the value of that injunctive relief may be considered from the viewpoint of the plaintiff (*i.e.*, the significance of the injunction to the plaintiff) *or* from the viewpoint of the defendant (*i.e.*, the cost of the injunction to the defendant). This is known as the "either viewpoint" rule. *See In re Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001) (stating that, "[u]nder the 'either viewpoint' rule, the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce" – *i.e.*, "where the value of a plaintiff's potential recovery . . . is below the jurisdictional amount, but the potential cost to the defendant of complying with the injunction exceeds that amount, it is the latter that represents the amount in controversy for jurisdictional purposes"). Where a plaintiff sues as an individual, the either viewpoint rule applies and is straightforward in application – *e.g.*, what is the value of the injunction to the plaintiff or what is the cost to the defendant of complying with the injunction?

In the class action context, however, where there is effectively more than one plaintiff, the either viewpoint rule becomes more complicated. As explained by the Ninth Circuit:

> "[T]he proper focus [in multiple plaintiff cases] is not influenced by the type of relief requested, but rather . . . depends upon the nature and value of the right asserted." Put differently, "whatever the form of relief sought, each plaintiff's claim must be held separate from each other plaintiff's claim from both the plaintiff's and the defendant's standpoint. The defendant in such a case is deemed to face multiple claims for injunctive relief, each of which must be separately evaluated." The question then becomes whether each plaintiff is asserting an individual right or, rather, together the plaintiffs "unite to enforce a single title or right in which they have a common and undivided interest." If it is the latter, we may then look to the "either viewpoint" rule to determine jurisdiction. If it is the former, the test is the cost to the defendants of an injunction running in favor of one plaintiff.

*Ford*, 264 F.3d at 959. In other words, in a class action, a court may consider the cost of complying with the injunction for all class members only when their claims may be aggregated,

6

and class members' claims "may only be aggregated for amount of controversy when those claims are not separate and distinct; that is, when they represent a single title or right in which there is a common and undivided interest." *Snyder v. Harris*, 394 U.S. 332, 335 (1969); *see also Snow v. Ford Motor Co.*, 561 F.2d 787, 789-90 (9th Cir.1977) (finding that, in class actions where claims brought together are separate and distinct, the jurisdictional amount requirement could not be met by the total injunctive cost to the defendant). If class members' claims may not be aggregated, then a court considers only the cost of complying with an injunction running in favor of the named plaintiff only.

The instant case, of course, is not a class action. Doe brought this action as an individual only, not as a putative class representative. On the other hand, there is a strong argument that, because Doe is seeking public injunctive relief for his § 17200 claim, his § 17200 claim is like a class action claim and should be treated as such. There is authority to support this approach. For example, in *Boston Reed Co. v. Pitney Bowes, Inc.*, No. 02-01106 SC, 2002 WL 1379993 (N.D. Cal. June 20, 2002) (Conti, J.), the district court held that a claim for injunctive relief under § 17204 should be treated like a class action for purposes of amount in controversy because of its representative nature. *See id.* at *4-5. Similarly, in *Surber v. Reliance National Indemnity Co.*, 110 F. Supp. 2d 1227 (N.D. Cal. 2000) (Breyer, J.), the district court indicated that "the attempted distinction between class actions and section 17200 representative actions was essentially a distinction without a difference. . . . Like class actions, claims under section 17200 seek relief on behalf of numerous individuals." *Id.* at 1233. The Court acknowledges that there is authority contrary to *Boston Reed* and *Surber* – for example, *Mangini v. R.J. Reynolds Tobacco Co.*, 793 F. Supp. 925, 928 (N.D. Cal. 1992) (Conti, J.); and *Myers v. Merrill Lynch & Co., Inc*., No. C-98-3532 WHO, 1999 WL 696082, at *5 (N.D. Cal. Aug. 23, 1999) (Orrick, J.). However, the latter authority is less persuasive than *Boston Reed* and *Surber*. In fact, it is notable that, in *Boston Reed*, Judge Conti expressly disavowed his earlier holding in *Mangini*. In addition, this Court shares the *Surber* court's concern that treating a § 17200 representative claim as an individual claim – where the total cost of the injunction in the public's favor would be considered part of the amount in controversy – "would essentially create federal jurisdiction over any section 17200

7

claim between diverse parties, no matter how small the injury to the representative plaintiff," an "untenable" result as "[s]ection 17200 is not a federal cause of action." *Surber*, 110 F. Supp. 2d at 1233. Finally, the Court takes note that the Ninth Circuit has effectively treated California PAGA claims, based on violation of the California Labor Code, [3] as akin to class action claims for purposes of amount in controversy precisely because PAGA claims are representative in nature. *See Urbino*, 726 F.3d at 1121-22 (noting that, in a PAGA case, an aggrieved employee commences a civil action on behalf of herself and other current or former employees against an employer and may be awarded civil penalties; holding that the employees' claims cannot be aggregated because "[e]ach employee suffers a unique injury – an injury that can be redressed without the involvement of other employees").[4]

Because Doe's § 17200 claim for public injunctive relief should be treated as a class action for purposes of the instant motion, the next step is to determine whether Doe – as one of the 12,000 persons to whom Aetna sent a letter with a windowed envelope – is asserting an individual right or, rather, is implicitly uniting with those other letter recipients (*i.e.*, by virtue of seeking public injunctive relief) to enforce a single title or right in which they have a common and undivided interest.

Under Ninth Circuit precedent, a right with a common and undivided interest exists when the case involves "a single indivisible res, such as an estate, a piece of property . . . , or an insurance policy. These are matters that cannot be adjudicated without implicating the rights of everyone involved with the res." *Ford*, 264 F.3d at 959 (internal quotation marks omitted). *See, e.g.*, *Eagle v. Am. Tel. & Tel. Co.*, 769 F.2d 541, 545-46 (9th Cir. 1985) (in a class action where the plaintiff alleged that the defendant-company breached the fiduciary duty owed to the minority shareholders, holding that "[t]he minority shareholders claims can be aggregated to satisfy the

---

[3] *See* Cal. Lab. Code § 2698.

[4] To the extent Aetna argues that the analysis of the injunctive relief at issue here is governed by *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644 (9th Cir. 2016), the Court does not agree. While *Gonzales* involved a § 17200 claim and a request for injunctive relief, the Ninth Circuit never analyzed the either viewpoint rule in addressing whether the amount in controversy had been satisfied.

8

jurisdictional amount because the shareholders' claims derive entirely from the alleged injury to the corporation").

In *Ford* itself – a class action where the plaintiffs alleged that the defendants misrepresented or withheld information about the nature and duration of a rebate program and wrongfully discontinued it – the Ninth Circuit held that

> the claims arising out of the termination of the rebate program do not implicate a "single indivisible res," and could be adjudicated on an individual basis because the consolidated plaintiffs (and putative class members) have no common and undivided interest in accruing rebates under the program. Each plaintiff charged purchases and accrued rebates individually not as a group.

*Ford*, 264 F.3d at 959. The Ninth Circuit rejected the defendants' contention that "the putative class members have a 'common and undivided' interest in the 'opportunity to accrue rebates' because the injunctive relief requested – reinstating the rebate accrual program – necessarily would benefit the putative class as a whole." *Id.* at 960. The court reiterated that the proper focus was not the type of relief requested but rather the nature and value of the right asserted. "Here, the consolidated plaintiffs assert the right to accrue rebates under the canceled program. That right is distinct to each plaintiff [and] is based on his or her individual contractual relationship with [defendants]." *Id.* "'The equitable relief sought . . . is but a means through which the individual claims may be satisfied.'" *Id.*; *see also Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (in class actions in which plaintiffs alleged that a car manufacturer used a defective finishing process to paint vehicles, noting that "plaintiffs' disgorgement claims . . . are each cognizable, calculable, and correctable individually"; "[c]ombining plaintiffs' relatively small individual disgorgement claims into a class action may well be necessary or advantageous as a matter of litigation economics, but that does not mean that [defendant] has an undivided obligation to the class within the meaning of the aggregation rule").

The instant case is analogous to *Ford*. Doe's § 17200 claim arising out of Aetna's act of mailing windowed envelopes does not implicate a "single indivisible res," and the letter recipients' rights could be adjudicated on an individual basis. At the hearing, Aetna argued that there was a common and undivided interest in that there is a single settlement agreement at issue, the breach

9

thereof which led to Doe's lawsuit. But the existence of a single settlement agreement is not dispositive because each act of mailing was (allegedly) a breach of the settlement agreement or violation of the individual recipient's rights. Although there is common conduct by Aetna, each recipient is harmed individually, as was the case in *Ford* as well as *Gibson*.

The cases cited by Aetna are not to the contrary. In each of the cases, there was a single indivisible res – *e.g.*, in *Edgerton v. Armour & Co.*, 94 F. Supp. 549 (S.D. Cal. 1950), a single obligation or duty owed to a corporation, *see id.* at 552 (stating that the shareholders/class members' "rights as between themselves may be different in amount, but none can be greater or less than the contract [between the defendant and the company in which they held stock] gives to all"), and, in *Phoenix Insurance Co. v. Woosley*, 287 F.2d 531 (10th Cir. 1961), the single proceeds from an insurance policy. *See id.* at 533 (noting that "[t]he nine creditors had a common interest in the collection of this insurance, although not an equal interest, for the reason it was the source from which they might collect the money that was due to them").

Because the instant case does not involve a common and undivided interest or a single res, the Court considers the cost to Aetna of complying with the injunction vis-à-vis Doe only, and not the 12,000 letter recipients aggregated. That cost (to, *e.g.*, reduce the size of the window envelope, not use a window envelope, insert an address cover sheet, etc.) surely cannot come close to $75,000. To the extent Aetna suggests that the cost vis-à-vis Doe "would be the same whether it is done for one plaintiff or for [all 12,000 recipients of the Aetna's letter]," *Ford*, 264 F.3d at 960, that argument is unavailing in light of the fact that the Ninth Circuit rejected a similar argument in *Ford*.

> The second . . . argument [is] that because the cost of an injunction running in favor of one plaintiff would exceed $75,000, aggregating the cost of compliance is unnecessary to satisfy the amount in controversy requirement. In other words, while the monetary benefit to an individual plaintiff of reinstating the rebate accrual program would be relatively insubstantial, the fixed costs to Ford and Citibank of reinstating and maintaining the program would be the same whether it is done for one plaintiff or for six million. Thus, Ford and Citibank assert that because the non-aggregation rule would not be violated if their fixed administrative costs were used to establish the amount in controversy requirement, we may look to the "either viewpoint" rule to establish the jurisdictional amount.

10

> At first blush, this argument appears consistent with *Snow*.
> *However, it is fundamentally violative of the principle underlying the jurisdictional amount requirement – to keep small diversity suits out of federal court. If the argument were accepted, and the administrative costs of complying with an injunction were permitted to count as the amount in controversy,* "then every case, however trivial, against a large company would cross the threshold." "It would be an invitation to file state-law nuisance suits in federal court." Therefore, we hold that the amount in controversy requirement cannot be satisfied by showing that the fixed administrative costs of compliance exceed $ 75,000.

*Id.* at 960-61 (emphasis added).

Finally, even if the Court did consider the cost to Aetna of implementing a policy of no windowed envelopes, using an envelope with a smaller window, or inserting an address cover sheet for *all* persons prescribed HIV medications (and not just Doe), Aetna would still be no better off. Aetna has failed to show by a preponderance of the evidence that implementing such a policy, even on an aggregate basis, would cost it more than $75,000. The only evidence Aetna has offered to support its estimated cost of compliance is the declaration of Edward Neugebauer, and that declaration is entirely conclusory, simply stating that Aetna is a large company, providing services to 20 million individuals and employing more than 50,000 employees nationwide, and that "[a]ny required training of in-house and outside litigation personnel alone would require substantial resources in time and costs which I believe would be well in excess of $75,000." Neugebauer Decl. ¶ 7. It is Aetna's burden to establish by a preponderance of the evidence that the amount in controversy exceeds $75,000, and without more evidence on the cost of compliance, Aetna has failed to meet that burden. *Cf. Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (stating that, "[c]onclusory allegations as to the amount in controversy are insufficient").

   3. <u>Attorney's Fees</u>

Aetna's final argument is that Doe has asked for attorneys' fees as part of his relief and any attorneys' fees awarded would likely exceed $75,000. Aetna argues that, even if valued conservatively, Doe's attorney's fees would be at least $169,000.

It is well established that the amount in controversy may include attorneys' fees if they are recoverable by statute or contract. *See id.* (citing *Galt G/S v. JSS Scandinavia*, 142 F .3d 1150, 1155-56 (9th Cir.1998)). In the instant case, the settlement agreement at issue does not have a fee-

11

shifting provision, but there is a potential statutory basis for attorneys' fees, namely, California Code of Civil Procedure § 1021.5. *See* Compl. at 14 (prayer for relief). Section 1021.5 is a fee-shifting statute that allows a plaintiff who brings an action that results in the enforcement of an important right affecting the public interest to recover attorney's fees. Doe presumably seeks these fees for the public injunctive relief he has requested (although technically he lists his request for attorneys' fees under his breach of contract cause of action, and not under his § 17200 cause of action). *See* Compl. ¶ 13. *See, e.g.*, *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1179 (2002) (noting that, "[i]f a plaintiff prevails in an unfair competition law claim, it may seek attorney fees as a private attorney general pursuant to Code of Civil Procedure section 1021.5").

The key issue here is whether the Court considers – for purposes of amount in controversy – all of the fees that could plausibly be incurred for Doe to obtain the public injunctive relief or instead allocates only a portion of the fees to Doe. Similar to above, Aetna argues in favor of total attribution. The Court does not agree.

As discussed above, the § 17200 claim for public injunctive relief is akin to a class action, and there is no principled reason to treat attorney's fees differently for purposes of amount in controversy from injunctive relief. *See, e.g.*, *Boston Reed*, 2002 WL 1379993, at *6 (holding that, even if a plaintiff could recover attorney's fees for a § 17200 claim under § 1021.5, the total fees should be divided among the represented members of the class for purposes of amount in controversy). In fact, relying on the Ninth Circuit's *Urbino* decision, district courts have held that, where a plaintiff brings a California PAGA claim for violation of the California Labor Code and asks for statutory attorney's fees as part of the relief,[5] the total amount of fees incurred is attributable to the plaintiff (for purposes of amount in controversy) only where there is a common and undivided interest between the plaintiff-employee and the other employees whom she represents. Otherwise, the plaintiff is "charged" with only a pro rata portion of the fees. *See, e.g.*, *Madison v. U.S. Bancorp*, No. C-14-4934-EMC, 2015 WL 355984, at *3 (N.D. Cal. Jan. 27, 2015)

---

[5] PAGA authorizes "[a]ny employee who prevails in any action . . . to an award of reasonable attorney's fees and costs." Cal. Lab. Code § 2699(g)(1).

12

(Chen, J.) (finding that attorney's fees in plaintiff's representative PAGA action should be "distributed pro rata to all aggrieved employees" for purposes of amount in controversy because PAGA claims should not be aggregated under *Urbino*); *Mitchell v. Grubhub Inc.*, No. CV 15-05465-BRO (ASx), 2015 WL 5096420, at *7 (C.D. Cal. Aug. 28, 2015) (finding that, in a representative PAGA action for civil penalties, only the pro-rated amount of attorneys' fees to the named plaintiff should count towards amount in controversy).

The Court's resolution here on attorney's fees therefore follows the analysis as above. That is, because there is no common and undivided interest between Doe and the other 11,999 letter recipients, the attorney's fees may not be aggregated, and the total amount of fees are not attributable to Doe alone. Rather, at most, only a portion of the attorney's fees should be attributed to Doe. As Aetna estimates the total fees that could be incurred in this case at $169,580, a pro rata share for Doe would be approximately $14.13 (*i.e.*, $169,580 ÷ 12,000 persons).[6]

///
///
///
///
///
///
///
///
///

---

[6] Courts are divided on whether attorney's fees for the purposes of calculating the amount in controversy are limited to the fees incurred at the time of removal, or include fees reasonably estimated to be incurred through resolution of a case. *Compare Conrad Assocs v. Hartford Acc. & Indem. Co.*, 994 F. Supp. 1196, 1200 (N.D. Cal. 1998) (Infante, J.) (finding that defendant cannot rely upon post-removal events in estimating the potential attorney's fees), with *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 11 (N.D. Cal. 2002) (Chen, J.) (finding that a reasonable estimate of future attorney's fees could be included in determining in calculating the amount in controversy). This Court has adopted the latter position. *See Brady*, 243 F. Supp. 2d at 1011. In reaching this result, this Court reasoned that plaintiffs rarely succeed in obtaining all they seek just by filing a complaint, and that substantial resources are usually devoted by the parties before a lawsuit is resolved. *Id.* In any event, even if fees are so calculated, only a pro rata share of such fees can be included for purposes of jurisdiction.

### III. CONCLUSION

Any doubt regarding removal should be construed against removal. *See Gaus*, 980 F .2d at 566. Because Aetna has not shown by a preponderance of the evidence that the amount in controversy in this action exceeds $75,000, the Court grants the motion to remand. The Clerk of the Court is instructed to remand this case back to state court and close the file in this case.

This order disposes of Docket No. 18.

**IT IS SO ORDERED**.

Dated: April 4, 2018

_____
EDWARD M. CHEN
United States District Judge